[FMH]                                                    [PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 00-13347, 00-13447
_____

D.C. Docket No. 98-00049-CR-HLM-4-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

IGNASIO MALDENALDO SANCHEZ,
SANTIAGO GILBERTO SANCHEZ,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

Before ANDERSON, Chief Judge, and TJOFLAT, EDMONDSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, and WILSON, Circuit Judges.

HULL, Circuit Judge:

Defendants-Appellants Ignasio Maldenaldo Sanchez and Santiago Gilberto

Sanchez ("the Sanchezes") appeal their convictions and sentences after pleading

guilty to a single-count indictment that charged them with conspiracy to distribute and to possess with intent to distribute methamphetamine and amphetamine, in violation of 21 U.S.C. §§ 841, 846. They challenge their convictions and sentences primarily based on Apprendi v. New Jersey, 530 U.S. 466 (2000). A panel of this Court affirmed. See United States v. Sanchez, 242 F.3d 1294 (11th Cir. 2001). Relying on United States v. Rogers, 228 F.3d 1318 (11th Cir. 2000), the panel concluded that "in light of Apprendi, drug quantity is an element of the offense that must be charged in the indictment." Sanchez, 242 F.3d at 1298 (citing Rogers, 228 F.3d at 1324). The panel opinion repeated Rogers's statement that "'drug quantity in sections 841(b)(1)(A) and 841(b)(1)(B) cases must be charged in the indictment and proven to a jury beyond a reasonable doubt.'" Id. (quoting Rogers, 228 F.3d at 1327). Because the indictment did not allege a specific drug quantity, the panel opinion found that both defendants' plea colloquies were "technically inadequate." Id. The panel opinion held, however, that there was "no prejudice" because, inter alia, the Sanchezes' sentences fell below the maximum penalty permitted under 21 U.S.C. § 841(b)(1)(C). Id. at 1300.

We subsequently sua sponte vacated the panel opinion and, by vote of a majority of the judges in active service, ordered that the case be reheard en banc. See United States v. Sanchez, 247 F.3d 1306 (11th Cir. 2001). We address en banc: whether, in light of Apprendi, drug quantity is now always an element of an

2

offense under § 841 that must be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt; whether the district court properly denied the Sanchezes' motion to dismiss the indictment; whether the district court's drug quantity findings under § 841(b)(1)(B) and utilization of that sentencing scheme, which exposed the Sanchezes to enhanced sentences under that section but did not result in an actual term of imprisonment beyond the otherwise applicable maximum penalty in § 841(b)(1)(C), violated Apprendi; whether Apprendi applies to the Sanchezes' § 841 indictment, guilty pleas, convictions, and sentences given that the district court's drug quantity findings did not increase their ultimate sentences beyond the otherwise applicable maximum penalty in § 841(b)(1)(C); in this regard, whether we should adopt the analyses of Apprendi's impact on § 841 cases in United States v. Rogers, 228 F.3d 1318 (11th Cir. 2000) and United States v. Camacho, 248 F.3d 1286 (11th Cir. 2001), or the analyses in United States v. Gerrow, 232 F.3d 831 (11th Cir. 2000), cert. denied, ___ S. Ct. ___, No. 00-9373 (Oct. 1, 2001), and other circuits' decisions finding that Apprendi does not apply unless a judge-made determination of drug quantity increases a defendant's sentence beyond the otherwise applicable maximum penalty in § 841(b)(1)(C); whether Apprendi rendered the Sanchezes' plea colloquies inadequate under Rule 11 and their guilty pleas unintelligent or involuntary if the court advised them about the higher statutory maximum penalties under §§ 841(b)(1)(A) and

3

841(b)(1)(B); whether terms of supervised release for § 841 convictions are controlled by 21 U.S.C. § 841(b)(1)(C) or 18 U.S.C. § 3583(b)(2) and whether the Sanchezes' four-year terms violated Apprendi; and what is the proper standard of review for each issue.

After such review and for the reasons discussed herein, we see no error, under Apprendi or otherwise, in the Sanchezes' indictment, plea colloquies, convictions, or sentences. We therefore affirm their convictions and their sentences.

This opinion proceeds as follows. In Part I, we review the proceedings in the district court. In Part II, we review the Supreme Court's decisions in Jones v. United States, 526 U.S. 227 (1999) and Apprendi. We then discuss the federal drug statute, our precedent construing that statute, and Apprendi's effect on both. In Part III, we address the Sanchezes' challenges to their indictment, guilty pleas, and sentences, along with the corresponding standards of review. In Part IV, we summarize our conclusions.

## I. PROCEDURAL BACKGROUND

In the district court, the Sanchezes challenged not only their sentences but also their indictment and convictions based on Jones, and on appeal, they rely primarily on Apprendi. Additionally, for the first time on appeal they challenge their plea colloquies under Rule 11 based on Apprendi. The Sanchezes emphasize

4

that from the outset of their cases the government sought enhanced penalties under § 841(b)(1)(B) based on drug quantities. They seek to expand Apprendi's constitutional principle to, and thereby show constitutional error at, all stages of their cases. Thus, we first review in detail the proceedings in the district court.

## A. Sanchezes' Indictment

In late 1998, a federal grand jury returned a single-count indictment charging that the Sanchezes "did combine, conspire, confederate, agree, and have a tacit understanding with each other, and with others known and unknown to the Grand Jury, to violate Title 21, United States Code, § 841, to wit: to knowingly and intentionally possess with the intent to distribute and distribute quantities of methamphetamine and amphetamine, both being Schedule II controlled substances, in violation of Title 21, United States Code, Section 846."[1] The indictment referenced 21 U.S.C. §§ 841, 846 and the type of drugs involved but not the quantities. Both defendants pled not guilty.

On April 21, 1999, defendant Ignasio Sanchez filed a "Motion to Dismiss Indictment for Failure to Allege Facts that Increase Maximum Penalty," specifically relying on Jones. The motion stated, "Jones clearly holds that the Constitution requires an indictment to allege 'any fact (other than prior conviction) that increases the maximum penalty for a crime.' Furthermore, such a fact must be

---

[1]Four other defendants were charged in the indictment, but this appeal involves only the Sanchezes.

submitted to a jury for a decision as to proof beyond a reasonable doubt."[2]  On this basis, Ignasio Sanchez argued that the indictment had to be dismissed because the various statutory maximum penalties under 21 U.S.C. § 841(b) for a violation of 21 U.S.C. § 841(a) were determined by drug quantity, and the indictment against him did not allege a specific drug quantity.

The district court denied the motion, noting that under this circuit's precedent "[t]he statutory scheme set forth in § 841 establishes that drug quantity is a sentencing consideration."  The court continued that "the Constitution does not require drug quantity to be considered as an element of the criminal offense defined by § 841."  The court noted that Jones "does not stand for the proposition that every fact which exposes a criminal defendant to a higher maximum penalty must be alleged in an indictment."  Subsequently, the court granted, without objection, Santiago Sanchez's request to adopt Ignasio Sanchez's motion to dismiss the indictment and denied that motion as well.[3]

_____

[2]The motion quoted in full the now-famous footnote six from Jones v. United States, 526 U.S. 227 (1999), and in particular relied on its statement that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."  Id. at 243 n.6; see also infra Section II.A (discussing footnote six in Jones and Jones more generally).

[3]The Supreme Court decided Jones on March 24, 1999 and Apprendi on June 26, 2000. The present case exemplifies how, well before Apprendi, defendants in this circuit were asserting that drug quantity under § 841 had to be charged in the indictment and decided by a jury, even though prior circuit precedent repeatedly had held otherwise.  See infra note 28.  As explained in United States v. Candelario, 240 F.3d 1300 (11th Cir.), cert. denied, 121 S. Ct. 2535 (2001), "[a] defendant may be deemed to have made a constitutional objection if his objection

6

## B.      Guilty Pleas and Rule 11 Colloquies

In early 2000, the district court conducted separate, but substantially similar, plea colloquies for each defendant pursuant to Rule 11.  See Fed. R. Crim. P. 11. The court advised both defendants of their various constitutional rights and asked whether each defendant understood that, by pleading guilty to the single-count indictment, he waived those constitutional rights and there would not be a trial of any kind.  Each defendant responded in the affirmative.  The court read the entire indictment and advised the Sanchezes that before a jury could find them guilty, the government was required to prove the various elements of the offense, as stated in the indictment, beyond a reasonable doubt.

Regarding sentencing, the district court advised Ignasio Sanchez that depending on the amount of drugs found to be attributable to him, he faced a sentence of either (a) ten years to life imprisonment, five years' supervised release, and a $4,000,000 fine, or (b) five to forty years' imprisonment, four years' supervised release, and a $2,000,000 fine.  The court advised Santiago Sanchez only of the first of these two sentences.  Although not citing any particular subsections within § 841(b), the court, in effect, described the content of §§ 841(b)(1)(A) and 841(b)(1)(B).[4]  The court also discussed the Sentencing

---

invokes Apprendi or Jones."  Id. at 1304 (citations omitted).

[4]A sentence of ten years to life imprisonment, five years' supervised release, and a $4,000,000 fine – of which both defendants were advised – corresponds to § 841(b)(1)(A).  A

Guidelines and stated that a sentencing range would be developed for each defendant within which the court had discretion to impose a sentence depending on the circumstances of the case.

Both defendants, after acknowledging that they understood the nature of the charge against them, pled guilty to the single-count indictment. Ignasio Sanchez entered a written plea of guilty which, pursuant to Rule 11(a)(2),[5] was conditional on his reservation of the right to appeal the denial of his motion to dismiss the indictment.[6] See Fed. R. Crim. P. 11(a)(2). Santiago Sanchez likewise was allowed to enter a conditional guilty plea.[7]

---

sentence of five to forty years' imprisonment, four years' supervised release, and a $2,000,000 fine corresponds to § 841(b)(1)(B).

[5]"A defendant who wishes to preserve appellate review of a non-jurisdictional defect while at the same time pleading guilty can do so only by entering a 'conditional plea' in accordance with [Federal Rule of Criminal Procedure 11(a)(2)]." United States v. Pierre, 120 F.3d 1153, 1155 (11th Cir. 1997) (quoting Fed. R. Crim. P. 11(a)(2)). Rule 11(a)(2) provides:
> Conditional Pleas. With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

Fed. R. Crim. P. 11(a)(2).

[6]Ignasio Sanchez's plea agreement stated, "Pursuant to Rule 11(a)(2), the defendant reserves the right to appeal the District Court's Order . . . denying the defendant's motion to Dismiss the Indictment . . . ."

[7]We note that Santiago Sanchez's reservation of his right to appeal this issue did not comply with the requirements of Rule 11(a)(2), because it was not in writing. See Pierre, 120 F.3d at 1155 (noting that "[t]he conditional plea must be in writing and must be consented to by the court and by the government") (citing Fed. R. Crim. P. 11(a)(2)). Because the government agreed to Santiago Sanchez's oral reservation of his right to appeal this issue and because the district court later granted Santiago Sanchez permission to do so, we, however, treat Santiago Sanchez's orally entered guilty plea as having properly reserved the right to appeal the denial of

8

## C.    Pre-Sentence Reports

The initial pre-sentence reports recommended that the Sanchezes be held accountable for specific quantities of methamphetamine and amphetamine which resulted in marijuana equivalencies of 38,106.94 kilograms for Ignasio Sanchez and 50,803.91 kilograms for Santiago Sanchez.  Although § 841 specifies grams of methamphetamine and amphetamine, the Sentencing Guidelines convert certain drug quantities into marijuana equivalencies as part of calculating the offense level for the guideline range.  See United States Sentencing Guidelines § 2D1.1(c), cmt. n.10 (drug equivalency tables).  The statutory penalty for the Sanchezes' drug quantities was ten years' to life imprisonment, as set forth in 21 U.S.C. § 841(b)(1)(A)(viii).[8]  Regarding the guideline range within this statutory range,

---

his motion to dismiss the indictment.  Indeed, the prosecutor stated:

> Your honor, the government's not going to have an objection for the late adoption of the motion by counsel for Santiago Sanchez, wouldn't put on extra work for the government to file its responsive brief.  I would advise the court that, normally, when defendants tender a plea of guilty, that such motions would be waived by the plea of guilty. [Counsel for Ignasio Sanchez] had requested that he be allowed to retain that right to appeal that issue, and that was specifically addressed in his [written] plea agreement for Ignasio Sanchez.  We consented to that in light of the fact the two defendants are brothers or related and that there's been a closeness in terms of the defense by the defendants; that the government would be willing to permit, with the court's permission, to allow Santiago Sanchez, if he feels so inclined, to raise that issue on appeal in terms of failure to allege any drug quantities in the indictment.

Only after the government agreed did the district court grant permission to Santiago Sanchez to reserve the right to appeal this issue.  We note, however, that the district court was not required to do so.

[8]At the time of the Sanchezes' offenses, the penalty provisions applicable to a drug offense involving methamphetamine and amphetamine required that the offense involve "100 grams or more of methamphetamine . . . or 1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine," or "10 grams or more of

the initial pre-sentence reports recommended a custodial term of 210 to 262 months for both defendants.[9]

Both defendants and the government timely filed written objections. For example, Ignasio Sanchez objected "to all factual findings of the presentence report as a matter of due process under the Jones rationale." Ultimately, revised pre-sentence reports recommended that Ignasio Sanchez and Santiago Sanchez be held accountable for reduced amounts of methamphetamine and amphetamine, resulting in reduced marijuana equivalencies of 5,447.74 kilograms and 6,713.99 kilograms, respectively. These reduced amounts resulted in a reduced guideline range for both defendants of 135 to 168 months.[10] The revised reports stated that the "Statutory Penalty" was "5 to 40 years."[11] While this penalty corresponded to §

---

methamphetamine . . . or 100 grams or more of a mixture or substance containing a detectable amount of methamphetamine." 21 U.S.C. §§ 841(b)(1)(A)(viii), 841(b)(1)(B)(viii) (1994). In 1998, Congress amended these provisions to require methamphetamine quantities of 50 to 500 grams, and 5 to 50 grams, respectively. See 21 U.S.C. §§ 841(b)(1)(A)(viii), 841(b)(1)(B)(viii) (1998).

[9]The drug quantities in the initial pre-sentence reports resulted in a base offense level of 38 for both defendants. The reports recommended a two-level increase for possession of a weapon during the offense and a three-level reduction for acceptance of responsibility. Both reports concluded that the Sanchezes' total adjusted offense level was level 37 with a criminal history of Category I. There was never any contention that either Sanchez had a prior drug felony conviction.

[10]Both amounts resulted in a base offense level of 34. The recommended two-level increase for possession of a weapon and three-level reduction for acceptance of responsibility resulted in an total adjusted offense level of 33, which, with a criminal history of Category I, yielded a guideline range of 135 to 168 months.

[11]The revised reports noted that a mandatory minimum penalty of five years' imprisonment applied. Those reports also stated that the "Fine Guideline Range" was $17,500 to $2,000,000 and that the term of "Supervised Release" was four years.

841(b)(1)(B), the revised reports did not specifically cite to that section of the statute.

**D.    Sentencing**

The Sanchezes were sentenced in two joint sentencing hearings.  At the outset of the first hearing, Ignasio Sanchez orally renewed his motion to dismiss the indictment based on <u>Jones</u> and specifically "based upon the lack of specificity and quantity in the indictment."  He continued that this argument "would have an effect at this time . . . in that the findings must be beyond a reasonable doubt under my motion."  Both defendants, however, agreed that if validly charged and convicted under this indictment, the court could find that they were accountable for (a) one transaction involving two pounds of methamphetamine, which is equivalent to 1,814.4 kilograms of marijuana, and (b) two other transactions each involving six pounds of amphetamine, the combination of which is equivalent to 1,087.2 kilograms of marijuana.  On the basis of the government's evidentiary proffer and the Sanchezes' concessions, the district court found "as a matter of fact by a preponderance of the evidence" that each defendant was responsible for drug amounts resulting in a total marijuana equivalency of 2,903.04 kilograms.[12]

Regarding the statutory penalty, the district court then stated that its

---

[12]We note that the total of the drug quantities to which the Sanchezes pled guilty is actually 2,901.6 kilograms.  This slight error in arithmetic, however, would not change the base offense level.

11

sentencing option was a statutory mandatory minimum sentence of five years up to forty years. While not expressly referencing § 841(b)(1)(B), the court described the content of that section. In calculating the guideline range within that statutory range, the court determined that the above drug amounts, along with other guideline calculations, produced a custodial guideline range of 87 to 108 months for Ignasio Sanchez and 108 to 135 months for Santiago Sanchez.[13] Stating an intention to sentence at the bottom end of those ranges, the court sentenced Ignasio Sanchez to 87 months' imprisonment and Santiago Sanchez to 108 months' imprisonment, followed by four years' supervised release for each defendant.

After imposing the sentences, the court asked for objections. Citing <u>Jones</u>, Ignasio Sanchez's counsel objected to drug quantity not being charged in the indictment and not being proved beyond a reasonable doubt. Santiago Sanchez's counsel adopted the <u>Jones</u> objection made by Ignasio Sanchez's counsel.

---

[13]The different custodial guideline ranges for the defendants resulted from Ignasio Sanchez's receiving a minor role adjustment. The Sanchezes' drug quantities resulted in the same base offense level of 32. The district court applied a two-level increase for firearm possession, resulting in an offense level of 34. Regarding Ignasio Sanchez, the court then applied a two-level reduction for playing a minor role in the offense and a three-level reduction for acceptance of responsibility. These adjustments produced an offense level of 29, which with a criminal history of Category I carried a guideline range for Ignasio Sanchez of 87 to 108 months. Regarding Santiago Sanchez, the court applied only a three-level reduction for acceptance of responsibility. This adjustment produced an offense level of 31, which with a criminal history of Category I carried a guideline range for Santiago Sanchez of 108 to 135 months.

Subsequently, both defendants timely appealed.[14]

## II. DISCUSSION

The Sanchezes challenge their single-count indictment, plea colloquies, convictions, and sentences based on Jones and Apprendi. We can discern no error in any of these phases of the Sanchezes' cases. We begin by analyzing Jones and Apprendi. We then review the federal drug statute, this circuit's precedent construing that statutory scheme, and what effect Apprendi has on that landscape.

### A.      Jones v. United States

Jones was a case of statutory interpretation, in which a grand jury charged the defendant with violating the federal carjacking statute, 18 U.S.C. § 2119.[15] A

---

[14]The record shows that the two pounds of methamphetamine agreed to in the sentencing hearing was referenced in the pre-sentence reports as 907.2 grams of methamphetamine. (A pound of methamphetamine equals 453.6 grams, so that two pounds equal 907.2 grams of methamphetamine.) This 907.2 grams of methamphetamine is greater than the 500-grams threshold required to trigger a sentence of not less than 10 years under 21 U.S.C. § 841(b)(1)(A)(viii). The government, however, never requested a mandatory minimum sentence of 10 years, never made any objections to the sentences imposed, and has not cross appealed. At the conclusion of the sentencing hearing, the government even affirmatively indicated that it had "no exceptions."

[15]At the time that the grand jury in Jones returned the indictment, § 2119 read: "Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall –
    (1) be fined under this title or imprisoned not more than 15 years, or both,
    (2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and
    (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both."

13

jury found the defendant guilty. The Supreme Court stated, "This case turns on whether the federal carjacking statute, 18 U.S.C. § 2119, . . . defined three distinct offenses or a single crime with a choice of three maximum penalties, two of them dependent on sentencing factors exempt from the requirements of charge and jury verdict." Id. at 229. After analyzing the carjacking statute's text, structure, and legislative history, and after comparing the statute to others in which "serious bodily injury" was "unmistakably identified" as an offense element, the Supreme Court adopted the former interpretation of the statute, concluding that "the fairest reading of § 2119 treats the fact of serious bodily harm as an element, not a mere enhancement." Id. at 239.

While resolving Jones based on this statutory interpretation, the Supreme Court further justified its construction by invoking the doctrine of constitutional doubt. The Supreme Court observed that under the alternative statutory interpretation, in which serious bodily injury was construed as a sentencing factor, "the statute would be open to constitutional doubt in light of a series of cases over the past quarter century, dealing with due process and the guarantee of trial by

Jones, 526 U.S. at 230 (quoting 18 U.S.C. § 2119 (1988 ed., Supp. V)). The Jones indictment did not cite the statute's three numbered subsections, and neither the indictment nor the jury instructions mentioned the facts of "serious bodily injury" or "death." Id. at 230-31. After the jury found the defendant guilty, the pre-sentence report recommended a twenty-five year sentence under § 2119(2) because a victim suffered "serious bodily injury" during the carjacking offense. Id. at 231. The defendant objected, arguing that "serious bodily injury was an element of the offense defined in part by § 2119(2), which had been neither pleaded in the indictment nor proven before the jury." Id. Over this objection, the district court sentenced the defendant to twenty-five years' imprisonment. Id.

14

jury." Id. at 240 (citing cases). In the now-famous footnote six, the Supreme Court described the principle "animating" its view that this alternative interpretation "may violate the Constitution," as follows: "[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Id. at 243 n.6. The Supreme Court continued that "[b]ecause our prior cases suggest rather than establish this principle, our concern . . . rises only to the level of doubt, not certainty." Id.

## B. **Apprendi v. New Jersey**

In contrast to its task of statutory interpretation in Jones, the Supreme Court in Apprendi squarely addressed the constitutionality of a statutory sentencing scheme that allowed judge-made findings to increase a defendant's statutory maximum penalty. The defendant, Charles Apprendi, admitted to firing several bullets into the home of an African-American family who had recently moved into a previously all-white neighborhood in New Jersey. Apprendi, 530 U.S. at 469. A New Jersey grand jury returned a 23-count indictment charging Apprendi with various shootings and with the unlawful possession of various weapons. Id.

Apprendi pled guilty to only three counts in the indictment, including two counts of the second-degree offense of possession of a firearm for an unlawful

15

purpose, in violation of § 2C:39-4(a) of the New Jersey Statutes. Id. at 469-70. That state firearm statute provided, "Any person who has in his possession any firearm with a purpose to use it unlawfully against the person or property of another is guilty of a crime of the second degree." N.J. Stat. Ann. § 2C:39-4(a) (West 1995). As a second-degree crime, this firearm offense was punishable by a term of imprisonment "between five years and 10 years." Id. § 2C:43-6(a)(2) ("Except as otherwise provided, a person who has been convicted of a crime may be sentenced to imprisonment . . . [i]n the case of a crime of the second degree, for a specific term of years which shall be fixed by the court and shall be between five years and 10 years.").

An entirely separate New Jersey statute, however, provided for higher minimum and maximum sentences than those normally applicable to second-degree crimes if the sentencing court made certain factual findings. That statute provided, "The court shall, upon application of the prosecuting attorney, sentence a person who has been convicted of a crime . . . to an extended term if it finds, by a preponderance of the evidence, the grounds in subsection e," specifically, that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." N.J. Stat. Ann. § 2C:44-3(e) (West Supp. 2000) (emphasis added).

16

The "extended term" permitted for a second-degree crime, such as possession of a firearm for an unlawful purpose, was "between 10 and 20 years." N.J. Stat. Ann. § 2C:43-7a(3) ("In the cases designated in section 2C:44-3, a person who has been convicted of a crime may be sentenced . . . to an extended term of imprisonment . . . [i]n the case of a crime of the second degree, for a term which shall be fixed by the court between 10 and 20 years."). This "extended term" of imprisonment was identical to the penalty normally applicable to first-degree crimes. See id. § 2C:43-6(a)(1).

It was this separate state statute – providing for an "extended term" of imprisonment upon a finding that the defendant acted "with a purpose to intimidate . . . because of race" – that was the focus of the Supreme Court's decision in Apprendi. Only after Apprendi pled guilty to the second-degree crime of firearm possession for an unlawful purpose, which carried a maximum penalty of ten years' imprisonment, the state requested that the sentencing court impose an enhanced sentence on one of the two firearms counts, pursuant to N.J. Stat. Ann. § 2C:44-3(e). Following an evidentiary hearing on whether Apprendi's "purpose" for the shooting at issue in that count was "to intimidate . . . because of race," the trial judge found by a preponderance of the evidence "that the crime was motivated by racial bias" and thus that Apprendi acted "with a purpose to intimidate . . . because of race" as stated in the statute. Apprendi, 530 U.S. at 471.

Under the terms of the state statute, this judge-made finding triggered an "extended term" of imprisonment of ten to twenty years.  Accordingly, the trial judge, over Apprendi's constitutional objection, sentenced Apprendi to twelve years' imprisonment on that count.  Id.  This sentence was two years above the ten-year maximum ordinarily applicable to the second-degree offense with which Apprendi had been charged and to which he had pled guilty.  Id.  In addition to this sentence on one of the firearm counts, the court sentenced Apprendi to shorter, concurrent terms on the remaining two counts of the indictment to which Apprendi had pled guilty.  Id.

Apprendi appealed his twelve-year sentence on the one firearm count.  Id.  He argued that the Due Process Clause of the Constitution required that the finding of racial bias upon which his sentence was increased be made by a jury beyond a reasonable doubt, rather than by a judge based on a preponderance of the evidence standard.  Id.  The state supreme court affirmed Apprendi's sentence, and he petitioned for certiorari to the Supreme Court of the United States.  Id. at 472.

The Supreme Court framed the issue as follows: "The question presented is whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt."  Id. at 469.  The Supreme Court noted that the answer to this

question was "foreshadowed" by its earlier opinion in <u>Jones</u>.  <u>Id.</u> at 476.

The Supreme Court stated that the rights set forth in the Sixth and Fourteenth Amendments "indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'"  <u>Id.</u> at 477 (quoting <u>United States v. Gaudin</u>, 515 U.S. 506, 510 (1995)).  After conducting a historical examination of this entitlement, the Court noted that the "due process and associated jury protections extend, to some degree, to determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence."  <u>Id.</u> at 484 (internal quotation marks omitted).

The Supreme Court continued that its decision did not strip the term "sentencing factor" of all meaning, but rather, the "term appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence <u>within the range</u> authorized by the jury's finding that the defendant is guilty of a particular offense."  <u>Id.</u> at 494 n.19.  The Court recognized, "On the other hand, when the term 'sentence enhancement' is used to describe an <u>increase beyond the maximum authorized statutory sentence</u>, it is the <u>functional equivalent</u> of an element of a greater offense than the one covered by the jury's guilty verdict.  Indeed, it fits squarely within the usual definition of an 'element' of the offense."  <u>Id.</u> (emphasis added).

19

The Supreme Court then squarely adopted the following constitutional principle, which was foreshadowed by Jones and has since provided the Sanchezes and so many other criminal defendants ammunition with which to attack their sentences: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. Applying this principle to the facts of Apprendi's case, the Supreme Court concluded that the sentencing procedure permitted by the New Jersey statutory scheme – which allowed a judge-made finding of racial bias by a preponderance of the evidence to increase a defendant's term of imprisonment for a firearm offense beyond the prescribed statutory maximum of ten years and up to twenty years – was invalid. Id. at 491. The Court therefore reversed Apprendi's 12-year sentence on the firearm offense.[16] Id. at 497.

---

[16]Apprendi challenged only his sentence and did not seek to withdraw his guilty plea or attack his indictment. The Supreme Court ordered that the "judgment" of the state court be reversed and that the case be "remanded for further proceedings not inconsistent with this opinion." Apprendi, 530 U.S. at 497. Thus, we read Apprendi as reversing only the defendant's sentence and not his conviction. This conclusion is supported by the fact that the indictment was not at issue. Indeed, the Supreme Court expressly noted that "Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment." Id. at 477 n.3. The Court noted that Apprendi relied "entirely on the fact that the 'due process of law' that the Fourteenth Amendment requires the States to provide to persons accused of crime encompasses the right to a trial by jury, and the right to have every element of the offense proved beyond a reasonable doubt," and it continued that the Fourteenth Amendment "has not . . . been construed to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury.'" Id. (citation omitted). Thus, the Court expressly did "not address the indictment question separately." Id.

Thus, Apprendi's holding does not paint with the wide brush suggested by the Sanchezes. Rather, Apprendi was a sentencing case, presented a narrow sentencing issue, and made only a narrow holding about New Jersey's sentencing procedure, specifically: A trial judge cannot find a fact, such as racial bias, and then use that fact to impose a sentence higher than the prescribed statutory maximum penalty for the underlying criminal offense. Indeed, the Court itself characterized the question presented in Apprendi as a "narrow issue." Id. at 474.

Moreover, the Apprendi opinion expressly limited the applicability of the constitutional principle it described. Fundamentally, Apprendi did not require that all sentencing factors be submitted to a jury and proven beyond a reasonable doubt. Instead, Apprendi expressly reaffirmed the long-established general principle that a judge-decided fact may affect a defendant's sentence within the applicable statutory range without invoking the constitutional principles articulated in Apprendi. In describing the origins of the requirement that all elements of a crime be proven to a jury, the Court stated, "We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion – taking into consideration various factors relating both to offense and offender – in imposing a judgment within the range prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence within statutory limits in the individual case." Id. at 481 (citing Williams

21

v. New York, 337 U.S. 241, 246 (1949)). The Court continued that its "periodic recognition of judges' broad discretion in sentencing . . . has been regularly accompanied by the qualification that that discretion was bound by the range of sentencing options prescribed by the legislature." Id.

In this same vein, the Supreme Court in Apprendi also expressly preserved its earlier opinion in McMillan v. Pennsylvania, 477 U.S. 79 (1986), in which the Court permitted a fact triggering a mandatory minimum sentence to be decided by a judge based on a preponderance of the evidence standard. Id. at 86-88.[17] In Apprendi, the Supreme Court specifically stated, "We do not overrule McMillan. We limit its holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict – a limitation identified in the McMillan opinion itself." Apprendi, 530 U.S. at 487

---

[17]At issue in McMillan was Pennsylvania's Mandatory Minimum Sentencing Act, 42 Pa. Const. Stat. § 9712, which provided that anyone convicted in state court of certain enumerated felonies was subject to a mandatory minimum sentence of five years' imprisonment if the sentencing judge found by a preponderance of the evidence that the defendant "visibly possessed a firearm" during the commission of the offense. McMillan, 477 U.S. at 81. As the Supreme Court explained, "The Act operates to divest the judge of discretion to impose any sentence of less than five years for the underlying felony; it does not authorize a sentence in excess of that otherwise allowed for that offense." Id. at 81-82. The Act expressly provided that visible possession was not an element of the crime. Id. at 81 n.1 (quoting Pa. Const. Stat. § 9712(b)).

The Supreme Court concluded that the terms of the Act did not violate the Due Process Clause, thereby following its precedent that rejected the contention that "whenever a State links the 'severity of punishment' to 'the presence or absence of an identified fact' the State must prove that fact beyond a reasonable doubt." Id. at 84 (quoting Patterson v. New York, 432 U.S. 197, 214 (1977)). The Court noted, "Section 9712, which comes into play only after the defendant has been convicted of an enumerated felony, neither provides for an increase in the maximum sentence for such felony nor authorizes a separate sentence; it merely requires a minimum sentence of five years, which may be more or less than the minimum sentence that might otherwise have been imposed." Id. at 83.

22

n.13.  Thus, <u>Apprendi</u> actually reaffirmed the longstanding practice of allowing judge-decided facts to affect the length of a defendant's sentence, including leaving the imposition of a mandatory minimum sentence within the purview of the trial judge.  <u>Apprendi</u> carved out only a limited exception to this general rule for facts that actually cause the sentence imposed on a defendant to exceed the prescribed statutory maximum, requiring that such facts be proven to a jury beyond a reasonable doubt rather than decided by a judge based on a preponderance of the evidence standard.

Likewise,  <u>Apprendi</u> does not apply to judge-made determinations pursuant to the Sentencing Guidelines.  <u>See, e.g.</u>, <u>United States v. Nealy</u>, 232 F.3d 825, 829 n.3 (11th Cir. 2000) ("The Sentencing Guidelines are not subject to the <u>Apprendi</u> rule."); <u>United States v. Harris</u>, 244 F.3d 828, 829-30 (11th Cir. 2001) (holding that <u>Apprendi</u> does not apply to the relevant conduct provision of the Sentencing Guidelines); <u>see also</u> <u>United States v. Diaz</u>, 248 F.3d 1065, 1105 (11th Cir. 2001) (noting that "Sentencing Guideline issues are not subject to the <u>Apprendi</u> rule and, thus, there is no requirement that sentencing facts be submitted to a jury and found beyond a reasonable doubt").  As the Supreme Court in <u>Apprendi</u> noted, "The Guidelines are, of course, not before the Court.  We therefore express no view on the subject beyond what this Court has already held." <u>Apprendi</u>, 530 U.S. at 497 n.21.  While <u>Apprendi</u> was silent on the issue, its inapplicability to the Sentencing

Guidelines follows from its holding. A factual finding under the Guidelines determines the sentence within the statutory range rather than outside it. Because Apprendi only addresses facts that increase the penalty for a crime beyond the statutory maximum, it does not apply to those findings that merely cause the guideline range to shift within the statutory range.[18]

Apprendi also did not hold that judge-decided facts that expose a defendant to a higher statutory maximum penalty must be proven to a jury beyond a reasonable doubt. The analysis employed in, and the holding of, Apprendi make clear that any consideration of a defendant's sentence in light of Apprendi is to be conducted retrospectively rather than prospectively. The defendant in Apprendi was not merely exposed to a higher sentence than otherwise applicable but was actually sentenced to twelve years' imprisonment under New Jersey's entirely

---

[18]In this regard, the Sanchezes also assert that the district court erred in applying the two-level increase for firearm possession. Specifically, they contend that the firearm increase must be proven beyond a reasonable doubt in light of Apprendi and that the testimony of the sole government witness did not connect any weapons to the drug conspiracy. This argument lacks merit. First, Apprendi does not apply to the Sentencing Guidelines. Second, the government's evidence satisfied its burden of proof. Sentencing Guideline § 2D1.1(b)(1) provides for a two-level increase for possession of a firearm during the offense. The accompanying commentary explains that this "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), cmt. n.3. "Once the prosecution has shown by a preponderance of the evidence that the firearm was present at the site of the charged conduct, the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable." United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995). Here, Kenneth Green testified that he delivered guns to the Sanchezes as partial payment for drugs and that later he took law enforcement authorities to a storage center where he had stored four or five rifles and shotguns. The district court specifically found Green's testimony to be credible, and this finding was not clearly erroneous. See id. ("We review findings of fact for clear error only.").

separate "hate crime" statute, which was <u>above</u> the prescribed statutory maximum of ten years' imprisonment for his firearm offense. Our reading of <u>Apprendi</u> anchors its holding to the facts involved. In sum, <u>Apprendi</u> is implicated only when a judge-decided fact <u>actually increases</u> the defendant's sentence beyond the prescribed statutory maximum for the crime of conviction.[19]

## C. The Federal Drug Statute

We next examine the impact of <u>Apprendi</u> on the federal drug statute, 21 U.S.C. § 841. To do so, we review initially the plain language and structure of the statutory scheme itself and then our precedent regarding that statute. We then ascertain the effect of <u>Apprendi</u> on both. In reviewing a statutory scheme, "[o]ur task is to construe what Congress has enacted. We begin, as always, with the

---

[19]The Sanchezes emphasize certain language in <u>Apprendi</u> convenient for the contrary position. <u>See, e.g.</u>, <u>Apprendi</u>, 530 U.S. at 482-83 ("The historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided highlight the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, <u>exposes</u> the criminal defendant to a penalty <u>exceeding</u> the maximum he would receive if punished according to the facts reflected in the jury verdict alone.") (emphasis added); <u>id.</u> at 483 n.10 ("Put simply, facts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition 'elements' of a separate legal offense."); <u>id.</u> at 494 ("Despite what appears to us the clear 'elemental' nature of the factor here, the relevant inquiry is one not of form, but of effect – does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"); <u>id.</u> at 495 ("But it can hardly be said that the potential doubling of one's sentence – from 10 years to 20 – has no more than a nominal effect."). As discussed above, however, <u>Apprendi</u>'s holding was itself limited to judge-decided facts that actually increased the defendant's sentence beyond the prescribed statutory maximum penalty. The opinion's "exposure" language quoted by the Sanchezes does not supercede <u>Apprendi</u>'s actual decision. <u>See generally</u> <u>Crawford-El v. Britton</u>, 523 U.S. 574, 585 (1998) ("There is, of course, an important difference between the holding in a case and the reasoning that supports that holding").

25

language of the statute." Duncan v. Walker, 121 S. Ct. 2120, 2124 (2001).[20]

The Sanchezes were charged with conspiring to distribute and to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a).[21] Section 841(a), entitled "Unlawful acts," describes the prohibited conduct and the state of mind required for a drug offense. Specifically, § 841(a)(1) renders it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1) (emphasis added).[22] The Sanchezes

---

[20]Within broad constitutional limits, "[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." Staples v. United States, 511 U.S. 600, 604 (1994) (internal quotation marks omitted).

[21]Conspiracy is made a separate offense by 21 U.S.C. § 846. That statute provides, "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. The "subchapter" to which this conspiracy statute refers is 21 U.S.C. § 841. Thus, for simplification, we will discuss only § 841 in this opinion. Given that the penalties for a violation of § 846 track the penalties for a violation of § 841(a), our discussion applies equally to both statutes.

[22]Similarly, § 841(a)(2) makes it "unlawful for any person knowingly or intentionally . . . to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance." 21 U.S.C. § 841(a)(2). Again, while for simplification we focus on § 841(a)(1), our discussion applies equally to § 841(a)(2).
Likewise, while we discuss in this opinion methamphetamine and amphetamine, our discussion applies equally to any drug meeting the definition of a "controlled substance" as set forth in the statute. Specifically, the statute provides, "The term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). Those schedules are contained in 21 U.S.C. § 812(c), and the drugs included in each schedule share certain characteristics. For example, the statute provides that the inclusion of a drug on Schedule II – on which methamphetamine and amphetamine, the drugs involved in this case, are included – requires "findings" that:
    (A) The drug or other substance has a high potential for abuse.
    (B) The drug or other substance has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions.

pled guilty to conspiring to violate § 841(a)(1).

According to the plain language of § 841(a)(1), a "controlled substance" is a distinct element of that drug offense. Because § 841(a) makes it unlawful for a person knowingly or intentionally to possess with intent to distribute a "controlled substance," then necessarily there must be an actual "controlled substance" of some quantity involved in that drug offense.[23] Thus, to some extent, when a defendant pleads guilty to, or a jury finds the defendant guilty of, an indictment charging possession with intent to distribute a "controlled substance," a drug quantity of some amount is already part of the underlying crime of conviction.

Section 841(b), entitled "Penalties," provides the penalties for violations of § 841(a). It states that "any person who violates subsection (a) of this section <u>shall be sentenced</u> as follows." 21 U.S.C. § 841(b) (emphasis added). What follows in § 841(b) are myriad sentencing factors (including serious bodily injury, prior felony drug convictions, and drug types and quantities) and associated penalties. Thus, the penalties in § 841(b) become applicable only after a defendant has been duly convicted of a substantive violation of § 841(a).

---

(C) Abuse of the drug or other substances may lead to severe psychological or physical dependence.

21 U.S.C. § 812(b)(2).

[23]Although the indictment here charged "quantities" of two controlled substances, specifically, methamphetamine and amphetamine, an indictment charging simply possession with intent to distribute "a controlled substance" equally charges some drug type and amount.

Section 841(b)'s penalties begin with a statutory maximum of life imprisonment in § 841(b)(1)(A) and decrease in severity based on this host of sentencing factors, including drug types and quantities.[24]  The first three subsections of § 841(b)(1) govern offenses involving controlled substances listed in schedules I and II, such as the methamphetamine and amphetamine involved in this case.  Accordingly, those three subsections will receive the brunt of our attention.

Section 841(b)(1)(A) provides that "[i]n the case of a violation of subsection (a)" of § 841 "involving" certain enumerated quantities of certain enumerated drug types, the defendant "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life."  21 U.S.C. § 841(b)(1)(A).  Section 841(b)(1)(B) largely mirrors § 841(b)(1)(A), providing that "[i]n the case of a violation of subsection (a)" of § 841 "involving" certain lesser amounts of those same drugs set forth in § 841(b)(1)(A), the defendant "shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years." Id. § 841(b)(1)(B).

_____

[24]One estimate is that if the factors in § 841(b) are treated as elements of an offense for constitutional purposes, and not sentencing factors as clearly enacted by Congress, then this analysis results in approximately 350 different offenses based on these factors.  See United States v. Promise, 255 F.3d 150, 175 (4th Cir. 2001) (en banc) (stating a "rough estimation" that "some 350 separate offenses" would exist in § 841 under "an interpretation of that provision that deems the facts in subsection (b) to be elements of the § 841(a) offenses") (Luttig, J., concurring).

Section 841(b)(1)(C) applies to all other violations of § 841(a) involving schedule I or II substances and provides, "In the case of a controlled substance in schedule I or II, . . . except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years." 21 U.S.C. § 841(b)(1)(C).[25]  Section 841(b)(1)(C) sets a term of imprisonment for offenses without regard to drug quantity.[26]

Thus, § 841 is bifurcated, providing a clear dichotomy of offense elements and sentencing factors.  Specifically, the plain language and structure of the statute reflect a congressional intent to create a single offense, defined in § 841(a), and to provide for penalties in § 841(b) dependant upon sentencing factors, such as drug types and quantities.[27]

---

[25]Section 841(b)(1)(D), referred to in § 841(b)(1)(C), governs offenses involving certain amounts of marijuana and other drugs and provides for a maximum term of imprisonment of five years in the absence of a prior conviction for a felony drug offense.  21 U.S.C. § 841(b)(1)(D); see infra note 37.

[26]We have described § 841(b)(1)(C) as a "catchall provision."  United States v. Trout, 68 F.3d 1276, 1280 (11th Cir. 1995).  Other circuits have adopted the same terminology.  See United States v. Houle, 237 F.3d 71, 79 (1st Cir.) ("Section 841(b)(1)(C), the statutory catchall[,] authorizes a term of imprisonment for a schedule I or II narcotic, such as cocaine, without reference to drug quantity, of 'not more than 20 years.'"), cert. denied, 121 S. Ct. 2234 (2001); United States v. Allison, 953 F.2d 870, 873 (5th Cir. 1992) (stating that § 841(b)(1)(C) "is a more lenient catchall provision for all Schedule II drugs not addressed in" §§ 841(b)(1)(A) or 841(b)(1)(B)), opinion amended on other grounds, 986 F.2d 896 (5th Cir. 1993); United States v. Marshall, 908 F.2d 1312, 1322 (7th Cir. 1990) (describing § 841(b)(1)(C) as "the catchall statute").

[27]In contrast, other federal statutes that were the subject of the Supreme Court's attention in recent cases lack this bifurcated structure, clear dichotomy, and indisputable congressional intent.  See Jones, 526 U.S. at 235 (construing the carjacking statute); Castillo v. United States, 530 U.S. 120, 124-25, 131 (2000) (construing 18 U.S.C. § 924(c)(1) (1988 ed., Supp. V), and noting that "Congress placed the element 'uses or carries a firearm' and the word 'machinegun'

29

## D. Circuit Precedent Prior to <u>Apprendi</u>

On multiple occasions prior to both <u>Jones</u> and <u>Apprendi</u>, this Court construed the federal drug statute and concluded that while a "controlled substance" is an element of an offense under § 841(a), neither the nature nor the quantity of that substance is an element of that offense that must be submitted to a jury or proved beyond a reasonable doubt. Instead, this Court held that in order to obtain a conviction, the government need show only that some controlled substance was involved.[28] The defendants in these pre-<u>Apprendi</u> cases often

---

in a single sentence, not broken up with dashes or separated into subsections" and that this structure indicated that "Congress intended that the firearm type-related words . . . refer[red] to an element of a separate, aggravated crime").

[28]<u>See, e.g.</u>, <u>United States v. Rutherford</u>, 175 F.3d 899, 906 (11th Cir. 1999) (concluding that to prove completely the elements of an offense under § 841(a), the government need not prove that a particular controlled substance was involved in the offense conduct, it need only show that some controlled substance was involved); <u>United States v. Mejia</u>, 97 F.3d 1391, 1392-93 (11th Cir. 1996) ("To sustain a conviction for possession of cocaine with intent to distribute, the government must prove beyond a reasonable doubt that the defendant knowingly possessed the cocaine and that he intended to distribute it."); <u>United States v. Perez</u>, 960 F.2d 1569, 1574 (11th Cir. 1992) ("The rule that has developed in this circuit . . . is that the weight or quantity of a controlled substance is not an element of the offense that must be included in a § 841(a)(1) indictment."); <u>United States v. Gomez</u>, 905 F.2d 1513, 1514 (11th Cir. 1990) ("[I]t is well-settled that to sustain a conviction for possession with intent to distribute a controlled substance, it need not be proved that the defendant had knowledge of the particular drug involved, as long as he knew he was dealing with a controlled substance."); <u>United States v. Williams</u>, 876 F.2d 1521, 1525 (11th Cir. 1989) ("A violation of section 841(a)(1) occurs when the government proves beyond a reasonable doubt that a defendant possessed and intended to distribute a 'controlled substance,' regardless of whether that substance is cocaine or cocaine base."); <u>United States v. Smith</u>, 840 F.2d 886, 888 (11th Cir. 1988) (noting that the express language of § 841(a) "puts no quantity requirement on the amount of controlled substance possessed"), <u>abrogated on other grounds</u>, <u>Gozlon-Peretz v. United States</u>, 498 U.S. 395 (1991); <u>United States v. Simmons</u>, 725 F.2d 641, 643 (11th Cir. 1984) ("The statute makes it a crime for a person to possess with intent to distribute a controlled substance . . . . [T]he crime can be proved without any consideration of the amount involved . . . .").

argued that drug quantity was an essential element of their offenses.[29] We

consistently rejected this claim, construing § 841(a) as setting forth a single,

complete offense and § 841(b) as setting forth sentencing factors relevant only to

determining a defendant's sentence for having violated § 841(a).[30]

We preserved this interpretation of § 841 even after Jones. See United

States v. Hester, 199 F.3d 1287 (11th Cir.), vacated and remanded, 531 U.S. 941

(2000).[31] Hester represented the first serious encounter between our prior statutory

interpretation and the constitutional rule of Apprendi, which at that time existed in

---

[29]Indeed, in our circuit, defendants were raising the due process issue long before Jones
and Apprendi were decided. In United States v. Perez, 960 F.2d 1569, 1574 (11th Cir. 1992), we
summarized some of our decisions starting in 1984 that involved defendants' challenges to the
enhanced penalties in § 841(b) based on the failure of the indictment to allege a specific drug
quantity. Those decisions, however, focused on whether the specific allegation of drug quantity
was needed in the indictment in order to give the defendant fair notice of the government's intent
to seek enhanced penalties, rather than on whether the jury was required to make that
determination beyond a reasonable doubt. Subsequently, beginning in 1990, our decisions began
to address not only whether a specific drug quantity must be alleged in the indictment to give the
defendant notice of the enhanced penalties but also whether it must be proven to a jury beyond a
reasonable doubt. See United States v. Cross, 916 F.2d 622, 623-24 (11th Cir. 1990).

[30]Our reading of the statute was consistent with that of every other circuit to address the
issue. See United States v. Promise, 255 F.3d 150, 176 (4th Cir. 2001) (en banc) (listing cases
and observing, "[s]ignificantly, even in the wake of Jones, which raised the spectre of a
constitutional limitation on the legislative power to define offenses, and thus would have
prompted a more searching, cautious statutory interpretation, every single court still held that
Congress intended the facts in section 841(b) to be sentencing factors") (Luttig, J., concurring);
id. at 167 (Niemeyer, J., concurring) (noting that "no court reached a different conclusion in
interpreting this statute").

[31]The defendant in Hester was sentenced to a twenty-year mandatory minimum sentence,
and this Court affirmed. See Hester, 199 F.3d at 1288-89. On October 16, 2000, the Supreme
Court summarily vacated the judgment and remanded the case "for further consideration in light
of" Apprendi. Hester v. United States, 121 S. Ct. 336 (2000) (mem.). Hester remains pending in
this Court.

more embryonic form as footnote six of <u>Jones</u>.  In <u>Hester</u>, we noted that our precedent construing § 841 constituted "binding authority" in which we "clearly rejected the characterization of the amount of drugs as an element of the offense under [section] 841."  <u>Id.</u> at 1291 (citing cases).  We then noted that this precedent foreclosed any argument that drug quantity was an element of an offense under § 841 "unless the Supreme Court decided otherwise in <u>Jones</u>."  <u>Id.</u>  After quoting and discussing footnote six, we adopted a narrow reading of <u>Jones</u> and concluded that the constitutional principles referenced in <u>Jones</u> did not disrupt our prior approach to § 841 cases.[32]  <u>Id.</u> at 1291-92.  We therefore continued to follow our precedent holding that § 841 is clear and unambiguous and reaffirmed that "[a]s we have announced in our previous cases, Congress decided that the elements of a § 841 offense do not include the weight of the drugs."  <u>Id.</u> at 1292.[33]

---

[32]We determined in <u>Hester</u> that the language used in footnote six "allow[ed] two plausible readings of <u>Jones</u>."  <u>Hester</u>, 199 F.3d at 1291.  The first was that "footnote six means exactly what it says," thus resulting in "a broad rule" that we presciently observed "would have sweeping implications for factors that Congress has traditionally considered sentencing considerations, not elements of the crime."  <u>Id.</u> at 1291-92.  The alternative, and narrower, reading was that "when a court finds a statute and its legislative history unclear," as the Supreme Court found regarding the federal carjacking statute at issue in <u>Jones</u>, the court "should err in favor of the defendant and consider an element of the offense any factor which increases the maximum penalty for the offense."  <u>Id.</u>  We adopted this latter, narrower reading of <u>Jones</u>, concluding that the <u>Jones</u> Court proceeded with the statutory analysis "only because it first found Congress' intent ambiguous."  <u>Id.</u> at 1292.

[33]We noted also that other circuits had, at that time, "adopted the narrower reading of <u>Jones</u>," a reading that the Tenth Circuit deemed a "'more reasonable reading of <u>Jones</u>, one that anchors its holdings to its facts, i.e., the statutory provision involved.'"  <u>Hester</u>, 199 F.3d at 1292 (quoting <u>United States v. Eads</u>, 191 F.3d 1206, 1213-14 (10th Cir. 1999), <u>cert. denied</u>, 530 U.S. 1231 (2000)).

**E.    Apprendi's Impact on § 841 and Our Precedent**

Such was the landscape applicable to the federal drug statute before

Apprendi squarely adopted the constitutional principle that "[o]ther than the fact of

a prior conviction, any fact that increases the penalty for a crime beyond the

prescribed statutory maximum must be submitted to a jury, and proved beyond a

reasonable doubt." Apprendi, 530 U.S. at 490.  Our reading of the tenor of the

Supreme Court's decisions is that § 841 is impacted by Apprendi but only to the

limited extent that judge-decided facts actually increase a defendant's sentence

above the prescribed statutory maximum.  We explain the narrow manner in which

Apprendi affects § 841.[34]

Fundamentally, Apprendi did not announce any new principles of statutory

construction.  Rather, Apprendi addressed only the constitutionality of a state

statutory sentencing scheme, and its holding only described constitutional

---

[34]In this case, the government does not ask that we construe § 841(b) as prescribing an overall statutory maximum sentence of life imprisonment for all § 841(a) violations, a view recently endorsed by four judges of the Fourth Circuit.  See United States v. Promise, 255 F.3d 150, 169-70 (4th Cir. 2001) (en banc) ("As a consequence of th[e] indisputable congressional definition of the section 841 offenses, . . . the statutory maximum sentence for commission of these offenses, and therefore the punishment authorized by the jury's verdict of guilt of a section 841 offense, is life imprisonment, plus fine, with the actual sentence imposed dependent upon judicial findings of the presence or absence of the various sentencing factors, including drug amount and type, identified in section 841(b).") (Luttig, J., concurring); see also id. at 165 (Wilkinson, C.J., concurring); id. at 167-68 (Niemeyer, J., concurring); id. at 186 (Gregory, J., concurring).  This approach, which we have adopted when permitted by the plain statutory language, effectively immunizes § 841 from any Apprendi problem.  See United States v. Pounds, 230 F.3d 1317, 1319 (11th Cir. 2000) (holding in a case involving 18 U.S.C. § 924(c)(1) that "Apprendi is inapplicable under the present facts because every conviction under § 924(c)(1)(A) carries with it a statutory maximum sentence of life imprisonment, regardless of what subsection the defendant is sentenced under"), cert. denied, 121 S. Ct. 1631 (2001).

principles affecting such statutory sentencing schemes.  Apprendi thus does not change our precedent interpreting § 841 outlined above but instead imposes only an external constitutional restraint under the Sixth Amendment and the Due Process Clause.  While Apprendi does not affect our prior statutory construction of § 841(b) as setting forth purely sentencing factors, it does alter our prior conclusion that such judge-decided facts satisfy a defendant's constitutional rights to due process and a jury trial even when those factors increase a defendant's sentence beyond the prescribed statutory maximum.[35]

This external constitutional restraint, however, does not apply to the vast majority of sentencing scenarios.  To repeat the oft-repeated, Apprendi explicitly limited its holding to facts "that increase[] the penalty for a crime beyond the prescribed statutory maximum."  Apprendi, 530 U.S. at 490 (emphasis added).  Therefore, Apprendi has no effect on cases in which a defendant's actual sentence falls within the range prescribed by the statute for the crime of conviction.  As stated above, § 841(b)(1)(C) provides a statutory penalty range applicable to all drug offenses involving the controlled substances listed on Schedules I or II without regard to drug quantity.  Apprendi thus does not even apply when a defendant's actual sentence for a § 841 drug offense falls within that range.  See

---

[35]Because Apprendi announced a new rule of constitutional law, we apply it to criminal cases pending on direct review.  See Griffith v. Kentucky, 479 U.S. 314, 322 (1987).  This is especially true here, as the Sanchezes timely raised the issues decided by Apprendi not only in this Court but in the district court as well.

United States v. Gerrow, 232 F.3d 831, 834 (11th Cir. 2000) ("[T]here is no error, plain or otherwise, under Apprendi where the term of imprisonment is within the statutory maximum set forth in § 841(b)(1)(C) for a cocaine offense without regard to drug quantity."), cert. denied, ___ S. Ct. ___, No. 00-9373 (Oct. 1, 2001); United States v. Gallego, 247 F.3d 1191, 1197 (11th Cir. 2001) (noting that because the defendant's sentence of 168 months' imprisonment fell "below the twenty year maximum prescribed by section 841(b)(1)(C)," there is "no error under Apprendi"); United States v. Le, 256 F.3d 1229, 1240 (11th Cir. 2001) (stating in a case under the Hobbs Act that because the defendant's sentence was below the statutory maximum, "Apprendi is inapplicable").[36] Accordingly, in a § 841 case, when a defendant's sentence falls at or below the statutory maximum penalty in § 841(b)(1)(C), there is no Apprendi error and there is no need for drug quantity to

---

[36]In United States v. Shepard, 235 F.3d 1295 (11th Cir. 2000), cert. denied, ___ S. Ct. ___, No. 00-10410 (Oct. 1, 2001), we utilized a slightly different approach to reach the same result, stating that there was Apprendi error but concluding that because the defendant's sentence "falls within the authorized range, we find no prejudice." Id. at 1297. In United States v. Candelario, 240 F.3d 1300 (11th Cir.), cert. denied, 121 S. Ct. 2535 (2001), we discussed Shepard and pointed out:

> Shepard's holding was merely that a sentence that falls below the twenty year maximum, as set forth in 21 U.S.C. § 841(b)(1)(C), is not subject to reversal due to Apprendi. Shepard thus stands only for the proposition, along with Gerrow, that "there is no error, plain or otherwise, under Apprendi where the term of imprisonment is within the statutory maximum set forth in § 841(b)(1)(C) for a cocaine offense without regard to drug quantity."

Id. at 1308 n.11 (quoting Gerrow, 232 F.3d at 834) (internal citation omitted). To resolve any doubt, however, we hereby limit Shepard's holding to the above proposition and reject its prejudice-based analysis. When a sentence for a § 841 offense does not exceed the prescribed statutory maximum under § 841(b)(1)(C), Apprendi is irrelevant.

be submitted to a jury and proven beyond a reasonable doubt.[37]

Additionally, Apprendi has no application to cases in which statutory sentencing factors trigger a mandatory minimum sentence. As noted above, Apprendi expressly preserved McMillan, in which the Supreme Court approved the use of judge-made factual findings to sentence a defendant to a mandatory minimum penalty. Apprendi, 530 U.S. at 487 n.13. Therefore, in a § 841 case, Apprendi does not prohibit a judge from making drug quantity findings and sentencing a defendant to one of the mandatory minimum sentences in § 841(b), provided that the mandatory minimum term does not exceed the otherwise applicable statutory maximum. This important proposition leaves intact our pre-Apprendi cases involving the imposition of mandatory minimum sentences under § 841(b). See, e.g., United States v. Gomez, 905 F.2d 1513, 1514 (11th Cir. 1990) ("As to sentencing, it is now equally well-settled that a defendant need not know the quantity of drug involved in the offense in order to be subject to a mandatory minimum sentence based on quantity under § 841(b)(1)."). Thus, we join six other circuits in concluding that there is no error under Apprendi when the district court

_____

[37]The only exception involves quantities of marijuana, hashish, hashish oil, and the other drugs specified in § 841(b)(1)(D), for which the maximum sentence is five years' imprisonment. See 21 U.S.C. § 841(b)(1)(D). The same rules discussed in this opinion, however, also apply to those cases, with the only difference being that the prescribed statutory maximum penalty is five years' imprisonment.

sentences a defendant to a mandatory minimum sentence under § 841(b).[38]

Instead, <u>Apprendi</u> applies to § 841 cases only in this limited sense: In light of <u>Apprendi</u>, there is constitutional error in a defendant's sentencing procedures when drug quantity increases a defendant's sentence beyond the prescribed statutory maximum under § 841(b)(1)(C), unless it was submitted to a jury and proven beyond a reasonable doubt. Conversely, in a § 841 case in which a defendant's ultimate sentence falls at or below the statutory maximum penalty in § 841(b)(1)(C), there is no <u>Apprendi</u> error and drug quantity need not have been submitted to a jury and proven beyond a reasonable doubt. Moreover, judge-made findings of drug quantity may be used to sentence a defendant anywhere within the applicable statutory range and, as outlined above, may be used in all guidelines calculations. All of these rules on the effect of <u>Apprendi</u> on § 841 have the additional benefit of being consistent with the views adopted in virtually every other circuit to address these matters to date.[39]

---

[38]All but one of the seven circuits to consider the issue have decided that <u>Apprendi</u> does not invalidate the imposition of a mandatory minimum sentence under §§ 841(b)(1)(A) or 841(b)(1)(B), as long as the sentence does not exceed the statutory maximum sentence under § 841(b)(1)(C). <u>See</u> <u>United States v. Rodgers</u>, 245 F.3d 961, 965-68 (7th Cir. 2001); <u>United States v. Harris</u>, 243 F.3d 806, 809 (4th Cir. 2001); <u>United States v. Robinson</u>, 241 F.3d 115, 122 (1st Cir. 2001), <u>cert. denied</u>, ___ S. Ct. ___, No. 00-10411 (Oct. 1, 2001); <u>United States v. Garcia-Sanchez</u>, 238 F.3d 1200, 1201 (9th Cir. 2001); <u>United States v. Keith</u>, 230 F.3d 784, 787 (5th Cir. 2000), <u>cert. denied</u>, 121 S. Ct. 1163 (2001); <u>United States v. Aguayo-Delgado</u>, 220 F.3d 926, 933-34 (8th Cir.), <u>cert. denied</u>, 531 U.S. 1026 (2000). <u>But see</u> <u>United States v. Ramirez</u>, 242 F.3d 348, 351-52 (6th Cir. 2001); <u>United States v. Flowal</u>, 234 F.3d 932, 936-38 (6th Cir. 2000).

[39]<u>See</u> <u>infra</u> note 50.

### III.  THE SANCHEZES' CLAIMS

Having described <u>Apprendi</u> and its effect on § 841 and our precedent, we turn to the Sanchezes' challenges to their indictment, plea colloquies, convictions, and sentences.  The Sanchezes seek to stretch <u>Apprendi</u>'s constitutional rule and <u>Jones</u>'s dicta to apply to the beginning, middle, and end of the criminal procedures in their cases.  Specifically, they emphasize that from the outset of their cases, the government sought enhanced penalties under § 841(b)(1)(B) based on the quantity of the methamphetamine and amphetamine involved in their offense.  As a result, they contend that their cases were "§ 841(b)(1)(B) cases" and thus that drug quantity was an element of their offense that not only had to be submitted to the jury and proven beyond a reasonable doubt but that also had to be charged in their indictment.  Consistent with these views, the Sanchezes timely moved in the district court to dismiss the indictment for failure to allege the required element of drug quantity, specifically citing <u>Jones</u>.  Upon denial of that motion, they entered conditional plea agreements preserving that issue for appeal.

On appeal, the Sanchezes also contend that because their cases are "§ 841(b)(1)(B) cases," the failure to comply with this trio of procedural requirements – indictment, jury submission, and proof beyond a reasonable doubt – was constitutional error under <u>Apprendi</u> or at least under <u>United States v. Rogers</u>, 228 F.3d 1318 (11th Cir. 2000), which the Sanchezes assert expanded <u>Apprendi</u> to all

"§ 841(b)(1)(A) and § 841(b)(1)(B) cases." They further argue that the failure to comply with this procedural triumvirate constituted constitutional error that is so fundamental as to be structural error and reversible per se. They also assert that the omission of an essential element from the indictment constituted a jurisdictional error requiring dismissal of the indictment.

Alternatively, the Sanchezes claim that the lack of a specific drug quantity in their indictment meant that their maximum sentence was limited to twenty years under § 841(b)(1)(C) and that their plea colloquies thus did not comply with Rule 11. Although their indictment charged "quantities of methamphetamine and amphetamine," they submit that it had to charge a specific drug quantity in order to support an enhanced sentence under § 841(b)(1)(B). They argue that the district court erred not only by advising them of the increased penalty ranges corresponding to §§ 841(b)(1)(A) and 841(b)(1)(B) in Ignasio Sanchez's case and § 841(b)(1)(A) in Santiago Sanchez's case but also by not mentioning § 841(b)(1)(C) and by not advising them that only the lower penalty range under § 841(b)(1)(C) was applicable to the charges in their indictment. In short, the Sanchezes challenge not merely their sentences, as defendant Apprendi did, but also their indictment, plea colloquies, and convictions stemming from that indictment. We are not persuaded by their arguments and address each issue in turn.

## A. Motion to Dismiss the Indictment

Of course, the correct response to an argument that the Sanchezes make about the lack of a specific drug quantity in a § 841 indictment is usually that by entering a guilty plea and ultimately stipulating to or not contesting drug quantity, defendants thereby waive the right to appeal on the basis of <u>Apprendi</u>.[40]  The

---

[40]This Court has indicated that when a defendant pleads guilty and accepts the drug quantity determination contained in the pre-sentence report or agrees to drug quantity at sentencing or in his plea colloquy, he waives any right to appeal his sentence on the basis of <u>Apprendi</u>, regardless of what sentence is ultimately imposed.  <u>See</u> <u>United States v. Walker</u>, 228 F.3d 1276, 1278 n.1 (11th Cir. 2000) (affirming the defendant's life sentence, noting that "[i]n <u>Apprendi</u>, the Supreme Court required that during a jury trial, the government must be made to prove and the jury convict on the factual evidence necessary for a sentence enhancement beyond the statutory maximum" and concluding that since the defendant "pled guilty in this case and accepted the contents of the PSI, he lost any right to appeal on the basis of this argument"), <u>cert. denied</u>, 121 S. Ct. 1408 (2001).  This is so because a defendant's stipulation as to drug quantity serves to waive the right to a jury trial on that issue, even when that drug quantity results in a sentence in excess of the otherwise applicable statutory maximum.  Indeed, just as the defendant's guilty plea to a substantive offense serves as the equivalent to a jury's finding beyond a reasonable doubt of that defendant's guilt, so does a stipulation to a specific drug quantity – whether as part of a written plea agreement, part of a jury trial, or at sentencing – serve as the equivalent of a jury finding on that issue, since the stipulation takes the issue away from the jury.

Accordingly, in prior cases in which defendants pled guilty to violating § 841, we have affirmed sentences that violated <u>Apprendi</u> when there was agreement about the drug quantity. <u>See</u> <u>United States v. Pease</u>, 240 F.3d 938, 944 (11th Cir. 2001) (affirming the defendant's thirty-year sentence where he admitted in both his plea agreement and plea colloquy that he had accepted delivery of three kilograms of cocaine); <u>United States v. Gallego</u>, 247 F.3d 1191, 1200 (11th Cir. 2001) (affirming the defendant's life sentence when his counsel stated "there is no question but that [the defendant] had the ten kilograms of cocaine, he pled guilty to possessing the ten kilograms of cocaine").  Similarly, we have affirmed sentences that violated <u>Apprendi</u> when the defendant elected to go to trial but where evidence of drug quantity was uncontested. <u>See</u> <u>United States v. Nealy</u>, 232 F.3d 825, 830 (11th Cir. 2000) (holding that a preserved <u>Apprendi</u> error was harmless where the evidence of drug quantity was "undisputed" such that "no reasonable jury could have rationally concluded that Defendant was guilty of the substantive offense . . . but that the amount of [crack] cocaine possessed was less than" the five grams necessary for sentencing him to the penalty range in § 841(b)(1)(B), and thus affirming the defendant's thirty-two-year sentence); <u>Gallego</u>, 247 F.3d at 1198-99 (affirming a defendant's life sentence when he admitted in an objection to the pre-sentence report and at sentencing that he personally possessed four kilograms of cocaine during the offense, and affirming another

Sanchezes' plea agreements, however, were conditional on their right to appeal the sufficiency of the indictment. Because the Sanchezes' conditional plea agreements preserved the indictment issue for appellate review, their guilty pleas do not resolve the matter as would normally be the case. Thus, in light of Jones and Apprendi, we address whether the district court erred in denying the Sanchezes' motion to dismiss their indictment. In other words, we consider whether the Sanchezes correctly claimed in that motion that drug quantity is an essential element that now must always be charged in an indictment for a § 841 offense. We first address the standard of review and then why we conclude that the district court did not err in denying the Sanchezes' motion to dismiss the indictment.

### 1. Standard of Review

Because the Sanchezes timely raised and thus preserved for appeal the issue of error in their indictment under Apprendi, we review it de novo, but we will

---

defendant's life sentence when there was "undisputed testimony" that 326 kilograms of cocaine were involved in the offense); United States v. Wims, 245 F.3d 1269, 1272-74 (11th Cir. 2001) (affirming the defendant's concurrent sentences of forty years and life imprisonment when he did not contest drug quantity); United States v. Candelario, 240 F.3d 1300, 1311-12 (11th Cir.) (affirming the defendant's sentence where, based on the testimony of the sole witness, "no reasonable jury could have concluded that Candelario was guilty of the substantive offense . . . , but that the amount was less than five grams"), cert. denied, 121 S. Ct. 2535 (2001); United States v. Swatzie, 228 F.3d 1278, 1283 (11th Cir. 2000) (affirming the defendant's life sentence because there was "no serious dispute that [he] possessed at least 5 gm of cocaine base, enough for the increased statutory maximum, and no evidentiary basis existed for the jury reasonably to have found that [the defendant] possessed drugs with intent to distribute, but did not possess both cocaine base and powder at least in the amounts the authorities bagged at [the defendant]'s house"), cert. denied, 121 S. Ct. 2600 (2001). We reaffirm all of the actual holdings in those decisions.

reverse only for harmful error. See United States v. Mills, 138 F.3d 928, 938-39 (11th Cir. 1998). As we have held, Apprendi error is constitutional error, subject to harmless or plain error review depending on the timing of the constitutional objection. See, e.g., United States v. Smith, 240 F.3d 927, 929 (11th Cir. 2001) (affirming thirty-year sentence); United States v. Candelario, 240 F.3d 1300, 1308 (11th Cir.) (same), cert. denied, 121 S. Ct. 2535 (2001); United States v. Nealy, 232 F.3d 825, 829-30 & n.4 (11th Cir. 2000) (affirming thirty-two-year sentence).

Given our precedent, we reject the Sanchezes' claims that Apprendi error is either structural or jurisdictional. In Smith, Candelario, and Nealy, we correctly outlined why an Apprendi error did not create a structural error. In Nealy, we explained, "Structural error occurs only in the rare instance involving a 'structural defect affecting the framework within [which] the trial proceeds, rather than simply an error in the trial process itself.'" Nealy, 232 F.3d at 829 n.4 (quoting Arizona v. Fulminante, 499 U.S. 279, 310 (1991)).[41] "Failure to submit the issue of drug quantity to the jury is just an element of the trial process and does not rise to the level of structural error. . . ." Id. It "is not structural error because it 'does not *necessarily* render a criminal trial fundamentally unfair or [an] unreliable vehicle

---

[41]There is no separate category of structural error apart from constitutional error. The only question is whether any constitutional errors under Apprendi rise to the level of structural error. Structural error occurs only in "a very limited class of cases," Johnson v. United States, 520 U.S. 461, 468 (1997), and "necessarily render[s] a trial fundamentally unfair." Rose v. Clark, 478 U.S. 570, 577 (1986).

for determining guilt or innocence.'"  Id. (quoting Neder v. United States, 527 U.S.

1, 9 (1999)).  Harmless error review is "appropriate" in the Apprendi context

"because it 'block[s] setting aside [sentences] for small errors or defects that have

little, if any, likelihood of having changed the result of the trial.'"  Id. at 829-30

(quoting Chapman v. California, 386 U.S. 18, 22 (1967)).

Our precedent follows Neder v. United States, 527 U.S. 1 (1999), where the

Supreme Court held that "the omission of an element [in a jury instruction] is an

error that is subject to harmless-error analysis."  Id. at 15.  Any Apprendi error

arising from the omission of a specific drug quantity in a § 841 indictment is

analogous to the jury-instruction error in Neder.[42]  Indeed, part of the Sanchezes'

argument is precisely that a specific drug quantity must be charged in the

indictment so that it will then be submitted to the jury and proven beyond a

reasonable doubt.  A defendant's right to have a petit jury find each element of the

offense is no less important than his right to have that same element presented to

the grand jury.[43]

_____

[42]Ultimately, Nealy determined that the jury-instruction error was harmless but that the defendant abandoned the indictment issue by not raising it in his initial brief.  Because the Sanchezes timely raised the indictment issue and their conditional plea agreements preserved the issue for appellate review, we address the standard of review applicable to that issue in the Apprendi context.  In United States v. Swatzie, 228 F.3d 1278 (11th Cir. 2000), cert. denied, 121 S. Ct. 2600 (2001), we emphasized that the error at issue in Neder was "in material respects indistinguishable from error under Apprendi."  Id. at 1283.

[43]Neder explained that "'most constitutional errors can be harmless.'"  527 U.S. at 8 (quoting Fulminante, 499 U.S. at 306).  "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may

43

Likewise, we have rejected the claim, which the Sanchezes also make, that an Apprendi error creates a jurisdictional error. See United States v. Cromartie, ___ F.3d ___, No. 00-13957 (11th Cir. Oct. 3, 2001); McCoy v. United States, ___ F.3d ___, No. 00-16434 (11th Cir. Sept. 25, 2001).[44] A jurisdictional defect occurs only where a federal court lacks power to adjudicate at all. Id.[45] The constitutional rights to be charged by a grand jury, be informed of an accusation, and to have a jury trial are the personal rights of the defendant and do not go to the district court's subject matter jurisdiction. Indeed, Federal Rule of Criminal Procedure 7(b) provides that certain offenses "may be prosecuted by information" if the defendant "waives in open court prosecution by indictment." Fed. R. Crim. P. 7(b). Such waiver would not be possible if the indictment-related right were jurisdictional, as parties cannot confer subject-matter jurisdiction on federal courts

_____

have occurred are subject to harmless-error analysis." Id. (quoting Rose v. Clark, 478 U.S. 570, 579 (1986)). The list in Neder of structural errors not subject to harmless-error review is a short one. See id. (mentioning complete denial of counsel, biased trial judge, racial discrimination in grand jury selection, denial of self-representation at trial, denial of public trial, and defective reasonable doubt instruction as structural errors).

[44]For the reasons outlined in more detail in McCoy and Cromartie, we disagree with the position in Judge Barkett's concurring opinion and conclude that Apprendi error based on failure to allege a specific drug quantity does not constitute a jurisdictional defect in a § 841 indictment even if the defendant has been sentenced in excess of twenty years under § 841(b)(1)(A) or § 841(b)(1)(B).

[45]See also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (describing subject matter jurisdiction as "the courts' statutory or constitutional power to adjudicate the case"); Escareno v. Carl Nolte Sohne GmbH & Co., 77 F.3d 407, 412 (11th Cir. 1996) (noting that a jurisdictional defect is one that "strip[s] the court of its power to act and make[s] its judgment void").

by consent.  See United States v. Griffin, 303 U.S. 226, 229 (1938).

The notion that any Apprendi-based challenge has a jurisdictional dimension is also implicitly rejected by our precedent's consistent application of plain or harmless error review.  See, e.g., United States v. Pease, 240 F.3d 938, 943-44 (11th Cir. 2001) (finding plain error under Apprendi in a thirty-year sentence where the indictment did not allege drug quantity but finding no effect on defendant's substantial rights); United States v. Swatzie, 228 F.3d 1278, 1282-84 (11th Cir. 2000) (assuming arguendo a life sentence was plain error under Apprendi where indictment did not allege drug quantity but finding no effect on defendant's substantial rights), cert. denied, 121 S. Ct. 2600 (2001).[46]

The Tenth Circuit, sitting en banc, explicitly endorsed this approach.  See United States v. Prentiss, 256 F.3d 971 (10th Cir. 2001) (en banc) (concluding that "the failure of an indictment to allege an essential element of a crime does not

---

[46]Our application of plain error review in the indictment context is consistent with our practice in other Apprendi cases, centering on the failure to submit an element to the jury, where we also applied harmless or plain error analysis based on the timing of the objection.  See United States v. Gallego, 247 F.3d 1191, 1198-2001 (11th Cir. 2001) (affirming life sentences); United States v. Wims, 245 F.3d 1269, 1272 (11th Cir. 2001) (affirming life sentence); United States v. Candelario, 240 F.3d 1300, 1311 (11th Cir.) (affirming 360-month sentence), cert. denied, 121 S. Ct. 2535 (2001); United States v. Pease, 240 F.3d 938, 943 (11th Cir. 2001) (affirming thirty-year sentence); United States v. Smith, 240 F.3d 927, 930 (11th Cir. 2001) (affirming thirty-year sentence); United States v. Swatzie, 228 F.3d 1278, 1282-83 (11th Cir. 2000) (affirming life sentence), cert. denied, 121 S. Ct. 2600 (2001).  Our approach is consistent with decisions from other circuits.  See, e.g., United States v. Vazquez, ___ F.3d ___, No. 99-3845 (3d Cir. Oct. 9, 2001) (stating that "Apprendi violations do not constitute structural defects," affirming the defendant's 292-month sentence under plain error review, and listing in footnotes 5-10 other circuits' decisions also applying plain error review).

deprive a district court of subject matter jurisdiction; rather, such failure is subject to harmless error review"). Two other circuits have handled omissions of an element from an indictment in a similar manner.[47] See United States v. Nance, 236 F.3d 820, 825-26 (7th Cir. 2000) (stating in a § 841 case involving an Apprendi challenge that indictment and jury-instruction errors are "analogous to the instructional error the Court considered in Neder" and did not constitute structural error, and affirming the defendant's 262-month sentence under plain-error review); United States v. Mojica-Baez, 229 F.3d 292, 310-12 (1st Cir. 2000) (stating in a 18 U.S.C. § 924(c)(1) case where the indictment did not charge a type of firearm that the court was "compelled by the Supreme Court's decision in Neder to subject the indictment error in this case to plain error review," and thus finding error was not structural and affirming the defendants' ten-year sentences under 18 U.S.C. § 924(c)(1)(B)), cert. denied, 121 S. Ct. 2215 (2001).[48] We now turn to the

_____

[47]But see United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999) (concluding in a Hobbs Act case where the indictment failed to state the required mens rea that "if properly challenged prior to trial, an indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment"); United States v. Spinner, 180 F.3d 514, 516 (3d Cir. 1999) (interstate commerce element). While the Second Circuit has held that the failure to include the type of firearm in a 18 U.S.C. § 924(c) indictment is jurisdictional error not subject to plain error review, see United States v. Tran, 234 F.3d 798, 806-09 (2d Cir. 2000), that issue is being addressed en banc. See United States v. Thomas, 248 F.3d 76, 78 (2d Cir. 2001) (en banc) (order asking the parties to brief whether Tran's reasoning was "sound").

[48]For the reasons set forth in detail in these opinions, we do not believe that the Supreme Court's decision in Stirone v. United States, 361 U.S. 212 (1960), which discussed the interstate commerce requirement under the Hobbs Act, dictates a contrary result. See Prentiss, 256 F.3d at 984 n.11; Mojica-Baez, 229 F.3d at 310. Furthermore, Stirone was decided before Chapman v. California, 386 U.S. 18, 22 (1967), in which the Supreme Court first stated that some

46

Sanchezes' <u>Apprendi</u>-based challenge to their indictment.

## 2.      The Sanchezes' Indictment

By sparing no expense in the foundational discussion above, the case-specific application of <u>Apprendi</u> that follows will enjoy the luxury of brevity. The correct response to the Sanchezes' argument is that they ultimately were sentenced below the otherwise applicable statutory maximum in § 841(b)(1)(C), and thus, drug quantity never was an element of their offense under § 841 and never became an element under <u>Apprendi</u>. Therefore, there is no <u>Apprendi</u> error in their indictment or in their convictions and sentences stemming from that indictment.

Both before and after <u>Apprendi</u>, in any § 841 case, an indictment charging that a defendant violated § 841 properly charges a complete federal crime without any reference to either drug type or quantity. While under <u>Apprendi</u> the allowable maximum sentence for a § 841 violation may differ depending on how drug quantity was handled at the plea, trial, or sentencing phases, and on the timeliness of an <u>Apprendi</u>-based objection, <u>Apprendi</u> has no effect whatsoever on whether a complete federal crime under § 841 is charged in an indictment that does not specify drug quantity. Therefore, even if an indictment for a § 841 offense does

constitutional errors could be deemed harmless.

Additionally, the Sanchezes rely on <u>United States v. Tomeny</u>, 144 F.3d 749 (11th Cir. 1998), but that decision is inapposite. The issue there was whether the statute under which the defendants were indicted was preempted by another statute, not whether the indictment failed to allege an element of the charged offense. Also, this Court ultimately affirmed the defendants' convictions based on the indictment.

not allege a specific drug quantity, it is legally and constitutionally sufficient both before and after Apprendi, and a district court may still accept the defendant's guilty plea to, or try a defendant on, a § 841 charge and then sentence the defendant for that charge.  Thus, the district court did not err in denying the Sanchezes' motion to dismiss their indictment.[49]

We fully recognize that from the outset of the Sanchezes' cases the government sought enhanced sentences, particularly under § 841(b)(1)(B), and that the district court made drug quantity findings and purported to sentence both Sanchezes under that section.  Accordingly, the Sanchezes argue that their cases were "§ 841(b)(1)(B) cases" and thus that there is not only Apprendi error in their cases but also "Rogers error" as coined in United States v. Camacho, 248 F.3d 1286, 1289-90 (11th Cir. 2001) (citing United States v. Rogers, 228 F.3d 1318, 1327 (11th Cir. 2000)).

As explained above, being sentenced under § 841(b)(1)(A) or § 841(b)(1)(B) and being potentially exposed to a higher sentence under either section do not create Apprendi error.  Indeed, the condition that the Sanchezes describe – that of

_____

[49]Although the Sanchezes preserved the indictment issue for appellate review, many defendants making a similar argument have not.  Under our precedent, "[a] contention that the indictment lacked sufficient specificity is waived . . . if the defendant fails to raise it before entering a guilty plea."  United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (citing Fed. R. Crim. P. 12(b)(2)).  While entry of a guilty plea does not act as a waiver of the objection that the indictment failed to charge any offense at all, id. at 942-43, such a scenario is usually not presented by an indictment charging a § 841 drug offense.  This is so because an indictment charging a drug offense under § 841 but failing to state a specific drug quantity does charge a complete federal offense under § 841.

facing theoretical or potential exposure to a particular fate under § 841(b)(1)(B) but actually being consigned to one of less severity under § 841(b)(1)(C) – borders on the metaphysical.  Contrary to the Sanchezes' suggestion, Apprendi did not hold that judge-made factual findings that merely expose a defendant to a higher statutory maximum penalty, without actually resulting in a sentence beyond the applicable maximum, must be proven to a jury beyond a reasonable doubt.  We thus agree with those circuits that have concluded that theoretical exposure to a higher sentence does not constitute error under Apprendi.  See, e.g., United States v. Robinson, 241 F.3d 115, 121-22 (1st Cir. 2001) ("[T]heoretical exposure to a higher sentence, unaccompanied by the imposition of a sentence that in fact exceeds the otherwise-applicable statutory maximum, is of no consequence. . . . In fine, the Apprendi rule applies only in situations in which a judge-made factual determination actually boosts the defendant's sentence beyond the basic statutory maximum.  Theoretical exposure to a higher maximum punishment, in and of itself, is not enough.") (emphasis added) (citation omitted), cert. denied, ___ S. Ct. ___, No. 00-10411 (Oct. 1, 2001).  As stated above, there is no error at all under Apprendi unless a judge-made factual finding actually increases the defendant's sentence beyond the statutory maximum in § 841(b)(1)(C).[50]

---

[50]Other circuits have adopted a similar approach.  See, e.g., United States v. Robinson, 241 F.3d 115, 119 (1st Cir. 2001) ("No Apprendi violation occurs when the district court sentences a defendant below the default statutory maximum, even though drug quantity, determined by the court under a preponderance-of-the-evidence standard, influences the length

49

We also recognize that, prior to this <u>en banc</u> decision, our circuit precedent

of the sentence imposed."), <u>cert. denied</u>, ___ S. Ct. ___, No. 00-10411 (Oct. 1, 2001); <u>United States v. Williams</u>, 235 F.3d 858, 863 (3d Cir. 2000) ("First and foremost, though the District Court's finding regarding the amount of drugs substantially increased the possible statutory maximum sentence under 21 U.S.C. § 841(b)(1), we hold that <u>Apprendi</u> is not applicable to [the defendant's] sentence, because the sentence actually imposed (seven years and one month) was well under the original statutory maximum of 20 years."), <u>cert. denied</u>, ___ S. Ct. ___, No. 00-1771 (Oct. 1, 2001); <u>United States v. Obi</u>, 239 F.3d 662, 667 (4th Cir. 2001) (concluding that a sentence of 200 months' imprisonment "does not offend the standards set forth in <u>Apprendi</u>, despite the fact that [the defendant's] sentence is based, in part, on factual findings of drug quantity made by the sentencing judge by a preponderance of the evidence"), <u>cert denied</u>, ___ S. Ct. ___, No. 00-9843 (Oct. 1, 2001); <u>United States v. Doggett</u>, 230 F.3d 160, 165-66 (5th Cir. 2000) ("As [the defendant's] sentence of 235 months falls short of this statutory maximum [of 240 months as provided in § 841(b)(1)(C)], his claim fails. [The defendant's] sentence was not enhanced beyond the statutory maximum by a factor not contained in the indictment or submitted to the jury. . . . The decision in <u>Apprendi</u> was specifically limited to facts which increase the penalty beyond the statutory maximum, and does not invalidate a court's factual finding for the purposes of determining the applicable Sentencing Guidelines."), <u>cert. denied</u>, 121 S. Ct. 1152 (2001); <u>United States v. Jones</u>, 245 F.3d 645, 649 (7th Cir. 2001) ("[B]ecause [the defendant's] sentence was forty-eight months below the statutory maximum for a defendant who has a prior felony drug conviction, <u>Apprendi</u> is inapplicable . . . ."); <u>United States v. Aguayo-Delgado</u>, 220 F.3d 926, 933-34 (8th Cir.) ("If the non-jury factual determination only narrows the sentencing judge's discretion within the range already authorized by the offense of conviction, such as with the mandatory minimums applied to [the defendant], then the governing constitutional standard is provided by <u>McMillan</u> . . . . [B]ecause [the defendant's sentences] are within the statutory range authorized by § 841(b)(1)(C) without reference to drug quantity, [they are] permissible under <u>Apprendi</u> . . . even where the drug quantity was not charged in the indictment or found by the jury to have been beyond a reasonable doubt."), <u>cert. denied</u>, 121 S. Ct. 600 (2000); <u>United States v. Garcia-Sanchez</u>, 238 F.3d 1200, 1201 (9th Cir. 2001) (noting in a case involving a sentence of 121 months, "<u>Apprendi</u> has no application here. <u>Apprendi</u> dealt with the consideration of facts in sentencing enhancement beyond the statutory <u>maximum</u>. In the instant case, the sentence imposed was nine years and eleven months <u>below</u> the statutory maximum."); <u>United States v. Thompson</u>, 237 F.3d 1258, 1262 (10th Cir.) (noting in a case involving a 121-month sentence, "[B]ecause the indictment set forth all the necessary elements of a crime as defined by 21 U.S.C. § 841(a) and 21 U.S.C. § 846, and because the minimum statutory range (within which [the defendant] was sentenced) does not specify a drug amount, neither the indictment nor the conviction was defective. . . . [W]here the sentence is fully supported, as it is in this case, by allegations in the indictment which are subsequently proven beyond a reasonable doubt, there can be no violation of <u>Apprendi</u>."), <u>cert. denied</u>, 121 S. Ct. 1637 (2001); <u>see also</u> <u>United States v. Fields</u>, 251 F.3d 1041, 1043-44 (D.C. Cir. 2001) ("<u>Apprendi</u> does not apply to sentencing findings that elevate a defendant's sentence <u>within</u> the applicable statutory limits. In other words, <u>Apprendi</u> does not apply to enhancements under the Sentencing Guidelines when the resulting sentence remains within the statutory maximum.") (citation omitted).

regarding the impact of <u>Apprendi</u> on § 841 cases stemmed largely from <u>United States v. Rogers</u>, 228 F.3d 1318 (11th Cir. 2000) and its progeny.  <u>See, e.g.</u>, <u>United States v. Camacho</u>, 248 F.3d 1286 (11th Cir. 2001); <u>United States v. Candelario</u>, 240 F.3d 1300 (11th Cir.), <u>cert. denied</u>, 121 S. Ct. 2535 (2001); <u>United States v. Shepard</u>, 235 F.3d 1295 (11th Cir. 2000), <u>cert. denied</u>, ___ S. Ct. ___, No. 00-10410 (Oct. 1, 2001).  <u>Rogers</u> was correct in some aspects of its analysis but wrong in others.  <u>Rogers</u> properly recognized, "Applying <u>Apprendi</u>'s constitutional principle to § 841 cases, it is clear that the principle is violated if a defendant <u>is</u> <u>sentenced</u> to a greater sentence than the statutory maximum based upon the quantity of drugs, if such quantity is determined by the sentencing judge rather than the trial jury."  <u>Rogers</u>, 228 F.3d at 1327 (emphasis added).  <u>Rogers</u> continued that such a sentence – that is, one greater than the statutory maximum – violates <u>Apprendi</u> unless drug quantity was charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt.  <u>See id.</u>[51]  To this extent, <u>Rogers</u> correctly

---

[51]<u>Rogers</u> appears to have assumed that compliance with <u>Apprendi</u> requires that drug quantity be subjected to this full procedural triumvirate, including being charged in the indictment.  Indeed, we stated in a case involving concurrent sentences of forty years and life imprisonment that <u>Rogers</u> "required" that the indictment specify drug quantity.  <u>United States v. Wims</u>, 245 F.3d 1269, 1272 n.6 (11th Cir. 2001) (citing <u>Rogers</u>, 228 F.3d at 1327).  Other cases in this circuit echoed this sentiment, generally attributing it to <u>Rogers</u>.  <u>See United States v. Gallego</u>, 247 F.3d 1191, 1196-97 (11th Cir. 2001); <u>United States v. Candelario</u>, 240 F.3d 1300, 1306 (11th Cir.), <u>cert. denied</u>, 121 S. Ct. 2535 (2001); <u>United States v. Pease</u>, 240 F.3d 938, 943 (11th Cir. 2001); <u>United States v. Shepard</u>, 235 F.3d 1295, 1297 (11th Cir. 2000), <u>cert. denied</u>, ___ S. Ct. ___, No. 00-10410 (Oct. 1, 2001); <u>United States v. Gerrow</u>, 232 F.3d 831, 834 (11th Cir. 2000), <u>cert. denied</u>, ___ S. Ct. ___, No. 00-9373 (Oct. 1, 2001); <u>cf. United States v. Swatzie</u>, 228 F.3d 1278, 1282 (11th Cir. 2000) (assuming <u>arguendo</u> that a failure to charge drug quantity in the indictment and submit it to a jury constituted <u>Apprendi</u> error, in part because the

51

analyzed <u>Apprendi</u>'s effect on § 841.[52]

<u>Rogers</u>, however, extended <u>Apprendi</u> substantially beyond its holding, and we are not prepared to go that far. <u>Rogers</u> suggested that the mere fact that a sentence arose in "section 841(b)(1)(A) and section 841(b)(1)(B) cases" meant that drug quantity must be charged in the indictment and proven to a jury beyond a

---

indictment issue was not adequately briefed), <u>cert. denied</u>, 121 S. Ct. 2600 (2001).

<u>Rogers</u> expanded <u>Apprendi</u> in this regard, because neither <u>Jones</u> nor <u>Apprendi</u> held that a congressionally enacted sentencing factor must also be alleged in the indictment. The government argues that this expansion is not inevitable. Under the government's view, a fact such as drug quantity that increases a sentence beyond a default maximum does not in all respects equate to a "traditional element"; it is, rather, "the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." <u>Apprendi</u>, 530 U.S. at 494 n.19. Drug quantity in § 841 thus may occupy an ambiguous place somewhere in the middle of a hazy spectrum marked by traditional "elements" on one end and "sentencing factors" on the other, two endpoints that themselves represent a "constitutionally novel and elusive distinction." <u>Id.</u> at 494. The government can find comfort in at least one of our cases, which suggested that if an indictment did not charge a specific drug quantity but "the evidence established a drug quantity that would authorize a sentence under section 841(b)(1)(A) or (B), the Government would be entitled to a special jury verdict specifying the quantity of drugs." <u>United States v. Candelario</u>, 240 F.3d 1300, 1305 n.7 (11th Cir.), <u>cert. denied</u>, 121 S. Ct. 2535 (2001). According to the government, in sum, drug quantity is an "element lite" that is not subject to the indictment requirement, but still must be submitted to the jury and proven beyond a reasonable doubt.

We are not persuaded, and we thus preserve our precedent in <u>Rogers</u> and its progeny to this limited effect. Of course, our holding with respect to the Sanchezes' motion to dismiss the indictment shows that drug quantity, even in <u>Rogers</u>-like cases, is not a "traditional element" in the sense that a failure to allege it could entitle the defendant to dismissal of a § 841 indictment. Instead, as outlined in this opinion, the omission of that element would first have to be established and then, if shown, would be reviewed for harmless or plain error, depending on the timing of the objection. <u>See</u> <u>supra</u> section III.A.1.

[52]Although <u>Rogers</u> added a third procedural protection of charging drug quantity in the indictment, we hasten to specify that drug quantity need be alleged only in the narrow circumstances described above in which <u>Apprendi</u>'s jury-submission and reasonable-doubt requirements apply – that is, when the sentence imposed exceeds the maximum in § 841(b)(1)(C). Drug quantity need not be alleged when it has effects that <u>Apprendi</u>'s doctrine does not reach, such as mandatory minimum sentences, guideline sentencing calculations, and sentences at or below the otherwise applicable maximum in § 841(b)(1)(C).

reasonable doubt even if the sentence did not exceed the statutory maximum in § 841(b)(1)(C). See id. at 1327. As we have explained, this is not so unless the factual finding of drug quantity boosts the actual sentence imposed under §§ 841(b)(1)(A) or 841(b)(1)(B) beyond the statutory maximum otherwise permissible under § 841(b)(1)(C) absent drug quantity.

Specifically, Rogers also stated: (1) that "sections 841(b)(1)(A) and 841(b)(1)(B) may not be utilized for sentencing without a finding of drug quantity by the jury," Rogers, 228 F.3d at 1327 (emphasis added); (2) "that drug quantity in section 841(b)(1)(A) and section 841(b)(1)(B) cases must be charged in the indictment and proven to a jury beyond a reasonable doubt in light of Apprendi," id. (emphasis added); (3) that when a defendant is sentenced under the wrong subsection of § 841(b), "this alone is reason for us to vacate and remand the sentence," id. at 1321; and (4) that "[a]pplying the rule [of Apprendi] to the facts at hand, it is clear that Rogers must be sentenced under section 841 without reference to drug quantity," id. at 1328; and decided (5) to "overrule Hester to the extent it is inconsistent with this holding," id.

As we have explained, however, a district court's drug quantity findings and utilization of the § 841(b)(1)(A) and § 841(b)(1)(B) sentencing schemes in § 841 cases in no manner violate Apprendi unless the actual sentence ultimately imposed exceeds the catchall maximum penalty in § 841(b)(1)(C). Thus, for example,

53

mandatory minimum sentences do not violate <u>Apprendi</u>'s constitutional rule because they do not exceed the catchall statutory maximum penalty in § 841(b)(1)(C) that is otherwise applicable when no specific drug quantity is charged or found by the jury.[53] We therefore expressly disavow these five propositions in <u>Rogers</u> and any repetition of them in <u>Rogers</u>'s progeny.

<u>Apprendi</u> does not prohibit all uses of drug quantity in sentencing under

---

[53]This Court previously suggested that the imposition of a mandatory minimum sentence based on a judge-made factual determination does not violate <u>Apprendi</u>. <u>See</u> <u>United States v. Pounds</u>, 230 F.3d 1317, 1319-20 (11th Cir. 2000), <u>cert. denied</u>, 121 S. Ct. 1631 (2001). In <u>Pounds</u>, the defendant was sentenced to the mandatory minimum sentence of ten years under 18 U.S.C. § 924(c)(1)(A)(iii), based on the sentencing court's finding that his co-defendant had discharged a firearm. <u>Pounds</u>, 230 F.3d at 1318. This Court affirmed the sentence, holding on the basis of the statutory text that the discharge of a firearm was a sentencing factor and not an element of the offense. <u>Id.</u> at 1319. Furthermore, this Court noted that <u>Apprendi</u> did not alter this result, stating, "The discharge of a firearm does not increase the maximum possible penalty of life under § 924(c)(1)(A); rather, it increases only the mandatory minimum penalty." <u>Id.</u>

Thus, consistent with the analysis in this <u>en banc</u> opinion, our decision in <u>Pounds</u>, and the holdings of the majority of circuits, we hereby overrule the holding about mandatory minimum sentences in <u>United States v. Camacho</u>, 248 F.3d 1286, 1289 (11th Cir. 2001) (concluding that, because the district court sentenced the defendant to the mandatory minimum of ten years' imprisonment under § 841(b)(1)(A), it "<u>necessarily</u> used section 841(b)(1)(A) for sentencing," and concluding that this constituted error). We also reject <u>Camacho</u>'s adoption of "<u>Rogers</u> error," a concept that <u>Camacho</u> conceded "went beyond <u>Apprendi</u>" and would hold as error any sentence obtained when the court utilized drug quantities in §§ 841(b)(1)(A) and 841(b)(1)(B) that were not charged in the indictment and proven to a jury beyond a reasonable doubt, regardless of the actual sentence imposed.

We preserve, however, that portion of <u>Camacho</u> which reaffirmed the principle that "a defendant may obtain re-sentencing under <u>Apprendi</u> only if the sentence he actually receives exceeds the maximum allowable sentence he should have received under section 841(b)(1)(C), i.e., twenty years' imprisonment, without regard to quantity." <u>Camacho</u>, 248 F.3d at 1288 (citing <u>Gerrow</u>, 232 F.3d at 834). Applying this rule, the <u>Camacho</u> Court stated that "[b]ecause Camacho's sentence of 120 months' imprisonment was less than the twenty year maximum prescribed by section 841(b)(1)(C), there is <u>arguably</u> no <u>Apprendi</u> error, even though the court utilized a mandatory minimum when sentencing Camacho," <u>id.</u> at 1289 (emphasis added) (footnote omitted), but concluded that "[r]egardless of whether there is <u>Apprendi</u> error, there is error in Camacho's sentence under" <u>Rogers</u>. <u>Id.</u> We now clarify that nothing was "arguabl[e]" about the lack of <u>Apprendi</u> error in Camacho's sentence. Because Camacho was sentenced below twenty years, <u>Apprendi</u> did not apply to his case.

§ 841, or any use of drug quantity in guideline calculations under the Sentencing Guidelines for that matter. Rather, it prohibits such use only to the extent that a factual finding of drug quantity increases a defendant's sentence beyond the otherwise applicable statutory maximum penalty under § 841(b)(1)(C) absent drug quantity. We limit Rogers's analysis and conclusion about Apprendi to those § 841 cases where the defendant's sentence is both (1) directly affected by a judge-made finding of drug quantity under either § 841(b)(1)(A) or § 841(b)(1)(B), and (2) as a direct result of that drug quantity finding actually exceeds the statutory maximum otherwise permissible under § 841(b)(1)(C).[54] As explained above, in all circumstances other than this, there is no Apprendi error.

In sum, a defendant is not entitled to dismissal of a § 841 indictment that does not allege a specific drug quantity, whether that indictment was issued before or after Apprendi. Instead, whether a specific drug quantity is charged affects only the permissible statutory maximum sentence and not the sufficiency of a § 841 indictment. In the context of § 841, Apprendi involves error in sentencing and necessarily looks retrospectively, rather than prospectively, at whether the criminal

---

[54]In Rogers, the defendant actually received a thirty-year prison sentence, and this Court found, under the particular circumstances of that case, that the defendant's prescribed statutory maximum sentence was twenty years under § 841(b)(1)(C). We observe, however, that a thirty-year sentence is permitted under § 841(b)(1)(C) when a defendant's prior felony drug conviction is properly shown.

procedures that culminated in the actual sentence pass constitutional muster.[55]

Thus, for all of these reasons, the Sanchezes have not shown that the district court erred in denying their motion to dismiss the indictment.

## B.    Plea Colloquies

The Sanchezes next attempt to make use of <u>Apprendi</u> by arguing – for the first time on appeal – that their convictions must be reversed because their guilty pleas were unintelligent and involuntary under <u>Apprendi</u>.  The Sanchezes' challenge to their guilty pleas rests on two branches of the <u>Apprendi</u> tree.

First, the Sanchezes assert that the district court failed to comply with Rule 11 before accepting their guilty pleas because it did not address drug quantity, which they believe <u>Apprendi</u> converted into an element of their offense.  The second aspect of their argument is that <u>Apprendi</u> vitiated the voluntariness of their guilty pleas by reducing the legally permissible maximum penalty they faced for their drug offense.  More specifically, they aver that their guilty pleas were induced by the threat of a harsher punishment – up to forty years or life imprisonment – than was possible given <u>Apprendi</u>, under which they faced a maximum penalty of only twenty years' imprisonment under § 841(b)(1)(C).

### 1.    Standard of Review

---

[55]Accordingly, in <u>United States v. Candelario</u>, 240 F.3d 1300 (11th Cir.), <u>cert. denied</u>, 121 S. Ct. 2535 (2001), we stated that a "constitutional objection for <u>Apprendi</u> purposes is timely if a defendant makes the objection at sentencing."  <u>Id.</u> at 1304 (citations omitted).

The Sanchezes raise the Apprendi issues concerning their guilty pleas for the first time on appeal. This Court has held "that a defendant who has not presented his objection to the district court – for example, through a motion to withdraw the plea – must show plain error on direct appeal." United States v. Quinones, 97 F.3d 473, 475 (11th Cir. 1996).[56] Thus, the Sanchezes must show that there is (1) "error," (2) "that is 'plain,'" and (3) "that 'affect[s] substantial rights.'" Johnson v. United States, 520 U.S. 461, 466-67 (1997) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quoting Olano, 507 U.S. at 732) (other internal quotation marks omitted).

## 2.    Rule 11

The Sanchezes claim that the district court failed to comply with the requirements of Rule 11 when it accepted their guilty pleas. Rule 11 provides that "[b]efore accepting a plea of guilty . . . the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands," certain matters. Fed. R. Crim. P. 11(c). At issue in this

---

[56]Although Rule 11(h), entitled "Harmless Error," provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded," Fed. R. Crim. P. 11(h), such review does not supercede the plain error standard of review. See Quinones, 97 F.3d at 475 ("We see no reason why the plain error rule should not apply in the Rule 11 context, though we recognize that many non-technical deviations from Rule 11 will constitute plain error.").

case are the requirements in Rule 11 that the court properly advise the defendant of "the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term." Fed. R. Crim. P. 11(c)(1). Under Rule 11, a "court shall not accept a plea of guilty . . . without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement." Fed. R. Crim. P. 11(d).

Rule 11 serves two purposes: "to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary" and "to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination." McCarthy v. United States, 394 U.S. 459, 465 (1969). "Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas." Id.

"No simple or mechanical rule determines whether the district court complied with Rule 11's mandate to satisfy itself that [the defendants] understood the nature of the charges against them." United States v. DePace, 120 F.3d 233, 237 (11th Cir. 1997) (citing United States v. Bell, 776 F.2d 965, 968 (11th Cir.

1985)). "Rather, the inquiry varies from case to case depending on 'the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence.'" Id. (quoting Bell, 776 F.2d at 968). This Court has described "the spectrum of complexity of charges and the concomitant degree of required explication" as follows:

> "For simple charges . . . a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice. Charges of a more complex nature, incorporating esoteric terms or concepts unfamiliar to the lay mind, may require more explication. In the cases of extreme complexity, an explanation of the elements of the offense like that given the jury in its instructions may be required."

Id. (quoting United States v. Dayton, 604 F.2d 931, 937-38 (5th Cir. 1979) (en banc)). We recently stated that "[p]ossession with intent to distribute crack and conspiracy to do the same are not of course the most complicated of offenses." United States v. Telemaque, 244 F.3d 1247, 1249 (11th Cir. 2001).

In assessing whether a district court's failure to comply with Rule 11 constitutes plain error, this Court has identified three "core concerns" of that rule: "(1) ensuring that the guilty plea is free of coercion; (2) ensuring that the defendant understands the nature of the charges against him; and (3) ensuring that the defendant is aware of the direct consequences of the guilty plea." Quinones, 97 F.3d at 475 (citing United States v. Zickert, 955 F.2d 665, 668 (11th Cir. 1992)). "Failure to satisfy any of the core objectives violates the defendants's substantial rights." Id.

59

### 3. Elements of the Offense

The Sanchezes maintain that the district court failed to comply with Rule 11 because it did not inform them of all of the elements of the offense with which they were charged. Because both Sanchezes were sentenced below the prescribed maximum penalty otherwise permissible under § 841(b)(1)(C), a specific drug quantity was not, nor did it ever become, an element of their drug offenses.[57] Thus, that the district court did not discuss any specific drug quantity in their plea colloquies was not error, plain or otherwise, under <u>Apprendi</u>.

### 4. "Maximum Possible Penalty"

Alternatively, the Sanchezes assert that if drug quantity never became an element of their offense, their guilty pleas were nonetheless involuntary and unknowing because they were misadvised during their plea colloquies as to the "maximum possible penalty" they faced. <u>See</u> Fed. R. Crim. P. 11(c)(1). The argument is that their guilty pleas were induced by the threat of a harsher punishment than was legally permissible under the indictment in this case. Specifically, the Sanchezes' contention is that they entered their guilty pleas while laboring under the understanding that they could face up to forty years' or life imprisonment, when actually they could have been sentenced only to a maximum of twenty years' imprisonment because their indictment did not allege a specific

---

[57]The Sanchezes' conditional plea agreements did not preserve the right to appeal any error in their plea colloquies, nor did they ever move to withdraw their pleas in the district court.

drug quantity.

The Sanchezes first must establish that they were in fact misadvised about the "maximum possible penalty" under Rule 11. See Fed. R. Crim. P. 11(c)(1). To do so, they argue that, in light of Apprendi, their indictment would not have supported an enhanced sentence of forty years under § 841(b)(1)(B) because it did not allege a drug quantity. The Sanchezes emphasize that to obtain a sentence beyond that otherwise provided under § 841(b)(1)(C), Apprendi requires that drug quantity be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt. Since their indictment did not charge a specific drug quantity, the Sanchezes argue that it was insufficient for an enhanced sentence and that their maximum possible penalty, in light of Apprendi, was actually twenty years' imprisonment under § 841(b)(1)(C). The issue presented by this argument, however, is not whether drug quantity should be alleged in some form in the indictment when it increases a sentence beyond the maximum in § 841(b)(1)(C) – a question already answered by Rogers – but whether the wording of the Sanchezes' indictment is sufficient to satisfy that indictment requirement.[58]

---

[58]Our precedent strongly implies that naming a number is not the only way of alleging drug quantity in the indictment. See United States v. Nealy, 232 F.3d 825, 830 & n.5 (11th Cir. 2000) (stating "that the indictment likely only needs to reference the statute" but finding that the defendant abandoned the indictment issue and affirming his thirty-two-year sentence) (citing United States v. Fern, 155 F.3d 1318, 1325 (11th Cir. 1998)); Fern, 155 F.3d at 1325 ("If an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge.") (citing United States v. Stefan, 784 F.2d 1093, 1101-02 (11th Cir. 1986)); see also United States v. Wims, 245 F.3d 1269, 1272 n.6 (11th Cir. 2001) (affirming concurrent sentences of forty years and life

We need not resolve this issue, however, because even assuming arguendo

that the Sanchezes were misadvised about the "maximum possible penalty" they

faced, their challenge to their plea colloquies lacks merit due to Brady v. United

States, 397 U.S. 742 (1970).  The Supreme Court in Brady expressly held that a

guilty plea was not rendered involuntary by a subsequent legal pronouncement that

reduced the statutory maximum sentence below what the defendant was advised of

at the time of his plea.  In Brady, the defendant was charged with violating the

Federal Kidnaping Act, 18 U.S.C. § 1201(a), which authorized a penalty of death

or imprisonment.[59]  Id. at 743.  Although initially pleading not guilty, he later

changed his plea to guilty.[60]  Id.  The trial judge twice questioned the defendant as

to the voluntariness of his plea, and the defendant affirmed that the plea was

_____

imprisonment and stating that "by alleging violations of section 841(b)(1)(A), the indictment served [the defendant] with notice that the Government was charging him with possessing (or conspiring to possess) at least five kilograms of a mixture containing a detectable amount of cocaine or at least fifty grams of a mixture containing cocaine base").  Because the Sanchezes' challenges to their guilty pleas lack merit even if they were misadvised, we need not imagine here or resolve all the ways in which an indictment may adequately allege drug quantity.

[59]At the time of the defendant's plea colloquy in 1959, § 1201(a) provided, in pertinent part:

> Whoever knowingly transports in interstate . . . commerce, any person who has been unlawfully . . . kidnaped . . . and held for ransom . . . shall be punished (1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed.

Brady, 397 U.S. at 743 n.1 (quoting 18 U.S.C. § 1201(a)).

[60]The habeas court found that Brady changed his plea upon learning that his co-defendant would plead guilty and would be available to testify against him.  Id. at 745.

voluntary.  Id. at 743 n.2 (excerpt from the defendant's plea colloquy).[61]  The trial

judge then sentenced the defendant to fifty years' imprisonment, which was later

reduced to thirty years.  Id. at 744.

After the defendant pled guilty and was sentenced, the Supreme Court

invalidated the portion of § 1201(a) that permitted the death penalty.  See United

States v. Jackson, 390 U.S. 570, 572 (1968).[62]  The defendant filed a federal habeas

petition pursuant to 28 U.S.C. § 2255 and claimed that, after Jackson, his guilty

plea could not be considered voluntary because § 1201(a) had operated to coerce

---

[61]While the Supreme Court's opinion indicates that Brady alleged that the district court did not comply with Rule 11 in its plea colloquy, neither that opinion nor the circuit court opinion under review indicate what advice the district court gave concerning the possible penalties.  The Supreme Court's opinion does state that "Brady's counsel advised him that § 1201(a) empowered the jury to impose the death penalty."  Brady, 397 U.S. at 756. Nonetheless, its discussion centered on whether the subsequent change in the law rendered the guilty plea invalid.

[62]In Jackson, the Supreme Court concluded that the death penalty provision of § 1201(a) "impose[d] an impermissible burden upon the exercise of a constitutional right."  Jackson, 390 U.S. at 572.  Specifically, the Court observed that under § 1201(a), "the defendant who abandons the right to contest his guilt before a jury [i.e., by pleading guilty] is assured that he cannot be executed; the defendant ingenuous enough to seek a jury acquittal stands forewarned that, if the jury finds him guilty and does not wish to spare his life, he will die."  Id. at 581.  The Court further noted that "[t]he inevitable effect of any such provision, is of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial."  Id. (footnote omitted).  The Supreme Court concluded, "Whatever the power of Congress to impose a death penalty for violation of the Federal Kidnaping Act, Congress cannot impose such a penalty in a manner that needlessly penalizes the assertion of a constitutional right."  Id. at 583 (citing Griffin v. California, 380 U.S. 609 (1965)).  The Court further decided, however, that the unconstitutionality of the death penalty provision did not invalidate the entire statute, and it thus upheld the remainder of the statute after excising the death penalty provision.  See id. at 591 ("Thus the infirmity of the death penalty clause does not require the total frustration of Congress' basic purpose – that of making interstate kidnaping a federal crime.  By holding the death penalty clause of the Federal Kidnaping Act unenforceable, we leave the statute an operative whole, free of any constitutional objection.").

his plea.  Brady, 397 U.S. at 744.  The Supreme Court thus was faced with the questions of whether "it violates the Fifth Amendment to influence or encourage a guilty plea by opportunity or promise of leniency" and whether "a guilty plea is coerced and invalid if influenced by the fear of a possibly higher penalty for the crime charged if a conviction is obtained after the State is put to its proof."  Id. at 750-51.

The Supreme Court answered in the negative, stating:

A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.  More particularly, absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.  A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered.

The fact that [the defendant] did not anticipate [the later change in the law] does not impugn the truth or reliability of his plea.  We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

Id. at 757 (citation omitted) (emphasis added).  The Supreme Court concluded that

the defendant's guilty plea was voluntary at the time it was made:

> [The defendant] first pleaded not guilty; prior to changing his plea to guilty he was subjected to no threats or promises in face-to-face encounters with the authorities. He had competent counsel and full opportunity to assess the advantages and disadvantages of a trial as compared with those attending a plea of guilty; there was no hazard of an impulsive and improvident response to a seeming but unreal advantage. His plea of guilty was entered in open court and before a judge obviously sensitive to the requirements of the law with respect to guilty pleas. [The defendant's] plea . . . was voluntary.

Id. at 754-55.[63]

The Supreme Court further concluded that even if the fear of the death penalty in fact caused the defendant to enter a guilty plea rather than go to trial, that did not render the plea involuntary, explaining, "But even if we assume that [the defendant] would not have pleaded guilty except for the death penalty provision of [the statute at issue], this assumption merely identifies the penalty provision as a 'but for' cause of his plea. That the statute caused the plea in this sense does not necessarily prove that the plea was coerced and invalid as an involuntary act." Id. at 750-51.

When distilled to its essence, the Sanchezes' argument here is no different from that rejected by the Supreme Court in Brady. The Sanchezes claim, as did the

---

[63]The Supreme Court in Brady found support for this conclusion in Jackson itself, stating, "The Court made it clear in Jackson that it was not holding § 1201(a) inherently coercive of guilty pleas: 'the fact that the Federal Kidnaping Act tends to discourage defendants from insisting upon their innocence and demanding trial by jury hardly implies that every defendant who enters a guilty plea to a charge under the Act does so involuntarily.'" Brady, 397 U.S. at 746-47 (quoting Jackson, 390 U.S. at 583).

defendant in <u>Brady</u>, that a subsequent judicial pronouncement – namely, <u>Apprendi</u> – reduced the maximum possible penalty they faced for their offense and that this new knowledge, of which they did not have the benefit during their plea colloquies, retroactively invalidated their guilty pleas. We agree with the Supreme Court, however, that there is "no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that . . . the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions." <u>Id.</u> at 757. Thus, we reject the Sanchezes' claim that <u>Apprendi</u> invalidated their guilty pleas.[64]

The Sanchezes' plea colloquies were otherwise sufficient. Like the defendant in <u>Brady</u>, both defendants here were represented by counsel. The requirements of Rule 11 were met by the district court's advice to the Sanchezes

---

[64]Indeed, even if the Sanchezes had been misadvised about the maximum possibly penalty under the law as it existed at the time of their plea colloquy, their guilty pleas would not be invalid. In <u>United States v. Woodall</u>, 438 F.2d 1317 (5th Cir. 1971) (<u>en banc</u>), the defendant challenged his guilty pleas to two related indictments on the ground that he had been incorrectly advised that the trial judge would pyramid the sentences rather than consider them as graduated penalties for a single offense. <u>Id.</u> at 1327. We upheld the pleas, stating:

> Isolating all other facts that could influence a defendant in determining to enter a plea of guilty, the court is of the opinion that even if [the defendant] had been told that the district judge could pyramid the maximum sentences under each of the separate counts of the two indictments to which he pled, this factor would not invalidate his plea. The probability such information would have influenced [the defendant] not to change his plea so far outweighs the possibility that the prospect of stiffer punishment may have caused the change, that we refuse to consider the latter as relevant.

<u>Id.</u> at 1329.

before accepting their guilty pleas.[65]  Also like the defendant in <u>Brady</u>, the Sanchezes' argument is based on a speculative "but-for" argument – that is, they appear to suggest that but for the district court's statement that they faced a possible life sentence, they would not have pled guilty.  The Sanchezes were ultimately sentenced well below the maximum penalties of which they had been advised.[66]  Under these circumstances, the Sanchezes cannot correctly claim that their guilty pleas were involuntary and unintelligent, and they can claim no harm or detriment whatsoever resulting from their plea colloquies.[67]

## C.    Sentences

---

[65]The Sanchezes' reliance on <u>United States v. Brown</u>, 117 F.3d 471 (11th Cir. 1997), does not help them.  The defendant Brown was informed that willfulness was not an element of his crime, based on the then-applicable law in our circuit.  Fourteen months after Brown pled guilty, the Supreme Court overruled our precedent in that regard.  <u>Id.</u> at 473 (citing <u>Ratzlaf v. United States</u>, 510 U.S. 135 (1994)).  The defendant moved to vacate his conviction and sentence on the ground that he had been misinformed of a critical element of his offense.  <u>Id.</u> at 474.  The district court denied the motion, <u>id.</u>, but this Court reversed and remanded.  <u>Id.</u> at 480.  We stated, "Because the misinformation [the defendant] was given about one of the critical elements of the charge against him caused him to plead guilty, it necessarily follows that his guilty plea was not voluntary in a constitutional sense."  <u>Id.</u> at 477.  We decided that <u>Brady</u> did not require a different result, noting that the defendant in <u>Brown</u> misapprehended the <u>elements</u> of his offense, while the defendant in <u>Brady</u> misapprehended the possible <u>penalties</u>.  <u>See id.</u> at 478 ("Unlike Brady's strategic miscalculations, Brown's misapprehension concerning the critical <u>elements</u> of his charged offense substantially undermines the reliability of this plea.  Brown has never admitted all the elements of the crime with which he was charged.").

[66]Although the Sanchezes were advised about the mandatory minimum sentences in § 841(b), they were not misadvised about them, as <u>Apprendi</u> does not affect mandatory minimum sentences under § 841(b).  <u>See supra</u> notes 38, 53.

[67]This result is consistent with other cases in which we have decided that a district court's failure to inform a defendant that he faces a specified term of supervised release or to inform the defendant of the effect of supervised release is harmless error where the sentence is well below the sentence that the defendant was informed that he faced.  <u>See United States v. Bejarano</u>, 249 F.3d 1304, 1306 n.1 (11th Cir. 2001).

In addition to challenging their prison terms – an argument we have already rejected – the Sanchezes, for the first time on appeal, make an Apprendi-based attack on their terms of supervised release.[68] Specifically, they contend that their supervised release was limited by statute to three years and that the four-year terms imposed violated Apprendi. We conclude that there was no Apprendi error in the supervised release portion of the Sanchezes' sentences.

The central question presented is what statute provides the prescribed term of supervised release applicable to the Sanchezes' convictions.[69] Section 841(b)(1)(C) requires a term of supervised release of "at least three years." 21 U.S.C. § 841(b)(1)(C) (emphasis added). The Sanchezes rely, however, on 18 U.S.C. § 3583(b)(2), which provides that "[e]xcept as otherwise provided," the term of supervised release for a "Class C felony" may be "not more than three years." 18 U.S.C. § 3583(b)(2). A Class C felony is a felony for which the

---

[68]Thus, we review their argument for plain error. See United States v. Candelario, 240 F.3d 1300, 1306 (11th Cir.) ("If the defendant either does not raise the constitutional objection or does not raise it in a timely fashion, he is entitled only to plain error review."), cert. denied, 121 S. Ct. 2535 (2001).

[69]In United States v. Gerrow, 232 F.3d 831 (11th Cir. 2000), cert. denied, ___ S. Ct. ___, No. 00-9373 (Oct. 1, 2001), we addressed a similar challenge and concluded that the district court did not commit plain error in imposing a supervised release term of five years. That conclusion was based primarily on the facts that there was no Supreme Court or Eleventh Circuit precedent and that the circuits were split on the issue, under which circumstances "'there can be no plain error in regard to that issue.'" Id. at 835 (quoting United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000)). While Gerrow suggested that there was no error under any standard of review by noting that the majority of circuits resolved the issue against the defendants, we now clarify that there is no error at all in a supervised release term of four years for an offense where the term of imprisonment is governed by § 841(b)(1)(C).

"maximum term of imprisonment authorized" is "less than twenty-five years but ten or more years." 18 U.S.C. § 3559(a)(3). Thus, § 841(b)(1)(C), which provides for a maximum prison term of twenty years, constitutes a Class C felony.

The Sanchezes argue that, based on the facts of their cases, § 3583(b)(2) creates a maximum term of supervised release of three years, while § 841(b)(1)(C) authorizes a minimum term of supervised release of three years. The issue presented, then, is whether § 841(b)(1)(C) or § 3583(b)(2) controls the length of their terms of supervised release.

A term of supervised release of four years, as the Sanchezes received, is permitted under 21 U.S.C. § 841(b)(1)(C). As emphasized above, § 3583(b)(2) limits the maximum term of supervised release for a Class C felony to three years, "[e]xcept as otherwise provided." 18 U.S.C. § 3583(b)(2). Section 841(b)(1)(C), in fact, expressly "otherwise provide[s]" – specifically, § 841(b)(1)(C) provides that the term of supervised release for that particular Class C felony must be "at least three years." 21 U.S.C. § 841(b)(1)(C).

To adopt the Sanchezes' interpretation of the statute would require us to ignore the words "at least" in § 841(b)(1)(C), thus rendering that statutory language superfluous. Furthermore, the legislative history of both statutes indicates that Congress did not intend for a term of supervised release ordered pursuant to § 841(b)(1)(C) to be limited to three years. As noted by the Second

Circuit when faced with the identical question, "the supervised release terms authorized by Congress for drug offenses, including section 841, were added in the same statute that amended section 3583(b) by adding the introductory phrase 'Except as otherwise provided.'" United States v. Eng, 14 F.3d 165, 172-73 (2d Cir. 1994) (citing the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, § 1006, 100 Stat. 3207). As the Second Circuit concluded from this legislative history, "It is apparent that in enacting . . . the Anti-Drug Abuse Act of 1986, Congress intended to enhance the penalties available to combat drug offenses. That Congress intended these penalties to override the maximums set by 18 U.S.C. § 3583(b) is clear from the fact that Congress simultaneously amended that section to add the phrase '[e]xcept as otherwise provided.'" Id. at 173.

In light of its language and history, § 841(b)(1)(C) cannot be understood to provide for a term of supervised release not greater than three years, as the Sanchezes contend. Relying on these principles of statutory interpretation, six other circuits have held that § 3583(b) does not limit the term of supervised release authorized in § 841(b)(1)(C) and that a term of supervised release over the minimum set forth in § 841(b)(1)(C) may be imposed notwithstanding the provisions of § 3583(b). See United States v. Pratt, 239 F.3d 640, 647 (4th Cir. 2001) (holding that § 3583 "does not cap the period of supervised release that a district court may impose under § 841(b)(1)(C)"); United States v. Shorty, 159

70

F.3d 312, 315-16 n.6 (7th Cir. 1998) (noting that the provision for the term of supervised release in § 841(b)(1)(C) "sets a floor requirement, leaving the ceiling open, closed only by a defendant's death"); United States v. Page, 131 F.3d 1173, 1177-80 (6th Cir. 1997), abrogated on other grounds by Johnson v. United States, 529 U.S. 694 (2000);  United States v. Garcia, 112 F.3d 395, 398 (9th Cir. 1997); United States v. Orozco-Rodriguez, 60 F.3d 705, 707-08 (10th Cir. 1995); United States v. Eng, 14 F.3d 165, 172-73 (2d Cir. 1994); United States v. LeMay, 952 F.2d 995, 998 (8th Cir. 1991).[70]  We therefore conclude that the Sanchezes' four-year terms of supervised release are authorized by § 841(b)(1)(C) and not limited by § 3583(b)(3).[71]  Therefore, the Sanchezes' Apprendi-based challenges to the supervised release portions of their sentences lack merit.

## IV. CONCLUSION

In conclusion, we recognize the following principles.  Apprendi is implicated only when a judge-decided fact actually increases a defendant's sentence beyond the prescribed statutory maximum penalty for the crime of conviction and has no application to, or effect on, cases where a defendant's

---

[70]But see Suveges v. United States, 7 F.3d 6, 10 & n.6 (1st Cir. 1993) (indicating that a term of supervised release imposed pursuant to § 841(b)(1)(C) is limited to three years); United States v. Kelly, 974 F.2d 22, 25 (5th Cir. 1992) (same).

[71]To the extent that the Sanchezes rely on the fact of their four-year terms of supervised release to demonstrate that they were "sentenced under" § 841(b)(1)(B), that argument fails because of our conclusion that a term of supervised release of four years is in fact authorized by § 841(b)(1)(C).

sentence falls at or below that maximum penalty. This means, among other things, that Apprendi has no application to, or effect on, either mandatory minimum sentences or Sentencing Guidelines calculations, when in either case the ultimate sentence imposed does not exceed the prescribed statutory maximum penalty. Thus, in a § 841 case when a specific drug quantity triggers a mandatory minimum sentence or is used in a Sentencing Guidelines calculation, and results in a sentence at or below the otherwise applicable maximum penalty in § 841(b)(1)(C), there is no Apprendi error and there is no requirement that a specific drug quantity be alleged in the indictment, submitted to a jury, and proven beyond a reasonable doubt.

More specifically, we conclude that: 1) the various Apprendi errors that the Sanchezes assert are constitutional errors subject to harmless or plain error review, depending on the timing of their constitutional objections, and are not structural or jurisdictional errors; 2) the district court's drug quantity findings under § 841(b)(1)(B) and utilization of that sentencing scheme, which exposed the Sanchezes to enhanced sentences under that section but did not result in an actual term of imprisonment beyond the otherwise applicable maximum penalty in § 841(b)(1)(C), did not violate Apprendi; 3) because the district court's drug quantity findings did not increase the Sanchezes' ultimate sentences beyond the otherwise applicable maximum penalty in § 841(b)(1)(C), Apprendi does not apply to their §

72

841 indictment, guilty pleas, convictions, and sentences, and there was no requirement that a specific drug quantity be alleged in their indictment, covered in their plea colloquies, submitted to a jury, or proven beyond a reasonable doubt; 4) in this regard, we adopt the analyses of Apprendi in United States v. Gerrow, 232 F.3d 831 (11th Cir. 2000), cert. denied, ___ S. Ct. ___, No. 00-9373 (Oct. 1, 2001), and other circuits' decisions concluding that Apprendi does not apply to § 841 cases unless drug quantity actually increases a defendant's sentence beyond the otherwise applicable maximum penalty, and we reject the extension of the Apprendi rule contemplated by the five propositions identified above in United States v. Rogers, 228 F.3d 1318 (11th Cir. 2000) and reflected by the subsequent coining of the term "Rogers error" in United States v. Camacho, 248 F.3d 1286 (11th Cir. 2001); 5) the district court thus properly denied the Sanchezes' motion to dismiss their indictment because drug quantity was not an essential element of their § 841 offense, and their indictment charging a violation of § 841 without alleging a specific drug quantity properly charged a completed federal crime both before and after Apprendi; 6) a specific drug quantity also never became an element of the Sanchezes' § 841 offense under Apprendi because their ultimate sentences did not exceed the otherwise applicable maximum penalty under § 841(b)(1)(C); 7) Apprendi also did not render the Sanchezes' plea colloquies inadequate and their guilty pleas unintelligent or involuntary even assuming that

73

the district court misadvised them about the higher statutory maximum penalties under §§ 841(b)(1)(A) and 841(b)(1)(B); and 8) the Sanchezes' four-year terms of supervised release were permitted by § 841(b)(1)(C) and thus did not implicate Apprendi.[72]

For the foregoing reasons, no error exists in the Sanchezes' indictment, plea colloquies, convictions, or sentences. Thus, we affirm both the convictions and the sentences of defendants Ignasio Sanchez and Santiago Sanchez.

AFFIRMED.


TJOFLAT, Circuit Judge, specially concurring.

It is obvious from the start that there is no Apprendi error in this case. Because the Sanchezes' sentences did not exceed the twenty-year maximum

---

[72]In response to the statement in Judge Tjoflat's concurring opinion that this case is not en banc worthy because the Apprendi answer is obvious, we note that it was not obvious (1) to the Sanchezes (or their counsel) who, notwithstanding their guilty pleas, preserved the right to challenge the absence of drug quantity in their indictments as part of their plea agreements and have pressed their contention that there is Apprendi error requiring reversal of their convictions and sentences; (2) to the Sanchez panel whose opinion followed Rogers and Shepard, but ultimately found no prejudice and any error was harmless; or (3) to "All Federal Public and Community Defenders within the Eleventh Circuit Court of Appeals" and the "National Association of Criminal Defense Lawyers and Families Against Mandatory Minimums Foundation" who filed Amicus Curiae briefs supporting the Sanchezes' requests for reversal of their convictions and sentences based in part on their readings of Apprendi, Rogers, and Camacho. For example, as noted in one Amicus Curiae brief, "[p]anels of this court have split on the question of what effect Apprendi has on § 841's type- and amount-base provisions." That brief then contrasts the approach taken in Gerrow versus that in Rogers and Camacho. We heard this case en banc precisely (1) because of the need to clarify in our circuit the impact of Apprendi on drug convictions, sentences, and plea colloquies, especially where a §§ 846, 841 indictment does not allege drug quantity, and (2) because it involves issues of exceptional importance affecting a plethora of criminal cases.

sentence prescribed by 21 U.S.C. § 841(b)(1)(C), <u>Apprendi</u> simply does not apply. Likewise, there is no error under this circuit's post-<u>Apprendi</u> cases, <u>United States v. Rogers</u>, 228 F.3d 1318 (11th Cir. 2000), and <u>United States v. Camacho</u>, 248 F.3d 1286 (11th Cir. 2001), because the mandatory minimums of neither section 841(b)(1)(A) nor (B) constrained the district court's sentencing discretion provided by the sentencing guidelines. Hence, further discussion is unnecessary.[1]

Yet, the court commences to canvass every issue that could possibly arise out of a potential <u>Apprendi</u> error, and, in the process, composes a treatise of dicta that compromises this circuit's commitment to the policies established by <u>Apprendi</u>. The majority, for instance, misinterprets <u>Rogers</u>' holding that drug quantity must be charged in the indictment when a court utilizes sections 841(b)(1)(A) or (B), and then sets about overruling it. Likewise, the court disavows <u>Camacho</u> after finding it inconsistent with <u>McMillan v. Pennsylvania</u>, 477 U.S. 79, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986); yet, a closer reading of <u>Camacho</u> reveals it to be entirely consistent with <u>McMillan</u> and a significant decision in this circuit's application of <u>Apprendi</u> to section 841(a) cases. Overruling these two cases undermines the progress of our post-<u>Apprendi</u>

---

[1] Rule 35 of the Federal Rules of Appellate Procedure advises that an en banc hearing "is not favored . . . unless (1) [it] is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." Fed. R. Appl. Pro. 35. This appeal satisfies neither test. Therefore, the court should vacate the order taking this case for rehearing en banc as improvidently granted.

decisions and, because it is accomplished through dicta, creates a blurring array of contradictions through which trial court judges and practitioners must now sift. Not content to confine its decision to this dictum, the majority continues by tackling the task of deciding whether an <u>Apprendi</u> error, when it actually occurs, is jurisdictional and reversible per se or is, instead, subject to harmless or plain error analyses under Rule 52(a) or (b) of the Federal Rules of Criminal Procedure.[2] Again, though the question is interesting, our task as judges is to decide the issues this appeal actually presents.

Anxious though it may be to establish a hornbook on <u>Apprendi</u> errors, the majority simply chose the wrong case as its vehicle, a decision which is both unfortunate and counterproductive. Dicta, especially erroneous dicta, creates a potential for mischief. "For the layperson, as well as for judges, confusion about the state of the law most often comes about by confusing the holding of a case with the *dicta* in the opinion." <u>Denno v. School Bd. of Volusia County</u>, 218 F.3d 1267, 1280 (11th Cir. 2000) (Forrester, J., concurring in part, dissenting in part) (emphasis in original). Faced with the majority's opinion here and the earlier decisions it seeks to disavow, a trial judge or practitioner sits in an unenviable

---

[2] Federal Rule of Criminal Procedure 52 states:
> (a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.
> (b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. <u>Id.</u>

position in discerning our law. Our own court will face uncertainty; in analyzing any question answered by dictum, "we are 'free to give that question fresh consideration.'" United States v. Hunter, 172 F.3d 1307, 1310 (11th Cir. 1999) (Carnes, J., concurring) (quoting Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller, 957 F.2d 1575, 1578 (11th Cir. 1992)).

While I agree that the Sanchezes' convictions and sentences should be affirmed, and therefore concur in the court's judgment, I write separately to eliminate the confusion our decision may cause district judges and the lawyers who litigate drug cases. I begin in part I with a brief recitation of the facts and procedural history leading up to this appeal. I then explain in part II why Apprendi does not apply in this case and assert, moreover, that discussion of Rogers is entirely irrelevant. Rogers is irrelevant because the defendant there, unlike the Sanchezes, who pled guilty, stood on his not guilty plea and was tried by a jury. Putting this dispositive distinction aside, to address the majority's disavowing of Rogers, I also explain in part II the proper interpretation of that decision and its importance in our caselaw. In part III, I turn to respond more fully to Judge Barkett's argument that Apprendi errors are jurisdictional. In short, I believe that a closer look at Apprendi reveals the Supreme Court's true concerns: that the defendant receive notice of the enhanced sentence and that the enhanced sentence be reliable. Two conclusions necessarily follow from this observation. First, when

these two concerns are not alleviated, the error is not jurisdictionally fatal; in fact, analyzing the error under harmless or plain error analysis best fulfills the Apprendi Court's mantra. I set out in part IV the second conclusion: as long as the defendant receives notice and a reliable sentence, then there is no Apprendi error. I then describe the various scenarios in which Apprendi errors arise and the sound approach in analyzing each one.

## I.

Appellants Ignasio Sanchez and Santiago Sanchez were indicted, along with four others, for conspiring knowingly and intentionally to possess with intent to distribute methamphetamine and amphetamine, in violation of 21 U.S.C. §§ 841(a) and 846.[3] The indictment did not include a specific drug quantity. Ignasio Sanchez subsequently moved to dismiss the indictment for "failure to allege facts that increase the maximum penalty," arguing that "Jones [v. United States, 526 U.S. 227, 243 n.6, 119 S. Ct. 1215, 1224 n.6, 143 L. Ed. 2d 311 (1999)], clearly holds that the Constitution requires an indictment to allege 'any fact (other than prior conviction) that increases the maximum penalty for a crime.'" Santiago Sanchez later adopted Ignasio's motion. After the district court denied both motions, the defendants pled guilty conditioned on the right to appeal the court's

---

[3] 21 U.S.C. § 841(a)(1) makes it unlawful "for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Id. 21 U.S.C. § 846 is the corresponding attempt and conspiracy provision. Id.

denial.[4]

The initial pre-sentence investigation reports ("PSIs") recommended that the Sanchezes be found responsible for various drug quantities of methamphetamine and amphetamine. Following objections from both the Government and the appellants, the reports were revised and the drug quantities were lowered. In the final PSIs, Santiago Sanchez was held accountable for 24,494.4 grams of amphetamine, 907.2 grams of methamphetamine, and 3.54 grams of cocaine, and Ignasio Sanchez was held responsible for 18,144 grams of amphetamine, 907.2 grams of methamphetamine, and 4,536 grams of marijuana. As the majority notes, the PSIs then converted these drug quantities into amounts of marijuana, according to the drug equivalency tables of the sentencing guidelines. For Santiago, this yielded an equivalency of 6,713.99 kilograms of marijuana; for Ignasio, the total was 5,447.74 kilograms of marijuana. Then, without citing any penal provision in 21 U.S.C. § 841(b), the reports stated that the "Statutory Penalty" for each defendant was "5 to 40 years."[5]

---

[4] Ignasio Sanchez properly preserved his right to appeal under Federal Rule of Criminal Procedure 11(a)(2). As the majority notes, Santiago Sanchez, though not complying with the Rule 11(a)(2) "writing requirement," should be treated as having properly preserved his right to appeal because the Government agreed to the oral reservation and the district court granted permission.

[5] "Statutory Penalty" is most likely a reference to 21 U.S.C. § 841(b)(1)(B), one of the three penalty provisions of section 841. This provision requires a finding of a particular drug quantity and prescribes a penalty range of five to forty years' imprisonment. As I explain more fully infra, note 7, however, the methamphetamine quantity actually corresponds to the methamphetamine quantity set out in section 841(b)(1)(A), which prescribes a penalty range of

The Sanchezes were sentenced at the conclusion of the second of two sentencing hearings. At the first hearing, after the court denied the Sanchezes' renewed motion to dismiss the indictment (for failure to allege drug quantity), the prosecutor streamlined the drug transactions listed in the PSIs into essentially three categories. The first category included one significant drug transaction, one to which Santiago Sanchez never objected, that occurred at a Stone Mountain motel in June 1998 and involved 907.2 grams of methamphetamine.[6] In the second category, the prosecutor described several transactions between the Sanchezes and a woman named C.J. Franks, which, according to the prosecutor, yielded approximately 2,718 grams of amphetamine. Finally, the prosecutor reported a third category of transactions involving the Sanchezes and a man named Kenneth Kish Green, which totaled 2,718 grams of amphetamine. While the Sanchezes did not withdraw their objections to the initial PSIs, they both conceded that the prosecutor's revision of the drug quantities had "the same effect on [their] sentencing guidelines as if [they had] won all of [their] objections." Then, based on these three categories of transactions, the district court found by a

10 years to life imprisonment.

[6] The PSIs and the prosecutor reported that "two pounds" of methamphetamine were involved in the Stone Mountain transaction; two pounds is equivalent to 907.2 grams. Unlike the other substances described in the PSIs, "approximately 230 grams" of the drugs exchanged at the Stone Mountain hotel were seized by the Government and tested positive for the presence of methamphetamine.

preponderance of the evidence that the Sanchezes should be held responsible for 907.2 grams of methamphetamine and 5,436 grams of amphetamine, which together yielded a marijuana equivalency of 2,903.04 kilograms. Under the sentencing guidelines, the district court concluded, these drug quantities resulted in a base offense level of 32. At this first sentencing hearing, the Sanchezes made an oral motion for a downward departure from the applicable guidelines range based on the prison conditions at the Atlanta Pretrial Detention Center. The court deferred ruling on the motion.

At the second sentencing hearing, the court denied the motion for the downward departure, finding that the conditions at the Atlanta Pretrial Detention Center were not "so atypical as to justify the highly infrequent exercise of a downward departure." The court then noted that its sentencing option in this case was a mandatory minimum of five years and a maximum of forty years imprisonment, thus describing, but not citing, the statutory provision of section 841(b)(1)(B).[7] Using the sentencing guidelines, the drug amounts described in the

---

[7] The PSIs, the district court, and the parties failed to recognize that 21 U.S.C. § 841(b)(1)(A)(viii), specifying a prison term of 10 years to life, actually controlled the sentences in this case. Instead, the PSIs described the "Statutory Penalty" as being from "5 to 40 years," which corresponds to the penalty range set out in section 841(b)(1)(B); the district court at the second sentencing hearing declared that its sentencing option was "a statutory minimum mandatory sentence of five years up to forty years . . ."; and, the parties in their briefs to this court assumed that section 841(b)(1)(B) is controlling. Yet, as the PSIs indicated and the court found at the sentencing hearing, the Sanchezes were responsible for 5,436 grams of amphetamine and 907.2 grams of methamphetamine, the latter of which requires the application of section 841(b)(1)(A)(viii). Under that section, the proper sentence was 10 years to life imprisonment, not five to forty years. After arriving at the marijuana equivalency for the drugs,

81

first sentencing hearing, and other adjustments, the court then announced a

guideline range of 87 to 108 months for Ignasio Sanchez and 108 to 135 months

for Santiago Sanchez.[8]  The court then settled on the lower end of the guideline

range for each defendant, taking into account the offensive conditions at the

Atlanta Pretrial Detention Center, and sentenced Ignasio Sanchez to 87 months'

imprisonment and Santiago Sanchez to 108 months' imprisonment.[9]  This appeal

followed.

## II.

The Sanchezes contend that the district court should have dismissed their

indictment for failing to allege drug quantity.  As I see it, they appear to advance

two arguments.  First, the Sanchezes assert that because drug quantity determines

---

the district court nevertheless sentenced the Sanchezes to 87 and 108 months, respectively, both sentences falling below the 10-year mandatory minimum of section 841(b)(1)(A).  Because the Government has not cross-appealed, however, this court cannot address the issue.  See, e.g., McKinney v. Pate, 985 F.2d 1502, 1507 n.11 (11th Cir. 1993) ("The failure to cross-appeal renders this point waived and without merit."); Baker v. Montgomery, 811 F.2d 557, 558 n.1 (11th Cir. 1987) ("Having failed to brief and argue these issues on appeal, defendant has abandoned these claims.").

[8]  Under the sentencing guidelines, this final drug amount – a marijuana equivalency of 2,903.04 kilograms – resulted in a base offense level of 32 for each defendant.  The court then applied a two-level increase for firearm possession, resulting in an offense level of 34.  For Ignasio Sanchez, the court applied a two-level reduction for playing a minor role and a three-level reduction for acceptance of responsibility, producing a final offense level of 29.  With a criminal history category of I, the guideline range for Ignasio Sanchez was 87 to 108 months.  For Santiago Sanchez, the court reduced the offense level of 34 by only three for acceptance of responsibility.  This produced an offense level of 31, which, with a criminal history of Category I, resulted in a guideline range for Santiago Sanchez of 108 to 135 months.

[9] After the court imposed the sentences, the Sanchezes renewed for a second time their motion to dismiss the indictment for failure to allege a drug quantity.  The court denied their motion.

82

the range of punishment in a case prosecuted under 21 U.S.C. §§ 841(a) and 846, the Supreme Court's decision in Apprendi requires quantity to be treated as an element. Second, noting that the district court believed that 21 U.S.C. § 841(b)(1)(B) prescribed their maximum and minimum sentences, the Sanchezes argue that drug quantity should have been alleged in the indictment and proven beyond a reasonable doubt under both Apprendi and Rogers.

Because the Sanchezes properly preserved this issue for appeal, the majority is correct in applying a de novo standard of review to their arguments. United States v. Candelario, 240 F.3d 1300, 1306-07 (11th Cir. 2001).[10]

1.

The Sanchezes' first argument, that the Supreme Court's decision in Apprendi requires quantity to be treated as an element of any 21 U.S.C. § 841(a) offense, may be disposed of quickly. In Apprendi, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S. Ct. at 2362-63. As the majority correctly notes, in applying the rule of Apprendi to 21 U.S.C. § 841, this circuit has held in case after case that the rule of Apprendi does

---

[10] Because I believe that Apprendi does not apply to this case, in part III I discuss whether an Apprendi error, when it occurs, is jurisdictional or merely subject to harmless or plain error analysis under Rule 52.

not apply to cases in which the ultimate sentence is no greater than the twenty-year maximum set out in section 841(b)(1)(C).[11] See, e.g., Rogers, 228 F.3d at 1327; see also United States v. Gallego, 247 F.3d 1191, 1197 (11th Cir. 2001); United States v. Gerrow, 232 F.3d 831, 834 (11th Cir. 2000); United States v. Nealy, 232 F.3d 825, 829 (11th Cir. 2000); United States v. Shepard, 235 F.3d 1295, 1296-97 (11th Cir. 2000). That is to say, we have treated section 841(b)(1)(C) as the "catch-all [penalty] provision" of section 841(b) because under that section, a defendant may be sentenced up to a maximum of twenty years without regard to any drug quantity. Rogers, 228 F.3d at 1327, n.15. Hence, if a defendant is sentenced under section 841(b)(1)(C) to a term no greater than twenty years, there is no Apprendi error. See, e.g., Rogers, 228 F.3d at 1327; see also Gallego, 247 F.3d at 1197; United States v. Pease, 240 F.3d 938, 943-44 (11th Cir. 2001); Gerrow, 232 F.3d at 834; Nealy, 232 F.3d at 829; Shepard, 235 F.3d at 1296-97;.

Therefore, I contend that the rule of Apprendi does not apply here, because the Sanchezes' ultimate sentences did not exceed the twenty-year maximum of

---

[11] At this point, a review of the statutory framework of 21 U.S.C. § 841 is helpful. The first section of the statute, section 841(a), sets out the offense without regard to drug quantity. See supra, note 3. The second section, section 841(b), then describes the various penalty provisions to which the defendant may be subject after being found guilty of section 841(a). Section 841(b)(1)(A) applies a mandatory minimum sentence of 10 years up to life imprisonment for certain drug quantities, while section 841(b)(1)(B) applies a mandatory minimum of five years up to forty years imprisonment for lesser drug quantities. It is under section 841(b)(1)(C), however, that a defendant may be sentenced without a finding of any drug quantity. Section 841(b)(1)(C) states, "In the case of a controlled substance in schedule I or II . . . such person shall be sentenced to a term of imprisonment of not more than 20 years . . ." Id.

section 841(b)(1)(C).

2.

The Sanchezes persist, however, arguing that even though their sentences did not exceed section 841(b)(1)(C)'s maximum, they were imposed under section 841(b)(1)(B) because the district court, at the second sentencing hearing, referred to and felt limited by that section. Specifically, the Sanchezes argue that by mentioning section 841(b)(1)(B), the district court exposed the defendants to a possible prison term higher than the maximum penalty set out in section 841(b)(1)(C). Therefore, the Sanchezes assert, Apprendi requires that drug quantity be treated as an essential element of their offense and that, under Rogers, the quantity be charged in the indictment. It is this latter argument that most confuses the majority and leads unnecessarily to the dicta regarding Rogers and United States v. Camacho, 248 F.3d 1286 (11th Cir. 2001). Before addressing the Sanchezes' alleged Rogers' error, however, I review briefly the decisions disposing of the Sanchezes' supposed Apprendi error.

Bared to their essentials, these cases hold that there is no Apprendi error as long as the defendant's sentence does not exceed the twenty-year maximum of section 841(b)(1)(C), no matter what the district court said or found during sentencing. Although I concur with the majority in its treatment of the alleged Apprendi error, I believe it is important to show that our precedents, standing

independent of <u>Rogers</u>, have long held that mere references to or reliance on sections 841(b)(1)(A) or 841(b)(1)(B) do not create error under <u>Apprendi</u>.[12]  In <u>United States v. Gerrow</u>, 232 F.3d 831 (11th Cir. 2000), for example, two defendants were tried and convicted under sections 841(a)(1) and 846 without regard to drug quantity.  <u>See</u> <u>id.</u>, 232 F.3d at 833.  At their sentencing hearing, the district court determined drug quantities for each and then sentenced them under the sentencing guidelines to terms well under the twenty-year maximum of section 841(b)(1)(C).  <u>See</u> <u>id.</u> at 834.  We found no error, plain or otherwise, under <u>Apprendi</u> because the terms of imprisonment did not exceed the statutory maximum set forth in section 841(b)(1)(C).  <u>See</u> <u>id.</u>  Moreover, in <u>United States v. Gallego</u>, 247 F.3d 1191 (11th Cir. 2001), one of the defendants was charged in an indictment that did not include drug quantity and was tried and convicted under section 841(a)(1).  <u>See</u> <u>id.</u>, 247 F.3d at 1194 n.3.  The district court sentenced this defendant under the sentencing guidelines to 168 months imprisonment, and we held that there was no <u>Apprendi</u> error because the sentence fell within the statutory maximum of section 841(b)(1)(C).  <u>See</u> <u>id.</u> at 1197.  Likewise, in <u>Rogers</u>, <u>Nealy</u>, <u>Pease</u>, <u>Candelario</u>, and <u>Wims</u>, this court found sentencing errors under <u>Apprendi</u>

---

[12] It is unclear from the majority's response to this particular <u>Apprendi</u> argument on what basis the majority rejects it.  The majority first implies that the Sanchezes' argument derived from <u>Rogers</u> and, rather than laying out this circuit's well-established precedents, it then cites to nine other circuits' decisions to dispose of both the argument and <u>Rogers</u>.  I believe that our own cases, including <u>Rogers</u>, however, have long held that there can be no <u>Apprendi</u> error when the sentence does not exceed the statutory maximum of section 841(b)(1)(C).

only because the lower courts had sentenced defendants to terms *over* the twenty-year maximum of section 841(b)(1)(C), meaning that the district courts had necessarily employed either section 841(b)(1)(A) or section 841(b)(1)(B) without properly treating drug quantity as an element.

In only one case has this court intimated that there could be an Apprendi error for not treating drug quantity as an element even when the defendant's sentence did not exceed the twenty-year maximum of section 841(b)(1)(C). In United States v. Shepard, 235 F.3d 1295 (11th Cir. 2000), although no drug quantity was alleged in the indictment, the district court "sentenc[ed] [the defendant] under section 841(b)(1)(B)" for possessing the requisite drug quantity[13] to 188 months imprisonment. Id. at 1296. On appeal, we found this to be an error under Apprendi because the "[defendant's] sentence was controlled by section 841(b)(1)(C)" but the district court had applied section 841(b)(1)(B). Id. at 1297. Nevertheless, we affirmed the sentence because it fell "within the range authorized" by section 841(b)(1)(C); the error, we held, was not prejudicial. Id. As the majority correctly notes, however, we effectively limited Shepard in United States v. Candelario, 240 F.3d 1300 (11th Cir. 2001). In Candelario, we explained that "Shepard's holding was merely that a sentence that falls below the twenty year

_____

[13] In Shepard, the defendant was indicted for violating 21 U.S.C. § 841(a)(1) without regard to drug quantity. See Shepard, 235 F.3d at 1296. After the defendant pled guilty, the district court, relying on the PSI report, found him responsible for 50 grams of cocaine base and then "considered and sentenced [him] under section 841(b)(1)(B)." Id.

maximum, as set forth in 21 U.S.C. § 841(b)(1)(C), is not subject to reversal due to Apprendi" and therefore "'there is no error, plain or otherwise, under Apprendi where the term of imprisonment is within the statutory maximum set forth in section 841(b)(1)(C).'" Id. at 1308 n.11 (quoting in part Gerrow, 232 F.3d at 834).

The proper response, then, to the Sanchezes' second argument – that the district court committed an Apprendi error because it effectively sentenced them under section 841(b)(1)(B) – is straightforward. There is no Apprendi error because the defendants' sentences do not exceed the twenty-year maximum of section 841(b)(1)(C). The district court's reference to the penalty range of section 841(b)(1)(B) in sentencing the Sanchezes does not violate Apprendi, according to this circuit's well-established law.

The Sanchezes are correct that there may be another kind of error, however, even when the sentence falls under the twenty-year maximum of section 841(b)(1)(C). Termed the "Rogers' error" after our decision in United States v. Rogers, 228 F.3d 1318 (11th Cir. 2000), this mistake occurs when the indictment fails to allege a drug quantity, none is proven at trial, and yet the district court utilizes section 841(b)(1)(A) or 841(b)(1)(B) in sentencing. See id. at 1327; Camacho, 248 F.3d at 1290 n.7. It is in addressing this argument that the majority errs. Rather than determining whether Rogers even applies to the case at hand, the majority incorrectly assumes that it does and then attempts to overrule parts of

88

Rogers and the cases which apply it. To respond, I first explain that Rogers has no application in a case like the one before us because, unlike the defendant in Rogers, the Sanchezes pled guilty. I then demonstrate how exactly a sentencing court commits a Rogers' error, show why no such error was ever committed here (even assuming Rogers' application), and, finally, assert that the majority's overruling of Rogers and its progeny is both wrong and pure dictum.

The holding in Rogers is inapplicable in the case before us. In Rogers, we held that "drug quantity in section 841(b)(1)(A) and section 841(b)(1)(B) cases must be charged in the indictment and proven to a jury beyond a reasonable doubt in light of Apprendi." Rogers, 228 F.3d at 1327. Unlike the Sanchezes, however, the defendant in Rogers chose to stand on his not-guilty plea and was tried before a jury. See id. at 1319. If the mantra of Apprendi is to provide the defendant with notice (and a reliable sentence), as I have already stated and explain more fully in part III, then the only way to satisfy that imperative in a case to be tried to a jury is to allege the sentence-enhancing fact in the indictment. Thus, we held in Rogers that in light of Apprendi, a fact like drug quantity, which enhances the sentence of a section 841(a) offense, must be charged in the indictment.

Clarifying our holding in Rogers in this way illustrates its inapplicability in the case before us. Here, the Sanchezes pled guilty, waiving their right to a jury trial. Moreover, because, as I point out in part III, the failure to allege drug

89

quantity did not deprive the court of subject matter jurisdiction, the guilty pleas also waived notice of the drug quantity the Government would rely upon at sentencing. The Sanchezes, however, actually did receive notice of the drug quantity involved in the charged offense. Federal Rule of Criminal Procedure 11(c), "Advice to Defendant," required the court to inform the defendants of "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." Fed. R. of Crim. Pro. 11(c). In order to inform the defendants of such penalties, the court had to know the quantity of drugs the Government would establish at sentencing. In fact, after summarizing the various drug transactions later included in the PSIs, the prosecutor stated, "[O]ur evidence would indicate the distributions were probably more than one kilogram of methamphetamine." Likewise, the court informed the Sanchezes that if their offense involved one kilogram or more of methamphetamine, they would be facing a maximum penalty of life imprisonment and a mandatory minimum penalty of ten years imprisonment. If their offense involved "more than 100 grams but less than 1,000 grams of methamphetamine and amphetamine," the maximum penalty would be forty years imprisonment and a mandatory minimum penalty of five years imprisonment. Our command in Rogers, that all sentence-enhancing facts be included in the indictment, simply does not apply to cases such as this, in which the defendants were put on notice of drug quantity well in advance of the

90

sentencing hearing.

Despite <u>Rogers</u>' inapplicability to the case before us, the majority assumes that it applies and then sets about overruling it and <u>Camacho</u>. The source of the majority's confusion is its acceptance of the Sanchezes' argument that because the district court cited section 841(b)(1)(B) they were sentenced as if their case was "a section 841(b)(1)(B) case." It is true that, in <u>Rogers</u>, we stated that "sections 841(b)(1)(A) and 841(b)(1)(B) may not be utilized for sentencing without a finding of drug quantity by the jury." <u>Rogers</u>, 228 F.3d at 1327. Both the Sanchezes and the majority, however, misinterpret and misapply the phrase "utilizing sections 841(b)(1)(A) or 841(b)(1)(B)." Essentially, a district court utilizes those sections when its sentencing discretion dictated by the sentencing guidelines is eliminated or cut short by the sections' mandatory minimums. If, for example, the defendant requests a downward departure from the applicable guideline range, and the court's compliance with section 841(b)(1)(A) or 841(b)(1)(B) is the only reason it refuses the departure, then that court would be "utilizing section 841(b)(1)(A) or 841(b)(1)(B)." Though this would not result in an <u>Apprendi</u> error, we have held that it constitutes a "<u>Rogers</u>' error." <u>See</u> <u>United States v. Camacho</u>, 248 F.3d 1286, 1289 (11th Cir. 2001). If a <u>Rogers</u>' error occurs in a case tried before a jury, then drug quantity would need to be alleged in the indictment and proven to the jury beyond a reasonable doubt. We have never held, however, that a sentencing judge

91

utilizes section 841(a)(1)(A) or 841(b)(1)(B) simply by referring to it during the imposition of a sentence.

The prototypical <u>Rogers</u>' error occurred in <u>Camacho</u>. In <u>Camacho</u>, the defendant was indicted and convicted at trial under section 841(a)(1) without regard to drug quantity. <u>See</u> <u>id.</u> at 1288. At the sentencing hearing, the defendant stipulated to a drug quantity sufficient for a sentence under section 841(b)(1)(A), which prescribes a mandatory minimum sentence of ten years. <u>See</u> <u>id.</u> When the district court determined the defendant's sentence range under the sentencing guidelines, it arrived at a range of 108 to 135 months. <u>Id.</u> at 1289 n.6. The court applied the mandatory minimum of section 841(b)(1)(A), however, which narrowed the range to 120 to 135 months and effectively limited the district court's sentencing discretion. <u>See</u> <u>Camacho</u>, 248 F.3d at 1289 n.6. The court then sentenced the defendant to 120 months. <u>Id.</u> at 1289. On appeal, this court found no <u>Apprendi</u> error because the sentence was less than the statutory maximum of section 841(b)(1)(C). <u>Id.</u> We nevertheless found an error under <u>Rogers</u> because "<u>Rogers</u> . . . went beyond <u>Apprendi</u> to hold that 'drug quantity in section 841(b)(1)(A) and section 841(b)(1)(B) cases must be charged in the indictment and proven to a jury beyond a reasonable doubt.'" <u>Camacho</u>, 248 F.3d at 1289. Because the district court had used the ten-year mandatory minimum of section 841(b)(1)(A), narrowing the applicable guidelines range, we found that there was

"no doubt that the district court applied the regime of section 841(b)(1)(A) when sentencing Camacho . . . [which] is error under this circuit's precedent in <u>Rogers</u>." <u>Id.</u>

Even assuming that <u>Rogers</u>' command to charge quantity in the indictment applies to the case before us, I maintain that the district court never "utilized sections 841(b)(1)(A) or 841(b)(1)(B)" because it never relied on the mandatory minimum of either section. Thus, unlike <u>Camacho</u>, the statutory provisions of section 841(b)(1)(A) and 841(b)(1)(B) did not constrain the district court or narrow the guidelines sentence range of either defendant. Rather, in sentencing the Sanchezes, the district court determined and applied the sentencing guidelines without any interference from section 841(b) at all. Even after they moved for a downward departure, the district court denied the motion because the motion lacked merit – not because any provision in section 841(b) prevented it from doing so. Because the district court did not "utilize section 841(b)(1)(A) or (B)," the Sanchezes' cases were not "section 841(b)(1)(B) cases." <u>Rogers</u> and <u>Camacho</u>, therefore, are simply inapplicable.[14]

---

[14] In overruling <u>Rogers</u> and <u>Camacho</u>, the majority opinion appears to rest its reasoning on two pillars: first, that under <u>Apprendi</u> there can be no error when the ultimate sentence does not exceed the twenty-year maximum of 841(b)(1)(C); and, second, that <u>Apprendi</u> preserved <u>McMillan v. Pennsylvania</u>, 477 U.S. 79, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986), and the use of mandatory minimum sentences. The opinion's first reason that <u>Apprendi</u> is not violated unless the sentence surpasses the twenty-year maximum, does nothing to advance the majority's argument because the <u>Rogers</u>' error is one independent of <u>Apprendi</u>. As the majority concedes, in cases tried to a jury <u>Rogers</u> requires drug quantity to be alleged in the indictment and proven to a jury beyond a reasonable doubt if the district court utilizes either section 841(b)(1)(A) or

III.

I now turn to the discussion of whether hypothetical <u>Apprendi</u> errors are

jurisdictional.  I reiterate here that, like its treatment of <u>Rogers</u> and <u>Camacho</u>, the

court's discourse about <u>Apprendi</u> error is unnecessary because there was no such

error in this case.  While I join the court's conclusion that an <u>Apprendi</u> error, when

it occurs, should be subject to harmless or plain error analysis under Rule 52(a) or

(b), I write separately to respond more fully to Judge Barkett's argument that

<u>Apprendi</u> errors are jurisdictional.[15]

The argument that any fact which enhances a defendant's sentence becomes

an element of the offense and must be included in the indictment in order to sustain

---

841(b)(1)(B) in sentencing.  I assert, then, that <u>Camacho</u> simply holds that a district court necessarily *used* section 841(b)(1)(A) or 841(b)(1)(B) in sentencing if the court allowed the mandatory minimum to constrain its sentencing discretion under the guidelines.   This reasoning, moreover, is completely consistent with <u>Apprendi</u>'s preservation of <u>McMillan</u>, in which the Supreme Court held that mandatory minimums may be imposed based on facts found by a judge by a preponderance of the evidence.  <u>See Apprendi v. New Jersey</u>, 530 U.S. 466, 487 n.13, 120 S. Ct. 2348, 2361 n.13, 147 L. Ed. 2d 435 (2000).  <u>Camacho</u> itself recognized that the district court's use of the mandatory minimum of section 841(b)(1)(A) did not violate <u>Apprendi</u> or <u>McMillan</u>.  <u>See Camacho</u>, 248 F.3d at 1289 n.5.  <u>Camacho</u> went on to explain, however, that sentencing the defendant to the mandatory minimum of that section necessarily meant that it was *utilizing* that section for sentencing.  <u>See id.</u> at 1289.  This, we held, violated <u>Rogers</u>' mantra that when section 841(b)(1)(A) or (B) is used, drug quantity must be alleged in the indictment and proven to a jury beyond a reasonable doubt.

[15] I also join the court's conclusion that <u>Apprendi</u> error is not structural, and our cases have already held as much.  <u>See United States v. Nealy</u>, 232 F.3d 825, 829 & n.4 (2000) (holding that "<u>Apprendi</u> did not recognize or create a structural error that would require per se reversal." and further noting that "Structural error occurs only in the rare instance involving a 'structural defect affecting the framework within the trial proceeds, rather than simply an error in the trial process itself.'") (quoting <u>Arizona v. Fulminante</u>, 499 U.S. 279, 111 S. Ct. 1246, 1265, 113 L. Ed. 2d 302 (1991)).

a court's jurisdiction derives from a simple misunderstanding of the Court's opinion in Apprendi. The Court did not hold that such facts *become* elements; rather, Apprendi commands courts to treat a sentence-enhancing fact as the "functional equivalent of an element." Apprendi, 530 U.S. 466, 494 n.19. In this part, I show that the Court's concern was twofold: first, that a defendant have notice that the Government seeks to use a fact to enhance his sentence; and, second, that the enhanced sentence itself be reliable. As long as these two concerns are satisfied, then the district court has properly treated a sentence-enhancing fact as the functional equivalent of an element under Apprendi. I contend, therefore, that because a section 841(a) indictment would still state an offense even without including the drug quantity, a court would have subject matter jurisdiction under federal law. Hence, failing to allege drug quantity in the indictment is not jursidictionally fatal.

In understanding Apprendi's holding that sentence-enhancing facts are to be treated like elements, rather than made elements, it is useful to compare Apprendi with the Supreme Court's earlier opinion in Jones v. United States, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999). In Apprendi, the Court's task was determining whether and to what extent the Constitution protects a defendant from a penalty exceeding the statutory maximum based on a fact found by a judge by a preponderance of the evidence. See Apprendi, 530 U.S. at 476, 120 S. Ct. at 2355.

95

The engines propelling the Court's decision were the due process clause of the Fourteenth Amendment and the Sixth Amendment right to trial by jury, which, taken together, the Court held, "entitle a criminal defendant to a jury determination" of any fact which enhances his sentence beyond the statutory maximum. Id. at 476-77, 120 S. Ct. at 2356. In order that courts honor these constitutional protections, Apprendi declared that such sentence-enhancing facts are to be treated as "the functional equivalent of an element" and are "'elemental' *[in] nature*." Id. at 494 & n.19, 120 S. Ct. at 2365 & n.19 (emphasis mine). The Court's focus in Jones, on the other hand, was determining whether Congress intended that a sentence-enhancing fact be an element or a sentencing factor of an offense set out in the federal carjacking statute, 18 U.S.C. § 2119. See Jones, 526 U.S. at 229, 119 S. Ct. at 1217. The Jones Court, then, was not driven by any constitutional provision but by the federal statute. Based on its interpretation of that statute, the Court held that Congress had intended that serious bodily injury or death, a fact which resulted in higher penalties, be an element of the offense. See id. at 233-39, 119 S. Ct. at 1219-1223. In Apprendi, the Court brought the distinction to light, noting that while Jones discussed the "constitutionality of allowing penalty-enhancing findings to be determined by a judge by a preponderance of the evidence . . ., the [Jones] court concluded that those doubts were not essential to our holding." Apprendi, 530 U.S. at 472-73, 120 S. Ct. at

96

2353. Not only were the sources of the two opinions different, but their conclusions were dissimilar as well: in Jones, the Court found the sentence-enhancing fact to be an element; in Apprendi, on the other hand, the Court found that the fact was to be *treated* like an element.[16]

The focus of the Apprendi Court was not on legislative intent, but, rather, on the constitutional protections to which a defendant is entitled when a prosecutor seeks to enhance his sentence beyond the offense's maximum penalty. In focusing on these constitutional protections, I contend that the Court in Apprendi was fundamentally concerned with giving the defendant notice of the sentence enhancement and ensuring that any increased sentence be reliable. The Court began with the historical foundations of due process, noting that criminal proceedings have traditionally been initiated by an indictment that includes all facts in order "that the defendant . . . *may be enabled to determine the species of offence* they constitute, in order that he may prepare his defence accordingly . . . and *that there may be no doubt* as to the judgment which should be given, if the defendant be convicted." Id. at 478, 120 S. Ct. at 2356 (quoting J. Archbold,

---

[16] It is also beneficial to consider the language of Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), in which the Court discussed whether the due process clause required a prior conviction to be *treated as an element*. There, the Court described its purpose as determining "whether, or when, the Constitution requires the Government to treat a particular fact as an element, i.e., as a 'fact necessary to constitute the crime,' even where the crime-defining statute does not do so." Almendarez-Torres, 523 U.S. at 239-40, 118 S. Ct. at 1229.

Pleading and Evidence in Criminal Cases 44 (15th ed. 1862) (emphasis mine).

Honing in on the concern for reliability, the Court submitted that one way to ensure

the fairness and accuracy of the sentence is to require the prosecutor to prove all

the facts of the offense to a jury beyond a reasonable doubt.  See id. at 483-84, 120

S. Ct. at 2359.  "The 'reasonable doubt' requirement 'has a vital role in our

criminal procedure for cogent reasons,'" not the least of which is to "reduce the

risk of imposing [due process] deprivations erroneously."  Id. at 484, 120 S. Ct. at

2360 (quoting In re Winship, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368

(1970)).

The Court's two-part concern for fair notice and sentence reliability are

highlighted in its discussion in Jones and Apprendi of Almendarez-Torres v.

United States, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), in which

the Court found that recidivism is a sentencing factor that does not need to be

treated as an element.  Although the Court pointed out that its conclusion in

Almendarez-Torres relied partly on the tradition of treating recidivism as a

sentencing factor and not an element, the Court in Jones and Apprendi illuminated

other reasons.  Unlike most sentence-enhancing facts, the Court observed, a prior

conviction has already "been established through procedures satisfying fair notice,

reasonable doubt, and jury trial guarantees."  Jones, 526 U.S. at 249, 119 S. Ct. at

1227.  In Apprendi the Court further explained that the defendant in Almendarez-

Torres had admitted his earlier convictions, all three of which "had been entered pursuant to proceedings with substantial procedural safeguards of their own," and thus there was "no question [before the Court] concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact." Apprendi, 530 U.S. at 488, 120 S. Ct. at 2361.

The command of Apprendi, therefore, is not to transform sentence-enhancing facts into elements, the allegation of which is necessary in the indictment in order to state an offense, but, rather, to treat sentence-enhancing facts like elements in order to provide the defendant with notice of the sentence enhancement and to make certain the resulting sentence is reliable. Even though a sentence-enhancing fact like drug quantity should be included in the indictment in order to provide the defendant with notice,[17] its absence is not a jurisdictionally fatal error. On the contrary, a court's power to adjudicate a federal criminal prosecution comes from 18 U.S.C. § 3231, which gives federal courts original jurisdiction of "all offenses against the laws of the United States." 18 U.S.C. §

---

[17] The Court in Apprendi avoided the issue of whether such facts should be charged in the indictment because the appellant there had not asserted a claim "based on the omission of any reference to sentence enhancement or racial bias in the indictment." Apprendi, 530 U.S. at 477 n.3, 120 S. Ct. at 2356 n.3. We nevertheless held in Rogers, a case in which the defendant pled not guilty and chose to be tried before a jury, that drug quantity in section 841(b)(1)(A) or 841(b)(1)(B) cases must be charged in the indictment and proven to a jury beyond a reasonable doubt. See United States v. Rogers, 228 F.3d 1318, 1327 (11th Cir. 2000). In cases in which the defendant pleads guilty, however, the defendant is informed of drug quantity, the maximum penalty, and the mandatory minimum penalty, if any, when the court entertains his plea under Rule 11. Such a defendant, therefore, receives the notice Apprendi requires.

3231. In many instances, an indictment may sufficiently charge a federal offense, and thus sustain the court's jurisdiction, without including the sentence-enhancing fact. In a section 841(a)(1) case, for example, an indictment charging the defendant with possessing or distributing a controlled substance properly states an offense against the United States without alleging a specific drug quantity. 18 U.S.C. § 841(a)(1). See also Prou v. United States, 199 F.3d 37, 45 (1st Cir. 1999) ("Whether or not the prosecution files a timely section 851(a)(1) information, a federal district court plainly possesses subject-matter jurisdiction over drug cases. See 18 U.S.C. § 3231 (conferring original jurisdiction of 'all offenses against the laws of the United States')."); United States v. Prentiss, 256 F.3d 971, 982 (10th Cir. 2001) (finding that the elements of the crime of arson (in Indian country) are "jurisdictional only in the sense that in the absence of those elements, no federal crime exists"). Failing to include drug quantity in a section 841(a) offense, therefore, is not jurisdictional.

Furthermore, it is well-established that failing to include an element in a jury instruction (or wrongly putting the burden on the defendant to prove an element) is not jurisdictional error but is subject to harmless error analysis. In Franklin v. Francis, 720 F.2d 1206 (11th Cir. 1983), for example, this court, after finding that the jury instructions had improperly shifted the burden of proving an essential element of the offense to the defendant, evaluated the error under the harmless

error standard. See Franklin, 720 F.2d at 1212.[18] We upheld this analysis in Collins v. Zant, 892 F.2d 1502 (11th Cir. 1990), stating that impermissibly shifting the burden of proof of an essential element to the defendant "does not automatically require reversal of an otherwise valid conviction; it is subject to the harmless error analysis under Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)." Collins, 892 F.2d at 1506. This approach was explicitly adopted by the Supreme Court in Neder v. United States, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), in which the Court held outright that omitting an element from the judge's charge to the jury can be harmless error under Rule 52(a). See Neder, 527 U.S. at 7-8, 119 S. Ct. at 1833. Such an error, the Court held, "differs markedly from the constitutional violations we have found to defy harmless-error review." Id. at 8, 119 S. Ct. at 1833.

I contend, as the majority of this court does, that jury instruction errors, like the one that occurred in Neder, are no different from Apprendi errors occurring when an indictment fails to charge a sentence-enhancing fact (and the jury is not instructed to find such fact beyond a reasonable doubt).[19] Indeed, we have already

[18] Although the opinion in Franklin does not cite the "harmless beyond a reasonable doubt" standard of Chapman v. California, 386 U.S. 18, 24, 97 S. Ct. 824, 827, 17 L. Ed. 2d 705 (1967), as the harmless error standard it employed, the opinion cites the harmless error standard used by the court in Lamb v. Jernigan, 683 F.2d 1332 (11th Cir. 1982). Lamb, in turn, relied on the standard the court used in Mason v. Balkcom, 669 F.2d 222, 226 (11th Cir. 1982), which was Chapman's "harmless beyond a reasonable doubt" standard.

[19]We are not alone in this conclusion. See, e.g., United States v. Mojica-Baez, 229 F.3d 292, 311 (1st Cir. 2000) (holding that failure to include an element in the indictment is no

held as much, finding in <u>United States v. Swatzie</u>, 228 F.3d 1278 (11th Cir. 2000), <u>cert. denied</u>, 121 S. Ct. 2600 (2001), that "the error in <u>Neder</u> is in material respects indistinguishable from error under <u>Apprendi</u>" because both <u>Neder</u> and <u>Apprendi</u> involve facts that were to be resolved by a jury under a reasonable-doubt standard but, instead, were resolved by the judge using a less-exacting standard.  <u>Swatzie</u>, 228 F.3d at 1283. Under <u>Neder</u>, therefore, failing to include a sentence-enhancing fact in the indictment is not jurisdictional error but is, instead, subject to harmless or plain error analysis under Rule 52(a) or (b).

Though failing to include a sentence-enhancing fact could create an error under <u>Apprendi</u> and <u>Rogers</u>, it is not a "structural error," but a constitutional error, which is subject to harmless or plain error review.  We review section 841(a) cases on direct appeal under Rule 52.  If an <u>Apprendi</u> error occurs and is properly preserved, then Rule 52(a) applies, and we "must disregard [the] error[] [if it is] harmless 'beyond a reasonable doubt.'" <u>Neder</u>, 527 U.S. at 7, 119 S. Ct. at 1833 (1999) (quoting <u>Chapman v. California</u>, 386 U.S. 18, 24, 87 S. Ct. 824, 827, 17 L. Ed. 2d 705 (1967)); <u>see also</u> <u>United States v. Nealy</u>, 232 F.3d 825, 829 (11th Cir. 2000) (applying Rule 52(a)'s harmless error analysis and using <u>Chapman</u>'s standard to section 841(a) cases).  In other words, <u>Apprendi</u> errors that are not

_____

different from the failure to submit an element to the jury, and under <u>Neder</u>, harmless error review applies); <u>United States v. Nance</u>, 236 F.3d 820, 825 (7th Cir. 2001) (same); <u>United States v. Prentiss</u>, 256 F.3d 971 (10th Cir. 2001) (same).

harmless beyond a reasonable doubt "affect [the defendant's] substantial rights" within the meaning of Rule 52(a). When a defendant fails to preserve an Apprendi error, then we may reverse under Rule 52(b) only if the error is plain, affects substantial rights, and "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 467, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718 (1997).[20]

## IV.

In my view, focusing on Apprendi's two-part concern – notice of the drug

---

[20] The Supreme Court has made clear that, before an appellate court may reverse, both Rule 52(a) and (b) require a showing that the error, whether preserved under (a) or not preserved under (b), "affect[ed the defendant's] substantial rights." United States v. Olano, 507 U.S. 725, 734, 113 S. Ct. 1770, 1777-78, 123 L. Ed. 2d 508 (1993). Indeed, in comparing Rule 52(a) with Rule 52(b), the Court stated, "[The language of Rule 52(b)] is the same language employed in Rule 52(a), and in most cases it means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." Id. There is, however, one important difference: Under Rule 52(b), "[i]t is the *defendant* rather than the Government who bears the burden of persuasion with respect to prejudice." Id. (emphasis mine). I contend that when analyzing whether the defendant has met this burden under Rule 52(b), Neder's command to reverse only if the error is prejudicial "beyond a reasonable doubt" likewise controls. Although Olano and Johnson are silent on the applicable standard in assessing Rule 52(b) errors, I believe that Neder incorporates the beyond a reasonable doubt standard from Chapman into Rule 52. See Neder, 527 U.S. at 15, 119 S. Ct. at 1837 ("In Chapman . . . we set forth the test for determining whether a constitutional error is harmless. That test, we said, is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (quoting Chapman, 386 U.S. at 24)). Because Olano makes clear that Rule 52(a) and (b) employ the same language and mean essentially the same, it follows that the beyond a reasonable doubt standard of Rule 52(a) applies in the Rule 52(b) context. That is to say, under Rule 52(b), a defendant bears the burden of proving beyond a reasonable doubt that the error affected his substantial rights, i.e., that he was prejudiced. But see United States v. Hastings, 134 F.3d 235, 243 (4th Cir. 1998) (requiring the defendant to show, under Rule 52(b) that the error actually affected his substantial rights). A question I find unanswered in the Rule 52(b) cases, and one which this appeal does not present, is whether a constitutional error that is not harmless beyond a reasonable doubt "seriously affects the fairness, integrity, or public reputation of judicial proceedings" as a matter of law.

quantity and reliability of sentence – better illuminates our task in resolving the cases that come before us.  In this part, I divide those cases into two groups: those arising after Apprendi and those arising before.  My comments on the first group are short.  It is apparent that, in section 841(a) cases, the indictments returned in this circuit (and elsewhere) are alleging drug quantity when the government's proof will trigger the application of section 841(b)(1)(A) or (b)(1)(B).  Thus, whether the defendant pleads guilty or goes to trial, the defendant will be on notice of the quantity of drugs the prosecution contends is involved in the offense.[21]  In both cases, the drug quantity involved in the offense of conviction will be found by the trier of fact – whether jury or judge – beyond a reasonable doubt as Apprendi requires.

I turn now to those cases arising before Apprendi and further divide them into two groups:  those in which the defendant was tried before a jury and those in which the defendant pled guilty.  In cases tried before a jury, if the drug quantity involved in the offense was not found by the jury beyond a reasonable doubt and

---

[21]  In using the term "involve," I am referring specifically to section 841(b), which establishes maximum sentences and, in sections 841(b)(1)(A) and (B), mandatory minimum sentences for violations of section 841(a) "involving" particular drug quantities.  See 21 U.S.C. § 841(b).  For example, in determining which provision of section 841(b) applies when the defendant has been convicted of the substantive section 841(a) offense of heroin distribution, the district court decides the quantity of heroin the defendant distributed, or aided or abetted the distribution of, on the date alleged in the indictment.  If, in determining the appropriate sentence range under the guidelines, the court holds the defendant accountable for additional heroin as "relevant conduct" under U.S.S.G. § 1B1.2, the court cannot also use such additional amount in determining the applicable section 841(b) provision, since the offense of conviction did not involve such additional heroin.

the court used section 841(b)(1)(A) or 841(b)(1)(B) in imposing the sentence, we review the defendant's sentence under Rule 52(a) or (b), depending on whether the defendant objected to the court's failure to instruct the jury to find the drug quantity or the court's failure to find such quantity beyond a reasonable doubt. In cases adjudicated on a plea of guilty, the defendant would have been informed at the Rule 11 plea hearing of the quantity of drugs involved in the offense to which he tendered his plea.[22] The <u>Apprendi</u> error – the failure of the court to determine the quantity of drugs involved in the offense of conviction beyond a reasonable doubt – will have arisen at sentencing. If the defendant objected to the court's finding such quantity by a preponderance of the evidence, we consider whether the error was harmless beyond a reasonable doubt under Rule 52(a). Absent a defense objection, we conduct this harmless error analysis under Rule 52(b).

---

[22] As explained <u>supra</u>, in pleading guilty, the defendant waives all non-jurisdictional defects in the indictment, including that the indictment fails to charge the quantity of drugs involved in the offense. Rule 11(c), however, in its application in a case brought under section 841(a) (and, as here, section 846), indirectly informs the defendant of drug quantity. It does so because the Rule requires the district court to inform the defendant, in entertaining his plea of guilty, of "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty by law," that is, of the penalties specified in section 841(b). If the court fails to do so, the plea is subject to vacation. <u>United States v. Siegel</u>, 102 F.3d 477, 481 (11th Cir. 1996). For this reason, if the prosecution is going to contend at sentencing that 21 U.S.C. §§ 841(b)(1)(A) or 841(b)(1)(B) applies, it must inform the court so that the court can discharge its Rule 11(c) responsibility. In taking the Sanchezes pleas (without a plea agreement), the court discharged such responsibility by having the prosecutor state for the record the quantity of methamphetamine involved in the offense and then informing the defendants that they faced sentencing under subsections (A) or (B) depending on the quantity of drugs involved in the offense. We can take judicial notice of the fact plea agreements always indicate the maximum penalty and the mandatory minimum, if any, the defendant faces in pleading guilty. More often than not the plea agreement also specifies the quantity of drugs involved in the offense. Not infrequently, the parties agree to the appropriate offense level under the guidelines.

# V.

In sum, <u>Apprendi</u> does not apply in this case because the Sanchezes' sentences did not exceed the twenty-year maximum of section 841(b)(1)(C). Nor does <u>Rogers</u> apply: (1) unlike the instant case, <u>Rogers</u> involved a case tried to a jury, and (2) the five-year mandatory minimum provision of section 841(b)(1)(B) played no role in the court's decision making. For these reasons, much of which the majority and I have written is pure dicta. My concern is that it causes the district courts no mischief.

BARKETT, Circuit Judge, concurring in result only.

I agree that the sentences in this case should be affirmed because a sentence below the 20-year statutory maximum established by 21 U.S.C. § 841(b)(1)(C) for the violation of § 841(a) does not violate <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000),[1] and both Ignasio and Santiago Sanchez were sentenced to terms below 20

---

[1]Although I initially believed that imposing a mandatory minimum pursuant to § 841(b)(1)(A) or (b)(1)(B) where no amount of drugs was alleged in the indictment would violate <u>Apprendi</u>, I have reconsidered that view. <u>Apprendi</u> held that any fact, other than a prior conviction, that *increases* the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. See <u>Apprendi</u>, 530 U.S. at 490. But the <u>Apprendi</u> Court expressly limited its holding so as not to overrule <u>McMillan v. Pennsylvania</u>, 477 U.S. 79 (1986), in which the Court upheld a state statute that required a sentencing judge to impose a mandatory minimum sentence if the judge found, by a preponderance of the evidence, that the defendant possessed a firearm during the commission of the offense of conviction. See <u>Apprendi</u>, 530 U.S. at 487 n.13. Reading <u>McMillan</u> and <u>Apprendi</u> together, until the Supreme Court says otherwise, it appears that a sentence is not

years.  However, although the majority acknowledges that <u>Apprendi</u> error occurs when an indictment charging a violation of § 841(a) fails to allege drug quantity and a sentence in excess of 20 years pursuant to § 841(b)(1)(A) or (b)(1)(B) is nonetheless imposed, the majority proceeds to argue—hypothetically, because no <u>Apprendi</u> error occurred in the case before us—that such an error would be a "trial type" error subject to harmless or plain error review.  While I do not believe the majority's discussion of this question is warranted by the instant case, I write separately because I believe its analysis is mistaken.

1.    <u>Does Apprendi Require That Drug Quantity Be Treated As An Essential Element Of The Crimes Set Forth In 21 U.S.C. §§ 841 And 846?</u>

No one disputes that prior to <u>Apprendi</u> certain basic principles were clearly and unambiguously established: (1) A defendant has the constitutional right under the Fifth Amendment to be charged by an indictment returned by a grand jury; (2) The court has the power to act only within the parameters of the specific crime charged in the indictment or information; (3) A sentence imposed outside of the parameters of the crime charged in the indictment or information is per se reversible; (4) A defendant has the constitutional right under the Fifth and Sixth Amendments to an information or indictment that gives notice of all of the essential elements of the crime charged and the factual bases therefor; (5) A

_____

constitutionally defective unless the sentence exceeds the statutory *maximum* authorized by the indictment and the jury's ultimate verdict.

107

defendant has the constitutional right to a jury determination of guilt beyond a reasonable doubt as to each essential element of the crime charged; (6) Any waiver, by plea or otherwise, of the right to notice by indictment or information, or of the right to a jury determination of guilt beyond a reasonable doubt, must be voluntary and intelligent.

In Apprendi, the Court stated that a fact that increases the penalty for a crime beyond the otherwise-applicable statutory maximum "fits squarely within the usual definition of an 'element' of the offense." Apprendi, 530 U.S. at 494 n.19. The Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.

The fundamental question posed after Apprendi is whether these statements mean that drug quantity must be treated as an element of the offenses set forth in 21 U.S.C. §§ 841 and 846 in order to impose the enhanced penalties provided by § 841(b)(1)(A) and (b)(1)(B) for the increased amount of drugs involved in the offense.[2] I see only three ways to answer this question. The first is that drug

---

[2] 21 U.S.C. § 841(a) provides that it is "unlawful for any person knowingly or intentionally" to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." This section does not set forth any specific drug quantity that must be involved in the crime. 21 U.S.C. § 841(b)(1)(C) sets forth a maximum penalty of 20 years imprisonment for a violation of § 841(a).

21 U.S.C. § 841(b)(1)(A) and (b)(1)(B) criminalize the same conduct as § 841(a) but establish specific threshold drug quantities that must be involved in the crime. These sections provide for correspondingly more severe penalties than that set forth in § 841(b)(1)(C) for a violation of § 841(a). Specifically, § 841(b)(1)(A) establishes a penalty of

quantity *is* an essential element of the offenses punishable under § 841(b)(1)(A) and (b)(1)(B), and that, therefore, all of the basic principles established by long standing precedent that apply to traditional offense elements—involving the defendants' rights under the Fifth and Sixth Amendments, as well as the boundaries of the court's power to act—apply to the element of drug quantity in § 841(b)(1)(A) and (b)(1)(B). Application of these principles to 21 U.S.C. § 841 leads to the conclusion that when an indictment charging a violation of § 841(a) fails to allege drug quantity, any sentence in excess of 20 years is reversible per se for resentencing within the 20 year statutory maximum prescribed by § 841(b)(1)(C).

The second option is that drug quantity is not an essential element of the crimes set forth in § 841(b)(1)(A) and (b)(1)(B), but remains a mere "sentencing factor." If this is so, drug quantity need not be charged in the indictment or proved to a jury beyond a reasonable doubt, but may be found by the sentencing judge by a preponderance of the evidence.

The third possibility is that although drug quantity is an element necessary to be charged and proven to a jury beyond a reasonable doubt, it constitutes a new kind of element, a constitutionally novel creature that is an element for some

_____

10 years to life imprisonment or, if death or serious bodily injury results from use of the drug involved in the crime, a penalty of 20 years to life. Section 841(b)(1)(B) establishes a penalty of 5 to 40 years imprisonment, or, if death or serious bodily injury result from use of the drug involved in the crime, a penalty of 20 years to life.

109

purposes but not for others.  On this unprecedented theory, which the majority appears to endorse, the "element" must be alleged in the indictment, but if it is not, that failure does not have the same effect as a failure to allege a "real" element. Whereas precedent teaches that the failure to allege an element essential to the crime charged is a fatal defect requiring reversal of the excess sentence for resentencing within the proper bounds of the offense charged, the failure to allege this new "quasi-element" may be excused by an appellate court if it thinks it harmless.

Our own circuit, and every other circuit to have spoken on the question, has determined that the only plausible interpretation of <u>Apprendi</u>, especially as read together with <u>Jones v. United States</u>, 526 U.S. 227 (1999), is that drug quantity <u>is</u> an offense element of the crimes punishable by § 841(b)(1)(A) and (b)(1)(B) that must be alleged in the indictment as a prerequisite to the imposition of the sentences under those provisions.[3]   I believe this conclusion derives from both the

_____

[3]Our circuit reached this conclusion in <u>United States v. Rogers</u>, 228 F.3d 1318, 1327 (11th Cir.2000), as has every other circuit to address the question.  <u>See</u> <u>United States v. Promise</u>, 255 F.3d 150, 156-57 (4th Cir., 2001) ("Accordingly, <u>Apprendi</u> dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, i.e., charged in the indictment and proved to the jury beyond a reasonable doubt."); <u>United States v. Fields</u>, 242 F.3d 393, 395 (D.C. Cir.  2001) ("[I]t is now clear that, in drug cases under 21 U.S.C. §§ 841 and 846, before a defendant can be sentenced to any of the progressively higher statutory maximums . . . in subsections 841(b)(1)(A) or (B), *the Government must state the drug type and quantity in the indictment*, submit the required evidence to the jury, and prove the relevant drug quantity beyond a reasonable doubt.") (emphasis added); <u>United States v. Nance</u>, 236 F.3d  820, 826 (7th Cir. 2001) ("Under <u>Apprendi</u>, before the defendant could receive a sentence greater than 20 years but

language and holding of Apprendi.

In Apprendi, the Supreme Court reiterated that the Sixth and Fourteenth Amendments "indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" Apprendi, 530 U.S. at 477 (quoting United States v. Gaudin, 515 U.S. 506, 510 (1995)). The Court characterized any "fact that increases the penalty for a crime" as "the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict," indeed, as noted above, as one that "fits squarely within the usual definition of an 'element' of the offense." Apprendi, 530 U.S. at 494 n.19. As Justice Thomas wrote in his concurring opinion, joined by Justice Scalia, "[o]ne need only look to the kind, degree, or

---

no more than 40 years, *the indictment should have charged that he had conspired to distribute 5 grams or more of the cocaine base mixture* and that issue should have been submitted to the jury and proven beyond a reasonable doubt by the government.") (emphasis added); United States v. Doggett, 230 F.3d 160, 164-65 (5th Cir. 2000) ("[W]e hold that if the government seeks enhanced penalties based on the amount of drugs under 21 U.S.C. § 841(b)(1)(A) or (B), *the quantity must be stated in the indictment* and submitted to a jury for a finding of proof beyond a reasonable doubt.") (emphasis added); United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir. 2000) ("[I]f the government wishes to seek penalties in excess of those applicable by virtue of the elements of the offense alone, then *the government must charge the facts giving rise to the increased sentence in the indictment*, and must prove those facts to the jury beyond a reasonable doubt.") (emphasis added); cf. United States v. Tran, 234 F.3d 798, 808 (2d Cir. 2000) (aggravating firearm enhancement must be charged in the indictment and proved to the jury beyond a reasonable doubt because "[a] prosecutor cannot make an end run around the jurisdictional prerequisite of an indictment by charging any federal offense, and then proceeding to prosecute a defendant for a different, albeit related, federal offense. Likewise, a prosecutor cannot make this jurisdictional end run, and then urge the court to sentence the defendant for an offense for which the defendant was neither charged nor convicted.").

111

range of punishment to which the prosecution is by law entitled for a given set of facts. Each fact necessary for that entitlement is an element." Id. at 501 (Thomas, J., concurring). Drug quantity, in 21 U.S.C. § 841 is precisely such a fact—that is, a fact that legally entitles the prosecution to increased ranges of punishment under § 841(b)(1)(A) and (b)(1)(B) that exceed the statutory maximum for drug crimes of indeterminate quantity set forth in §§ 841(a) and 841(b)(1)(C).[4] Thus, as a result of Apprendi, it is clear that drug quantity must be treated as an element of the offenses described by these sections.

Accordingly, I agree with the majority that if a sentence under § 841(b)(1)(A) or (b)(1)(B) is to be imposed, the necessary elements of the crimes charged therein, including the threshold drug amount prerequisite to the application of these subsections of the statute,[5] must be "charged in the indictment and proven to a jury beyond a reasonable doubt . . . ." United States v. Rogers, 228 F.3d 1318, 1327; see also, e.g., United States v. Cotton, 261 F.3d 397 (4th Cir. 2001). My disagreement with the majority and with Judge Tjoflat's special concurrence is that I can find no reason in logic or law for failing to apply the consequences that flow

---

[4]See supra, n.3.

[5]Although the Government does not need to allege the precise amount of drugs involved, the Government must allege drug quantity with sufficient specificity to apprise the defendant under which subsections of § 841 the Government is proceeding. See Jones, 526 U.S. at 230-37 (failure of indictment to refer to either of federal carjacking statute's two subsections criminalizing activity involving certain aggravating facts, coupled with indictment's failure to allege any of the specific facts set forth by those subsections, amounted to a failure to charge either of the aggravated crimes).

from that determination.

The majority suggests that, on appeal, an <u>Apprendi</u> error in the indictment is susceptible to harmless error review if it has been preserved, and plain error review if it has not. The problem with this view is, first, that it fails to account for the court's responsibility, in every criminal case, to ascertain precisely the bounds of its own jurisdiction as delineated by the offenses charged in the indictment or information. If, as the majority agrees, drug quantity constitutes an element of the offenses in § 841)b)(1)(A) and (b)(1)(B), then failure to plead quantity in the indictment must, under all existing precedent, constitute jurisdictional error that requires any sentence in excess of 20 years to be reversed for resentencing within the limit of § 841(b)(1)(C). The majority, in its effort to sidestep this result, impermissibly creates a new class of "quasi-elements" not subject to this rule.[6] At

------

[6]In his special concurrence, Judge Tjoflat explains why, in his view, <u>Apprendi</u> does not require that drug quantity be deemed an "element" of the crimes laid out in § 841(b)(1)(A) and (b)(1)(B). Judge Tjoflat points out that the question before the <u>Apprendi</u> Court, properly conceived, was: 'What protection does the Constitution afford criminal defendants against being sentenced based on facts not proved to a jury beyond a reasonable doubt?' In characterizing the responsive holding of <u>Apprendi</u>, Judge Tjoflat concludes that the Supreme Court was concerned only with the twin requirements that: (a) a defendant be given notice that the government seeks to use a particular fact to enhance his sentence, and (b) that the resulting enhanced sentence be "reliable." Problems regarding the constitutional rights to notice and "reliability," Judge Tjoflat argues, are reviewed under the rubrics of harmless or plain error. Thus, Judge Tjoflat concludes, the absence of drug quantity from an indictment cannot constitute *jurisdictional* error, reversible per se.

However, this analysis begs the question of <u>Apprendi's</u> applicability. If notice is required (and I believe it is), that notice must come when the government *first* charges the offense so that the defendant can effectively respond to the charge; if "reliability" is constitutionally required, the reliability of a sentence based on an enhancing fact is to be derived, according to <u>Apprendi</u>, by a jury determination of that fact beyond a reasonable doubt. <u>Apprendi</u> clearly dictates that sentence-enhancing facts be *treated* as the functional equivalents of an

the same time, the majority fails to consider the constitutional principles that govern the validity of any waiver of constitutional rights—in this instance, the waiver of the right to a grand jury's consideration of the charges, and the requirement that any guilty plea, and corresponding waiver of the right to a jury trial, be voluntary and intelligent. Again, if drug quantity is an element of § 841(b)(1)(A) and(b)(1)(B), then failure to plead it in the indictment deprives the defendant of the meaningful notice to which he is due, under the Fifth and Sixth Amendments, of each of the elements of the crime charged, rendering his plea unintelligent and hence invalid.

---

element. If we are required to *treat* drug quantity as an element, then we ought to consider cases in which an element, properly-so-called, was omitted from an indictment, and act accordingly, treating drug quantity the same way. Constructive amendment of the indictment cases like <u>Bain</u> and <u>Stirone</u> provide the best guide. In these cases, the Supreme Court has spoken precisely on the functions of "elements", and on the consequences of omitting an element from the indictment. Specifically, the Court has recognized that only the grand jury has the power to charge, or refuse to charge, a defendant with a fact that results in a more serious crime and accordingly, where an indictment fails to charge an element of the offense, any sentence for the enhanced offense is per se invalid.

Judge Tjoflat states in his special concurrence that "a court's power to adjudicate a federal criminal prosecution comes from 18 U.S.C. § 3231, which gives federal courts original jurisdiction of 'all offenses against the laws of the United States.'" Tjoflat Concurrence at 27. As explained *infra*, in note 15, § 3231 cannot function to give the district court the power to try and sentence a defendant for a crime with which he is not charged. Section 3231 indeed gives the district courts original jurisdiction over crimes against the United States, but it does not give a district court the power to sentence a defendant for a crime of its own choosing. Such a rule would leave the district court with the functional power to define its sentencing jurisdiction subject only to the limits of its own imagination. As the Second Circuit explained in <u>Tran</u>, such a rule would allow prosecutors to avoid the jurisdictional prerequisite of a grand jury indictment by charging any federal offense at all, and then proceeding to prosecute the defendant for a different offense. See <u>supra</u>, n. 3.

II     Failure To Plead Drug Quantity In The Indictment Is A Fatal Jurisdictional Defect To Any Sentence In Excess of 20 Years

       A.     The Court's Jurisdiction To Impose A Sentence Is Limited To the Offense Charged In The Indictment

When an indictment is not brought by the grand jury or does not contain all the essential elements of the crime charged and the necessary factual bases therefor, there is error in the subsequent criminal proceedings. When challenged, a conviction or sentence based on charges not initially brought by the grand jury must be per se reversed because, unlike most ordinary trial errors, "an indictment found by a grand jury [i]s indispensable to the power of the court to try [the defendant] for the crime with which he was charged." Ex Parte Bain, 121 U.S. 1, 12-13 (1887). Likewise, a "court cannot permit a defendant to be tried on charges that are not made in the indictment against him." Stirone v. United States, 361 U.S. 212, 217 (1960). The power, or lack thereof, to try defendants on the specific charges made in an indictment is the essence of the court's criminal jurisdiction.[7]

_____

[7]The majority refers to three recent circuit cases that have held that failure to charge an essential element of an offense in the indictment does not constitute a "jurisdictional" defect, but is subject only to review for harmless or plain error. Maj. at 42-3, citing United States v. Prentiss, 256 F.3d 971 (10th Cir. 2001) (en benc), United States v. Mojica-Baez, 229 F.3d 292, 310-12 (1st Cir. 2000), and United States v. Nance, 236 F.3d 820, 825-26 (7th Cir. 2000). Although, like the majority here, these cases utilized harmless or plain error review, none of them explains why, if drug quantity is an essential element of the crime charged, the ordinary consequences established by precedent for the indictment's failure to allege such an element should not be applied.
       While Nance reviewed the failure of an § 841 indictment to charge drug quantity for plain error, it simply did not address the question whether the error was jurisdictional in nature. The Nance Court merely assumed, without discussion, that since the defendant had not challenged his sentence on Apprendi grounds in the trial court, review on appeal was for plain

115

The remedy required by the Supreme Court for a sentence imposed beyond the trial court's jurisdiction is a remand for resentencing within the proper confines of its jurisdiction: "[T]he imposition of a sentence in excess of what the law permits does not render the legal or authorized section of the sentence void, but only leaves such portion of the sentence as may be in excess open to attack . . . . [T]he sound rule is that a sentence is legal so far as it is within the provisions of law . . . and only void as to the excess . . . ." United States v. Pridgeon, 153 U.S.

---

error. See Nance, 236 F.3d at 824.

Nor, as the Second Circuit recently pointed out in United States v. Tran, 234 F.3d 798, 809 (2d Cir. 2000), did the Mojica-Baez case directly address this issue. Indeed, Mojica-Baez expressly noted that an indictment's failure to charge an essential element of an offense must be recognized by the court at any time during the proceedings, either sua sponte or on motion of the parties, (which, if anything, suggests that the error *is* jurisdictional in nature). See id. at 308-09 ("We accept as true two general propositions . . . . The first proposition is that an objection that an indictment fails to state an essential element of an offense 'shall be noticed by the court at any time during the pendency of the proceedings.' Fed. R. Crim. Proc. 12(b)(2) . . . . The second proposition is that a statutory citation standing alone in an indictment does not excuse the government's failure to set forth each of the elements of an offense.") (internal citations omitted). Notwithstanding its recognition of these propositions, the court did not address the question whether the alleged indictment error in the case before it was jurisdictional, instead simply holding that any error in the indictment was harmless. Presumably, because of this deficiency in reasoning, the Second Circuit stated, "to the extent that Mojica-Baez can be read to conclude that this type of error is not jurisdictional, we reject that conclusion here." Tran, 234 F.3d at 809.

Although Prentiss did squarely hold that the failure to charge an essential element of an offense in the indictment does not constitute jurisdictional error, it, like the majority, in large part, based its reasoning on Neder v. United States, 527 U.S. 1 (1999). See Prentiss, 256 F.3d at 984 ("To us, a defendant's right to have a petit jury find each element of the charged offense beyond a reasonable doubt is no less important than a defendant's right to have each element of the same offense presented to the grand jury. If denial of the former right is subject to harmless error analysis, we believe denial of the latter right must be as well."). As detailed below, I do not believe that Neder is applicable to the issue of whether the omission of an essential element from an indictment is a fatal deficiency precluding the imposition of a sentence beyond that prescribed for the crime which has been charged.

48, 62 (1894).[8]  Therefore, any sentence imposed under § 841(b)(1)(A) or

841(b)(1)B) in excess of 20 years, where the indictment alleges only a violation of

§ 841(a), is "void as to the excess" sentence imposed beyond the court's

jurisdiction.  Id.

The majority takes no account of this jurisdictional error that occurs when a

court acts in excess of its authority.  Indeed, even guilty pleas can not excuse such

jurisdictional errors, for the court simply does not have authority to accept a plea to

an offense greater than that charged in the indictment.

> The objection that the indictment fails to charge an offense is not
> waived by a guilty plea.  The violation of [the defendant's] right to be
> free of prosecution for a nonoffense would bar his conviction even if
> his "factual guilt" had been established validly.  The entry of a guilty
> plea does not act as a waiver of jurisdictional defects such as an
> indictment's failure to charge an offense.

United States v. Meacham, 626 F.2d 503, 510 (5th Cir. 1980).[9]

The majority argues that a sentence in excess of 20 years under an

---

[8]In Pridgeon, the defendant was sentenced to a 5 year term of imprisonment at a penitentiary that subjected inmates to "hard labor."  See Pridgeon, 153 U.S. at 50.  The defendant sought a writ of habeas corpus on the grounds that the statute under which he was charged and convicted authorized only "imprisonment," and the requirement of hard labor was therefore in excess of the court's power rendering his entire conviction void.  See id.  As an initial matter, the Court held that the defendant's subjection to "hard labor" was not beyond the power of the Court because hard labor was merely one of the rules of the penitentiary to which defendant was duly committed.  Nevertheless, the Court held, even if the hard labor were in excess of the Court's authority, the appropriate remedy would be invalidation of the excess sentence rather than reversal of the entire conviction.  See id. at 62.

[9]In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

indictment alleging only a violation of § 841(a) can be affirmed because it is not a structural error but simply a trial type error "analogous to the jury-instruction error" in Neder v. United States, 527 U.S. 1 (1999). Although, prior to Apprendi, no court had held that the omission of an essential element from an indictment was reviewable for harmless error, the majority, in applying this principle to Apprendi cases, would do just that.[10] To categorize the error in this way ignores the initial question that must be asked when an essential element has not been alleged in the indictment: What is the extent of the court's power to act or, put in the traditional way, the extent of its jurisdiction?[11] Neder is not applicable to this threshold issue.

First, as Neder recognizes, an error in a petit jury instruction is "simply an error in the trial process itself." Id. at 1833. Such errors can be assessed within the

---

[10] See also United States v. Moss, 252 F.3d 993, 1004 (8th Cir. 2001) (Arnold, J., dissenting) ("As far as I am aware, no case has ever held that the omission of an element of a crime from an indictment can be harmless error.").

[11] The majority states that "the notion that any Apprendi-based challenge has a jurisdictional dimension is implicitly rejected by our precedent's consistent application of plain or harmless error review" Maj. at 41, citing United States v. Pease, 240 F.3d 938, 943 (11th Cir. 2001), and United States v. Swatzie, 228 F.3d 1278, 1282-83 (11th Cir. 2000). However, in Swatzie, the Court found no indictment error, explaining that the indictment cited § 841(b)(1)(B) in the indictment and that "Swatzie does not even argue that he did not know before trial that the quantity or type of drugs could affect his sentence . . . ." Swatzie, 228 F.3d at 1283. In Pease, we found that the failure to allege drug quantity constituted plain error but did not substantially affect the defendant's rights because he did not contend that he distributed a lesser amount of drugs than that necessary to support his sentence. Although I believe Pease was wrongly decided, I also note that the jurisdictional aspect of the indictment error does not appear to have been raised by the defendant, nor did the Court address the question whether a sentence in excess of 20 years constituted a constructive amendment of the indictment. In any event, this Circuit's own precedent is subject to analysis and reconsideration on en banc review, and, in light of the reconsideration of some of our Apprendi precedent, should be analyzed and reconsidered as well.

context of the trial and may consequently be deemed harmless.  In contrast, the grand jury indictment confers initial jurisdiction upon the court and defines its scope.  See, e.g., Gaither v. United States, 413 F.2d 1061 (D.C. Cir. 1969). Thus, an error by which the scope of the indictment is expanded cannot be analyzed in the context of the trial, for such errors precede any consideration of trial process errors and challenge either the court's initial jurisdiction or its reach.

As illustrated by Stirone, not every error in jury instructions is susceptible to harmless error review.  Unlike the non-jurisdictional jury instruction error in Neder—to wit, failure to submit the issue of materiality to the jury when it was implicit in the jury instructions as a whole—the jury instructions given in Stirone varied from the indictment to such an extent that the substantial right to be tried only on charges presented in the indictment returned by a grand jury was abrogated.  The defendant's sentence was therefore vacated because the court had exceeded its jurisdiction.  See also United States v. Tran, 234 F.3d 798, 809 (2d Cir. 2000) ("If the district court acts beyond its jurisdiction by trying, accepting a guilty plea from, convicting, or sentencing a defendant for an offense not charged in the indictment, this Court must notice such error and act accordingly to correct it, regardless of whether the defendant has raised the issue.").[12]

---

[12]The majority's position also leads to the highly anomalous result of requiring greater specificity from a civil complaint than from a criminal indictment or information.  Rule 8(a) of the Federal Rules of Civil Procedure requires that a civil complaint include "a short and plain statement of the grounds upon which the court's jurisdiction depends," and "a short and plain

B. <u>A Defendant Has A Right To Have A Grand Jury Consider The Crime For Which He or She Will be Punished And Can Only Waive This Right If The Waiver Is Voluntary</u>

The conclusion that the failure to allege an element in the indictment is not susceptible to harmless error review flows from a recognition of the pivotal role played by the grand jury in the process of a criminal case. Under the Fifth Amendment the Constitution gives the grand jury complete discretion to provide the parameters of a criminal proceeding, vesting it with the power to indict based on the evidence presented to it and the absolute choice not to indict, notwithstanding any evidence presented:

> In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense—all on the basis of the same facts. Moreover, "[t]he grand jury is not bound to indict in every case where a conviction can be obtained." Thus, even if a grand jury's determination of probable cause is confirmed in hindsight by a conviction on the indicted offense, that confirmation in no way suggests that the discrimination did not impermissibly infect the framing of the indictment and, consequently, the nature or very existence of the proceedings to come.

Vasquez v. Hillery, 474 U.S. 254, 263 (1986) (quoting United States v. Ciambrone, 601 F.2d 616, 629 (2d Cir. 1979) (Friendly, J., dissenting)).

---

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a). The pleading must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). By holding that a sentence under § 841(b)(1)(A) or 841(b)(1)(B) could be upheld even where the indictment failed to allege drug quantity, the majority would functionally exempt the criminal indictment or information from even these minimal requirements.

Thus, even when there is overwhelming evidence of drug amounts to support conviction and sentence under § 841(b)(1)(A) or (b)(1)(B), the grand jury has the right to refuse to charge the defendant with those amounts. Whatever decision is made by the grand jury for whatever reason, it cannot be reversed by a later petit jury, or worse, by the decision of the sentencing judge.

> The content of the charge, as well as the decision to charge at all, is entirely up to the grand jury–subject to its popular veto, as it were. The grand jury's decision not to indict at all, or not to charge the facts alleged by the prosecutorial officials, is not subject to review by any other body.

Gaither v. United States, 413 F.2d 1061, 1066 (D.C. Cir. 1969) (internal citations omitted); Russell, 369 U.S. at 770 (1962) (harmless error analysis would allow a defendant to "be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.").

Moreover, just as the grand jury alone has the power to return an indictment, any amendments to the indictment must be made by the grand jury as well. See Stirone, 361 U.S. at 215-16; Bain, 121 U.S. 1. If, in subsequent proceedings, "the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them," United States v. Bursten, 453 F.2d 605, 607 (5th Cir. 1971), the alteration is deemed a "constructive" or "effective" amendment. Id. Such substantial "broaden[ing]," see Stirone, 360 U.S. at 216, constitutes per se reversible error because it violates the

121

defendant's constitutional right to be tried solely within the parameters of the

charges returned by the grand jury.[13]  See id.; Bursten, 453 F.2d at 607.  In

reviewing instructions to a jury which differed from the charges in the indictment,

the Court in Stirone held:

> While there was a variance in the sense of a variation
> between pleading and proof, that variation here destroyed
> the defendant's substantial right to be tried only on
> charges presented in an indictment returned by a grand
> jury.  Deprivation of such a basic right is far too serious
> to be treated as nothing more than a variance and then
> dismissed as harmless error.

Id. at 217.  In  United States v. Peel, 837 F.2d 975, 979 (11th Cir. 1988), this court

reiterated that "a constructive amendment of a grand jury indictment is reversible

error per se."  Id. (emphasis in original).[14]

Because it is necessary to allege the requisite drug quantity in the indictment

to sentence a defendant under § 841(b)(1)(A) or 841(b)(1)(B), it is clearly error to

---

[13]Minor and insubstantial errors in the indictment that do not broaden its scope are obviously not construed as such amendments.  However, as explained above, sentencing for more than the offense charged constructively amends the indictment, and no one but the grand jury has the power do this.

[14]The majority, in footnote 50, appears to suggest that the authority of Stirone has somehow been diminished by the Supreme Court's decision in Chapman v. California, 386 U.S. 18 (1967).  Chapman held that some constitutional errors could be deemed harmless; it did not state that constitutional errors already deemed harmful by the Supreme Court could henceforth be regarded as harmless.  Put differently, Chapman did not give appellate courts license to survey the landscape of constitutional errors and recategorize them as they wish.  Until the Supreme Court holds that Stirone errors are harmless, its statement that some constitutional errors may be harmless has no effect whatsoever on the precedential force of its holding in Stirone.  Our own court in Peel, decided long after Chapman, recognized that the law deems constructive amendments of a grand jury indictment to be reversible per se.

sentence the defendant in excess of 20 years under those provisions in the absence of such an allegation.  By such a sentence, the court, in place of the grand jury, supplies the missing allegation in the indictment, and, in place of the petit jury, "finds" it as a "fact."  This "fact" is "legally essential to the punishment to be inflicted," thereby increasing the penalty under § 841(b)(1)(A) or 841(b)(1)(B).  Thus, by such a sentence the court is constructively amending the indictment in just as substantial a manner as that prohibited in <u>Stirone</u>, and thus, like in <u>Stirone</u>, the error is per se reversible.  Because the court's sentence exceeds the jurisdiction established by the indictment, the erroneous sentence is not susceptible to harmless or plain error review on direct appeal, or procedural default on collateral review.

If the indictment has charged a violation of  21 U.S.C. § 841(a), alleging only some indeterminate drug quantity, the sentence for that crime is set out in § 841(b)(1)(C).  Clearly the court has the jurisdiction or the power to sentence a convicted defendant under these allegations pursuant to this provision.  However, any sentence "beyond the prescribed statutory maximum" of § 841(b)(1)(C) must necessarily be based on a "fact" not alleged in the indictment, namely drug quantity, that has "increas[ed] the penalty beyond the prescribed statutory maximum" and that is "legally essential to the punishment to be inflicted."  <u>See</u> <u>Apprendi</u>, 560 U.S. at 490 n. 15.  When drug quantity is not alleged in the

indictment, such a sentence is invalid.[15]

III The Defendant's Fifth and Sixth Amendment Rights To Notice Also Require That, Where The Indictment Does Not Allege Drug Quantity, Sentences In Excess Of 20 Years Be Per Se Reversed

  A. The Indictment Or Information Must Give The Defendant Notice Of

---

[15] Obviously, as the majority points out, the defendant has the right to waive indictment by grand jury. In such a case, a court would, of course, undertake the usual constitutional inquiry as to whether the waiver was voluntary and intelligent and whether the substituting information complied with other constitutional protections. See United States v. Moore, 37 F.3d 169, 173 (5th Cir. 1994) (waiver of right to indictment by grand jury requires that the "court must be satisfied that the waiver was knowingly, understandingly, and voluntarily made."). The majority seems to argue that the fact that Fed. R. Crim. Proc. 7(b) allows a defendant to waive his Fifth Amendment right to be prosecuted by indictment and proceed instead on a criminal information somehow proves that failure to allege an essential element in an indictment is not a jurisdictional error but rather a trial type error that is subject to harmless or plain error review. It is difficult to discern the logic in this view. Rule 7(b) simply recognizes that a defendant can waive the grand jury's involvement in initiating the charges against him. The ability to waive the right to prosecution by indictment has nothing to do with whether errors at the charging phase are jurisdictional. If anything, the fact that the prosecution must alternatively proceed by information confirms that there is a vital jurisdictional step that cannot be waived: some charging document is essential to confer jurisdiction on the court and to define its scope. Waiving the right to a grand jury indictment does not mean a defendant waives either his own right, or the court's obligation, to assure subject matter jurisdiction over the relevant crime and punishment.

To use an admittedly extreme example to make the point, a defendant waiving indictment by the grand jury cannot be permitted to be sentenced for manslaughter under an information that only charges theft, even should he want to. The bottom line is that in every case, the court has an independent obligation to ensure that the charging document—whether indictment or information—outlines the elements of the crime. See DeBenedictis v. Wainwright, 674 F.2d 841 (11th Cir. 1982). Failure to allege an element constitutes jurisdictional error that renders any sentence relying on the unalleged element invalid. See id.

Moreover, the discussion of the right to waive a grand jury's indictment seems almost irrelevant in the Apprendi context. In future cases, one assumes that the Government would, at least in an abundance of caution, present the indictment to the grand jury in a way that includes the requisite drug quantity for the conviction and sentence it seeks. In reviewing those cases that arose before Apprendi, courts must analyze whether any waiver of the right to have the grand jury pass on the crime it wants to charge, i.e., have the ability to choose from among the crimes delineated by §§ 841(a), 841(b)(1)(A), and 841(b)(1)(B), has been made knowingly, intelligently and voluntarily. In all fairness, how can a waiver possibly be made knowingly, intelligently, and voluntarily if the defendant did not know that the grand jury should have had that opportunity?

<u>All The Essential Elements Of The Crime Charged</u>

When the grand jury does return an indictment, due process requires that the indictment must provide a defendant with adequate notice of the crime with which he or she has been charged:

> The criteria [for a valid indictment] are, first, whether the indictment contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, secondly, in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

<u>Russell</u>, 369 U.S. at 763-764 (collecting cases) (internal quotations omitted).  As our own Circuit has emphasized,

> A grand jury indictment must set forth each essential element of the offense in order for the conviction to stand . . . . [T]he Sixth Amendment to the Constitution requires that every criminal defendant 'be informed of the nature and cause of the accusation.' Inclusion of the essential elements of an offense in an indictment provides the accused with the bare minimum of information necessary to meet this requirement . . . . [T]he Fifth Amendment guarantees the right of a grand jury indictment to each defendant to be prosecuted for an 'infamous,' or serious, crime.  A grand jury can perform its function of determining probable cause and returning a true bill only if all elements of the offense are contained in the indictment.

<u>United States v. Outler</u>, 659 F.2d 1306, 1310 (5th Cir. Unit B 1981)[16]; <u>see</u> <u>also</u>

<u>United States v. Ramos</u>, 666 F.2d 469, 474 (11th Cir. 1982) (an indictment is valid

---

[16]In <u>Stein v. Reynolds Securities, Inc.</u>, 667 F.2d 33 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

only "as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute an offense under the laws of the United States").[17]  "[T]he language of the statute may be used . . . but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged."  Hamling v. United States, 418 U.S. 87, 117-18 (1984).

Defects in the charging document compromise the defendant's Sixth Amendment guarantee requiring that any guilty plea be made with full and meaningful notice of the criminal charges lodged against him.  How a defendant prepares to answer the charges brought against him and whether or not he will choose to enter a guilty plea is dictated by the contours of the charging document.  Consider the example of a defendant charged with a drug crime of indeterminate

---

[17]Although a defendant may waive his right to be charged by the grand jury through indictment, and plead or be tried under a criminal information, Fed.  R.  Crim. Proc. 7(b), the criminal information, which substitutes for the indictment, must likewise comply with constitutional guarantees.  Specifically, the information must satisfy the defendant's Sixth Amendment right to have notice of the specific offense that he has allegedly committed so that he may defend against the case or make a fully informed plea to the charge.  See, e.g., United States v.  Morales-Rosales, 838 F.2d 1359, 1361 (5th Cir.  1988) (citing United States v. London, 550 F.2d 206, 211 (5th Cir. 1977)); DeBenedictis v. Wainwright, 674 F.2d 841, 842-843 (11th Cir. 1982).  In accordance with the defendant's Fifth Amendment right to be free from double jeopardy, the information must likewise provide him with a basis for determining whether a subsequent charge punishes him for the same illegal conduct charged in the information.  Equally important, the information provides the court with the means to ascertain the scope of its own jurisdiction when a defendant enters a plea, and to be aware of the range of penalties it is authorized to impose at sentencing.  See Smith v. United States, 360 U.S. 1 (1959).

quantity, who pleads guilty, and in his guilty plea, does not contest the government's allegations of a drug quantity which bring him within the increased range of § 841(b)(1)(A). Laboring under the justifiable but erroneous belief that the Government was not required to charge that quantity in the indictment, or prove it beyond a reasonable doubt to the jury in the first place, the defendant forewent his right to take the quantity issue to the jury. Such a waiver obviously cannot be deemed voluntary and intelligent, because the defendant's erroneous belief caused him to forego a fundamental constitutional right which he might otherwise have chosen to exercise. The exacting standard for guilty pleas, See Brady v. United States, 397 U.S. 742, 747-48 (1970) ("That a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized"), mandates that any such waiver must not be deemed voluntary and intelligent. Thus, any sentence based on such a waiver violates a defendant's Sixth Amendment right to adequate notice of the charges against him upon which he can reasonably and knowledgeably base a defense or a plea.[18]

---

[18] The majority states that even if the trial judge misadvised the Sanchezes of their maximum potential sentence pursuant to § 841(b)(1)(A) or 841(b)(1)(B), the Sanchezes' guilty pleas were valid under Brady v. United States, 397 U.S. 742 (1970). The majority cites Brady for the proposition that misinformation provided to the Sanchezes' by the court could not possibly have sufficed to render their guilty pleas involuntary or unintelligent. But Brady does not stand for any such broad proposition.

In Brady, the Supreme Court held that the federal kidnaping statute could not condition a defendant's right to opt for a jury trial on his willingness to risk the death penalty (which, under the statute, could be imposed only by a jury). Nevertheless, the Court rejected the defendant's challenge to the voluntariness of his guilty plea, but not, as the majority suggests, because the defendant's misunderstanding of his sentencing exposure could not possibly have shown his plea

127

**CONCLUSION**

In sum, if this court were presented with a case in which a defendant received a sentence in excess of 20 years pursuant to § 841(b)(1)(A) or § 841(b)(1)(B) and the indictment did not allege the requisite drug quantity, I believe we would be required to vacate the sentence and remand for resentencing under § 841(b)(1)(C). Apprendi's requirement that drug quantity be alleged in the charging document establishes that the error would be jurisdictional to the extent that the court imposed a sentence in excess of that provided by § 841(b)(1)(C) and therefore reversible per se. The defendant would have to be resentenced within the 20 year maximum of § 841(b)(1)(C). As a jurisdictional error, it cannot be waived by the defendant; it is not subject to harmless or plain error analysis on direct appeal; and it cannot be procedurally defaulted on collateral review. But because Ignasio and Santiago Sanchez received sentences below the statutory maximum of 20 years, I do not believe this court needed to reach any of these questions.[19] I

---

to be involuntary. Instead, the court rejected defendant's argument because the trial court and the Tenth Circuit explicitly found that the defendant voluntarily chose to plead guilty when he learned that his co-defendant was cooperating with the prosecution and was available to testify against him. Indeed, contrary to the majority's suggestion, the Brady Court reaffirmed the existing standards for analyzing guilty pleas holding that they must always be both voluntary and intelligent. See id. at 747 n.4. The Court wrote: "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Id. at 748.

[19]As we have previously stated, "appellate courts best serve the law in deciding 'each case on the narrow ground that leads to a decision.'" Clay v. Riverwood Intern. Corp., 157 F.3d 1259, 1264 (11th Cir. 1998) (summarizing and quoting Blackston v. Shook & Fletcher Insulation Co., 764 F.2d 1480, 1481 (11th Cir.1985)).

128

agree that their sentences created no <u>Apprendi</u> error and should be affirmed.